Shumaker, Loop & Kendrick, LLP
Steven M. Berman, Bar No. 256846
sberman@shumaker.com
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone:  813.229.7600
Facsimile:   813.229.1660

Attorney for Defendant
Sharon Day

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| CATALINA YACHTS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARON DAY, an individual; GERARD DOUGLAS, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:25-CV-04090-SVW-RAO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Date:       TBD<br>Time:      1:30 p.m.<br>Judge:     Hon. Steven V. Wilson<br>Date Action Filed:       May 7, 2025<br><br>**Accompanying Documents**:<br>Notice of Motion to Transfer;<br>Declaration of Sharon Day;<br>Declaration of Steven M. Berman; and [Proposed] Order |

Defendant Sharon Day respectfully submits the following Memorandum of Points and Authorities:

## I.    INTRODUCTION

This case should be transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). While Plaintiff filed in this District, the subject matter of the dispute (assets sold triggering a contractual obligation), along with the operative

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE
2:25-CV-04090

1  facts, key witnesses, and relevant documents are all centered in Florida. On balance,

2  the convenience of parties and witnesses, and the interests of justice, strongly favor

3  transfer.

4       The dispute between the parties revolves around Bonus Compensation

5  Agreements the Plaintiffs are obligated to the Defendants which are triggered by a

6  sale of "all of Catalina's assets" belonging to the Plaintiff. (Compl., Ex. 1, p. 6.)

7  Here, Plaintiff sold off its entire Florida manufacturing operations spread across a

8  manufacturing campus consisting of more than 17 acres and nine distinct

9  manufacturing facilities, equipment, tools, inventory, supplies and intellectual

10  property to a purchaser who now runs the substantial Florida manufacturing campus.

11  (Decl. of S. Berman, ¶¶ 4-5).  Plaintiff's sale of the Florida operations is what, before

12  the litigation *sub judice* was even filed, Day demanded triggered the Bonus

13  Compensation Agreement's payment obligations to her.   While Plaintiff and Day

14  were addressing the payment of the bonus on the sale of the Florida operations,

15  Plaintiff ran to this Court to assert venue.  (*Id*. at ¶ 6).

16       Plaintiff's declaratory relief and Day's claims against Plaintiff and potentially

17  third parties will revolve nearly exclusively on the facts arising from Plaintiff's sale

18  of the Florida operations and then the application of those facts to the Bonus

19  Compensation Agreement at issue.  If the sale of the Florida operations satisfies the

20  payment obligation under the Bonus Compensation Agreement, then Plaintiff

21  breached the Bonus Compensation Agreement.  In other words, Plaintiff pleads they

22  did not breach, and Day will assert Plaintiff did breach; and resolution of this dispute

23  will depend upon the depth and breadth of what was sold in the sale of the Florida

24  operations.  What consisted of those Florida operations will require discovery of

25  witnesses in Florida, including current employees and former employees of the

26  Florida operations, as well as the buyer of those same operations, which is located in

27  North Carolina. Plaintiff's very assertion that its sale did not create payment

28

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER VENUE
2:25-CV-04090

1  obligations to its former executives, is dependent upon what was included in the sale

2  of the Florida operations.

3  **II.    BACKGROUND**

4       Sharon Day began her career at Catalina Yachts in Woodland Hills, California,

5  back in July 1974, as an Administrative Assistant to the President, and over the course

6  of the ensuing fifty years she gave the better part of her life to Catalina Yachts having

7  been promoted to Office Manager and eventually advanced to Vice President of

8  Sales. (Decl. S. Day, pp. 1-2.)   In that role, she developed sales strategies and

9  coordinated efforts with Catalina Yacht dealers throughout the United States and

10  internationally. *Id*., p. 2. Following the passing of the Catalina Yachts' founder and

11  President Frank Butler in 2020, Catalina Yachts named Ms. Day as President. *Id*. She

12  relocated her family to Florida to assume the role and responsibilities of President,

13  continuing to lead the company with a commitment to its legacy and growth. *Id*.

14       This case centers around the parties' contractual obligations contained in a

15  Bonus Compensation Agreement.  In 2002, while employed by Catalina Yachts, Mr.

16  Butler wanted to reward Ms. Day's lifetime of service and they executed the Bonus

17  Compensation Agreement, which is attached to Plaintiff's Complaint as Exhibit 1.

18  (Compl., Ex. 1). The Bonus Compensation Agreement provides that Ms. Day is

19  entitled to bonus compensation pursuant to the terms of that Bonus Compensation

20  Agreement. *Id*.

21       Ms. Day signed the Bonus Compensation Agreement in California where she

22  worked; however, she worked closely with both the California and Florida plants.

23  (Decl. S. Day, p. 2).  Indeed, beginning in 1984, Ms. Day frequently travelled to

24  Florida at least once or twice a month to conduct business for Catalina Yachts. *Id*.  In

25  2006, Catalina Yachts began transitioning production from California to Florida, and

26  the move took a few years to fully complete. *Id*.  And publicly available information

27  indicates that Catalina Yachts fully moved its entire manufacturing operations to

28

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 3 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER VENUE
2:25-CV-04090

Florida in 2020 and also sold its Woodland Hills, California, property in 2022. (Decl. of S. Berman, ¶ 3).

After Mr. Butler's passing in November 2020, Catalina Yachts appointed Ms. Day to be President of Catalina Yachts. (Decl. of S. Day, p. 2). A few months later, in April 2021, with the promises made by Mr. Butler and Catalina Yachts, the president was needed in Florida where substantially all of the Plaintiff's remaining business assets were situated, she purchased property in St. Petersburg, Florida, and moved with her husband to Florida. *Id*. At this point, she worked almost exclusively at the Catalina Yachts' offices in Florida. *Id*.

On September 26, 2024, Hurricane Helene destroyed Ms. Day's home and personal property. *Id*. She remained in Florida in temporary housing, continued working for Catalina Yachts, and remained as President until December 2, 2024. *Id*. Following her retirement and because her home was destroyed by the hurricane, Ms. Day moved to live with one of her daughters in Las Vegas, Nevada, where she currently resides. *Id*., p. 3.

On April 30, 2025, Catalina Yachts sold its entire Florida operations, all of which were located in Florida. *Id*.; *see also* Decl. of S. Berman, ¶ 4. Catalina Yachts employees and individuals with knowledge regarding the sale of Catalina Yachts' assets reside in Florida or outside of California. Decl. of S. Day, p. 2. These individuals are likely to be material witnesses in this case. *Id*. Some names include Patrick Turner, President; Jon Ames, Engineer; Brenda Stafford, Administrator; and Mike Quinn, Plant Supervisor. *Id*. Witnesses with knowledge regarding the sale and purchase of Catalina Yachts' assets also reside in North Carolina, including employees of Daedalus Yachts, which is the entity that purchased Catalina Yachts and Daedalus Yachts are now in possession of and operating the Plaintiff's former Florida operations. *Id. see also* Decl. of S. Berman, ¶ 4.

Upon learning of the sale of Catalina Yachts' Florida operations, undersigned

1   counsel contacted Catalina Yachts and their counsel regarding the Bonus

2   Compensation Agreement and Ms. Day's entitlement to payment. *See* Decl. S.

3   Berman, ¶ 6.    After admitting Ms. Day was entitled to receive the Bonus

4   Compensation Agreement, the undersigned confirmed the parties' communications,

5   *id.*, and after Catalina Yachts strung out the parties' discussion about compliance

6   with the Bonus Compensation Agreement, Catalina Yachts suddenly filed the instant

7   action in California asking this Court to enter a declaratory judgment that no bonus

8   payments are due.  Had counsel for Plaintiff not led the undersigned on in a feigned

9   negotiation, the undersigned would have brought a breach of contract action in the

10   Middle District of Florida where the Florida operations reside and because this case

11   could have originally been brought there. *Id.*

12        As explained below, transfer of venue is important because although Catalina

13   Yachts had a presence in California, the events giving rise to this dispute—namely

14   the triggering event for the Bonus Compensation Agreement—occurred primarily in

15   Florida.

16   **III.   LEGAL STANDARD**

17        Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action

18   "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any

19   other district or division where it might have been brought."   "The purpose of §

20   1404(a) is 'to prevent the waste of time, energy, and money and to protect litigants,

21   witnesses  and  the  public  against  unnecessary  inconvenience  and  expense.'"

22   *Hallenberg v. Walker*, No. 1:24-CV-01486-JLT-BAM, 2025 WL 1330129, at *6

23   (E.D. Cal. May 7, 2025) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

24   The decision lies within the broad discretion of the trial court; and "in considering a

25   transfer pursuant to section 1404(a), the district court undertakes an 'individualized,

26   case-by-case consideration of convenience and fairness.'" *Belkorp AG, LLC v.*

27   *Venture Prods., Inc.*, No. 1:23-CV-00762-DJC-DB, 2025 WL 916882, at *1 (E.D.

28

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER VENUE
2:25-CV-04090

1   Cal. Mar. 26, 2025) (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th

2   Cir. 2000) (internal citation omitted)); *see also Commodity Futures Trading Comm'n*

3   *v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Norwood v. Kirkpatrick*, 349 U.S. 29,

4   32 (1955).

5       In exercising their discretion, "Courts employ a two-step analysis to determine

6   whether transfer is appropriate. First, courts consider whether the case could have

7   been brought in the proposed transferee forum. Second, courts consider whether

8   transfer would be convenient and fair." *Vasseur v. Johnson & Johnson Consumer,*

9   *Inc.*, No. 2:24-CV-07487-MCS-BFM, 2025 WL 576548, at *1 (C.D. Cal. Feb. 12,

10  2025) (citing *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D.

11  Cal. 2013)).  Courts consider various factors when deciding whether transfer would

12  be convenient and fair:

13  > (1) the location where the relevant agreements were negotiated and
14  > executed; (2) the state that is most familiar with the governing law; (3)
    > the plaintiff's choice of forum; (4) the respective parties' contacts with
15  > the forum; (5) the contacts relating to the plaintiff's cause of action in
    > the chosen forum; (6) the differences in the costs of litigation in the two
16  > fora; (7) the availability of compulsory process to compel attendance of
    > unwilling non-party witnesses; and (8) the ease of access to sources of
17  > proof. Additional factors the Court may consider are whether a forum
    > selection clause is present and whether there is any relevant public
18  > interest at play in the forum state. Relevant public interests include
    > degrees of court congestion, whether the litigation is duplicative and
19  > which suit was filed first, potential conflicts of laws, and burdening
    > citizens of an unrelated forum with jury duty.

20
    *United Prods. & Tech. Ltd. v. Above Edge, LLC*, No. CV212661DMGAFMX, 2021
21
    WL 4815956, at *1–2 (C.D. Cal. June 3, 2021) (cleaned up).
22
        Although there is a presumption in favor of a plaintiffs' choice of forum, that
23
    presumption is diminished where the operative facts did not occur in the chosen
24
    forum. *See Kumar v. Kulicke & Soffa Indus., Inc.*, No. CV 18-3969-R, 2019 WL
25
    9104040, at *1 (C.D. Cal. Jan. 22, 2019) (citations omitted).
26
    **III. ARGUMENT**
27

28

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 6 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER VENUE
2:25-CV-04090

**A. The Action Could Have Been Brought in the Middle District of Florida.**

Transfer under § 1404(a) is only permissible if the transferee court is one in which the action "might have been brought." *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). That requirement is satisfied here. The Middle District of Florida has subject matter jurisdiction over this diversity action, personal jurisdiction over Defendants, and is a proper venue.  Not only has Plaintiff sold off properties and moved all of its manufacturing from its California location to Florida, but also this case hinges on whether a substantial sale of Plaintiff's assets has occurred, which means a substantial part of the events giving rise to the claim occurred in Florida. This case could have been brought in the Middle District of Florida.

**B. Relevant factors, including the Convenience of Witnesses, the Parties' Contacts, the Contract relating to Plaintiff's Cause of Action, and Ease of Access to Sources of Proof Strongly Favor Transfer to Florida.**

Courts in the Ninth Circuit routinely consider a myriad of factors in evaluating whether a transfer of venue is convenient and fair.  *See United Prods & Tech. Ltd.*, 2021 WL 4815956, at *1-2.  While certain factors like the negotiation and execution of the Agreement, governing law, and Plaintiff's choice of forum might slightly favor California, the other factors strongly counsel against litigation in California and in favor of transfer to Florida, including the parties' contacts with Florida, the differences in the costs of litigation, the availability of compulsory process to compel non-party witnesses, and the ease of access to sources of proof.

Indeed, the convenience of third-party witnesses is "frequently the most important factor in the section 1404(a) calculus." *Burke v. USF Reddaway, Inc.*, No. 2:12–cv–02641–KJM–GGH, 2013 WL 85428, at *4 (E.D. Cal. Jan. 8, 2013); *see also Guingao v. Datalogix Texas Inc.*, No. 2:14-CV-02103-SVW-EX, 2014 WL 12688862, at *1 (C.D. Cal. June 5, 2014). This Court has emphasized that "a moving party must clearly specify key witnesses to be called in order to support contentions

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER VENUE
2:25-CV-04090

1    of inconvenience to witnesses." *Symantec Corp. v. V-Micro Inc.*, 07-CV-5638 SVW

2    (JWJx), 2008 WL 11338120, at *5 (C.D. Cal. Apr. 3, 2008); *see also Kumar,* No.

3    CV 18-3969-R, 2019 WL 9104040, at *1 (transferring to Pennsylvania because

4    Company and majority of witnesses who will testify located there).

5         Here, several material witnesses—including current employees—reside in

6    Florida. *See* Decl. of S. Day, ¶ 12.  These witnesses are outside the subpoena power

7    of this Court but within the reach of the Middle District of Florida. Their testimony

8    is not merely background; it is central to the issue of whether, following the sale of

9    Florida operations from Catalina Yachts to Daedalus Yacht, the contingencies

10   entitling Ms. Day to payment under the Bonus Payment Agreement occurred. *See*

11   *Guingao v. Datalogix Texas Inc.*, 2014 WL 12688862, at *1 (C.D. Cal. June 5, 2014)

12   (distinguishing between background witnesses and those necessary to resolve the

13   dispute).

14        Moreover, the cost and logistical burden of transporting these witnesses to

15   California would be substantial. Transferring the case would reduce that burden and

16   facilitate live testimony, which is preferable to deposition transcripts. *See Decker*

17   *Coal Co.*, 805 F.2d at 843.

18        In addition, the relative ease of access to sources of proof favors transfer to

19   Florda.  In order to resolve Plaintiff's claims and any potential counterclaims and

20   third-party claims brought by Ms. Day, this Court must consider whether any

21   triggering event has occurred to require Plaintiff to abide by the terms of the Bonus

22   Compensation Agreement and fulfill an obligation to pay.  Importantly, Plaintiff's

23   Complaint in paragraph 18 concedes that a sale of Catalina Yacht assets occurred on

24   April 30, 2025, and in resolving this dispute, the fact-finder will need to determine

25   whether what was sold, comprising the Florida operations, obligates the Plaintiff to

26   pay under the terms of the Bonus Compensation Agreement.  (Compl., p. 4).  This

27   factual issue will be resolved based on evidence concerning the company's assets,

28

1  which are located at Catalina Yacht's operations in Florida.  Moreover, the buyer of

2  Catalina Yachts' assets—Daedalus Yacht—is located in North Carolina, which is

3  significantly closer to Florida than California.

4       Accordingly, the factors routinely considered by this Court counsel in favor of

5  transfer to Florida.

6       **C. The Interests of Justice Weigh in Favor of Transfer**

7       The "interests of justice" encompass a broad range of considerations, including

8  judicial economy, court congestion, and the local interest in resolving localized

9  controversies. *See Symantec Corp.*, 2008 WL 11338120, at *3; *In re

10 Genesisintermedia, Inc. Sec. Litig.*, 2003 WL 25667662, at *4.

11      Importantly, other than perhaps some offices in Woodland Hills, California,

12 Catalina Yachts' own actions demonstrate the significant interest Florida has in

13 resolving this litigation and the little interest California has in the litigation.  Catalina

14 Yachts sold their California headquarters in Woodland Hills in 2022 thereby

15 abandoning California to move all of its manufacturing to Florida.

16      Florida has a strong interest in adjudicating this dispute. The sale of Catalina's

17 Florida operations, which triggered the bonus obligation, occurred in Florida.

18 Plaintiff lived and worked in Florida. *See Kumar*, 2019 WL 9104040, at *1

19 (transferring venue where operative facts occurred in transferee forum).  By contrast,

20 although the parties executed the Bonus Compensation Agreement in California,

21 other ties to California are minimal and do *not* "go to the central issue(s) in this case."

22 *Luna v. Wal-Mart Transportation, LLC*, 2018 WL 3569357, at *3, The relevant

23 conduct and decisions occurred in Florida, the Florida operations were sold in

24 Florida, and if this Court agrees that the obligations of the Bonus Compensation

25 Agreement were triggered, Plaintiff breached that agreement in Florida, not

26 California.

27      Additionally, the Central District of California is significantly more congested

28

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 9 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER VENUE
2:25-CV-04090

than the Middle District of Florida. According to the 2024 Federal Judicial Caseload

Statistics: the Central District of California had 14,842 cases whereas the Middle

District of Florida had 6,868 civil cases, and the median time interval in months for

termination by court action during or after pretrial is 28.2 months in the Central

District of California and only 14 months in the Middle District of Florida.[1]

　　　　While some metrics may slightly favor California, the overall burden on the

court system and the efficiency of trial proceedings suggest the interests of justice

favor transfer to Florida.

### D. Plaintiff's Choice of Forum Is Entitled to Minimal Deference

　　　　Although a plaintiff's choice of forum is generally accorded deference, that

deference is reduced where the operative facts did not occur in the chosen forum or

where there is evidence of forum shopping. *See Vigman*, 764 F.2d at 1317; *Rousseaux*

*v. Fin. Indus. Regul. Auth., Inc.*, 2008 WL 11508653, at *2 (S.D. Cal. Mar. 14, 2008).

　　　　Here, Plaintiff's selection of this forum appears strategic rather than

substantive, particularly given the timing in filing the instant action after the

undersigned communicated with Plaintiff's counsel who admitted the Bonus

Compensation Agreement obligation was triggered, the undersigned confirmed the

communication, and then while Ms. Day was working to consensually resolve the

timing of the payment due, Plaintiff sued in this court and for the first time,

challenged the enforceability of the Bonus Compensation Agreement.

　　　　As explained above, a plaintiff's chosen forum receives little deference where

it is apparent that plaintiff is engaged in "forum shopping" and is offered an equally

or more convenient forum elsewhere. *Rousseaux v. Fin. Indus. Regul. Auth., Inc.*, No.

07CV1986 JLS (CAB), 2008 WL 11508653, at *2 (S.D. Cal. Mar. 14, 2008) (citing

---

[1] Federal Judicial Caseload Statistics Report C-5, Median Time from Filing to
Disposition of Civil Cases by Action Taken, published by United States Courts
(March 31, 2024) (https://www.uscourts.gov/data-news/data-
tables/2024/03/31/federal-judicial-caseload-statistics/c-5; visited 6/5/2025).

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER VENUE
2:25-CV-04090

1    *Williams v. Bowman*, 157 F.Supp. 2d 1103, 1106 (N.D. Cal. 2001)).  Here, the sale

2    of Plaintiff's Florida operations, as well as the breach of the Bonus Compensation

3    Agreement, all occurred in Florida after Catalina Yachts sold all of its assets and the

4    key witnesses. Additionally, key witnesses and documents are located there.  Plaintiff

5    may have succeeded in beating Ms. Day to this Court, but the fact remains that the

6    core of the dispute will be decided based upon the facts surrounding the sale of the

7    Florida operations.

8    **IV. CONCLUSION**

9         The convenience of witnesses, the parties' contacts to Florida, the significant

10   contacts in Florida relating to Plaintiff's cause of action (and likely claims to be

11   asserted by Ms. Day), the interests of justice, and the location of operative facts all

12   support transfer to Florida. Plaintiff's choice of forum, while entitled to some

13   deference, does not outweigh these considerations.

14        Accordingly, Defendants respectfully request that this Court transfer this

15   action to the United States District Court for the Middle District of Florida.

16        .

17   Dated:        June 9, 2025              **SHUMAKER, LOOP & KENDRICK, LLP**

18

19

20                                          By:/s/ Steven M. Berman
                                                Steven M. Berman
21                                              Attorneys for Defendant

22

23

24

25

26

27

28

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 11 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER VENUE
2:25-CV-04090