Michael C. Lieb (SBN 126831)
  mlieb@ecjlaw.com
Zoe M. Vallier (SBN 324324)
  zvallier@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Plaintiff
CATALINA YACHTS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CATALINA YACHTS, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>SHARON DAY, an individual; GERARD DOUGLAS, an individual; and DOES 1 through 10, inclusive,<br><br>    Defendant. | Case No. 2:25-cv-04090-SVW-RAO<br><br>Assigned to The Hon. Stephen V. Wilson<br><br>**PLAINTIFF'S OPPOSITION TO AMENDED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>*[Filed concurrently with Declarations of Russell L. Berney and Michael C. Lieb]*<br><br>Date:   July 14, 2025<br>Time:   1:30 p.m.<br><br>Action Filed:   May 7, 2025<br>Trial Date:   None Set |

17639.11:11573552.2

PLAINTIFF'S OPPOSITION TO AMENDED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

## I. INTRODUCTION

This case involves a dispute over rights under two contracts entered into in Los Angeles County, California at a time when all three parties were citizens and residents of the State of California. On November 18, 2002, Defendants Sharon Day ("Day") and Gerard "Gerry" Douglas ("Douglas") (collectively, "Defendants") signed virtually identical contacts, titled "Bonus Compensation Agreement(s)" (the "Agreements") with Plaintiff Catalina Yachts, Inc. ("Plaintiff" or "Catalina"). Defendants assert that, in April 2025, Catalina sold certain assets it owned in the State of Florida, and that this transaction (the "Transaction") triggered bonus payments under the Agreements.

In her Motion to Transfer Venue ("Motion"), Day, now a Nevada resident, seeks to transfer this action to the Middle District of Florida where her California State Bar member lawyer lives. Douglas has neither requested a change in venue nor joined in Day's request.

Day's motion asks the Court to ignore the fact that Catalina is located in California; that all three contracting parties were located in California when they signed the Agreements, and largely while they performed under them; and that Catalina remains based in California. Rather, Day speculates that there may be some disputes over the terms of the Transaction that could require taking testimony from some witnesses in Florida or North Carolina. She also strangely argues that it is easier for her to travel from Nevada to Florida than from Nevada to Los Angeles.

Under settled Ninth Circuit law, a plaintiff's choice of forum is entitled to substantial deference and should not be disturbed unless the balance of factors under 28 U.S.C. § 1404(a) ("Section 1404(a)") strongly favors the defendant. Day has not met this burden. Accordingly, Catalina respectfully requests that the Court deny Day's Motion and keep this matter in the Central District of California.

## II. BACKGROUND

Catalina is a California Corporation, with its principal place of business in

Los Angeles County, California. (Declaration of Russell L. Berney ("Berney Decl."), ¶ 4). It maintains offices and personnel only in Los Angeles County, California, and has no offices or personnel in Florida. (Berney Decl., ¶ 6). Catalina's books, records and accounting information, and its longtime accountants and its officers and directors are located only in Los Angeles County, California – none are located in Florida. (Berney Decl., ¶¶ 5, 10). Catalina's only presence in the State of Florida consists of real property that it leases to third parties (who are not parties to this lawsuit or to any agreement with the Defendants), and on which it does not otherwise conduct any operations. (Berney Decl., ¶ 6).

Catalina is owned by various family trusts created by Jean Butler and her late husband Frank Butler (the "Butlers") (Berney Decl., ¶ 2). The trusts are the: (i) Deborah Reese Irrevocable Trust dated September 7, 2000; (ii) Mary Linn Irrevocable Trust dated September 7, 2000; (iii) Nancy Bear Irrevocable Trust dated September 7, 2000; (iv) David Butler Irrevocable Trust dated September 7, 2000; and (v) Butler Family Trust dated January 30, 1979. (*Id.*). Jean Butler, in her capacity as Trustee of the Butler Family Trust dated January 30, 1979, and Russell L. Berney, as Trustee of the remainder of the aforementioned trusts, are all of the shareholders of Catalina. (*Id.*).

Jean Butler is 95 years old and lives in Los Angeles County, California, and Russell L. Berney is a licensed California attorney with his office and residence in Los Angeles, California. (Berney Decl., ¶¶ 1, 3). Catalina currently has two Officers and Directors: Keith Lichtman (Treasurer/CFO) and Marc Reese (President and Secretary). (Berney Decl., ¶ 10). Both Keith Lichtman and Marc Reese reside and work in Los Angeles County, California. (*Id.*)

Douglas and Day were long-time employees of Catalina, each working several decades for the company. (Berney Decl., ¶ 7). Day retired on or about October 23, 2024; Douglas' employment terminated a few years before that, on or about January 15, 2021. (*Id.*; Complaint, ¶¶ 9-11).

In November 2002, Day and Douglas each executed the Agreements while they were employed by Catalina in California. (Complaint, exs. 1, 2; Berney Decl., ¶ 8). Frank and Jean Butler signed the Agreements on behalf of Catalina. (Complaint, exs. 1, 2). Both Agreements, as the notary acknowledgements confirm, were executed in Los Angeles County. In general terms, the Agreements state that Day and Douglas each qualified for a bonus if they remained with Catalina until the earlier of the sale of the Butlers' stock or sale of all of Catalina's assets, or 7½ years from execution of the Agreement. It is undisputed that Day and Douglas remained employed for more than 7½ years following the execution of their Agreements (and that Catalina was not sold before then).[1] (Complaint, ¶ 16). During that entire 7½ year period, Day and Douglas were employed by Catalina in California. (Berney Decl., ¶ 8).

The bonus is the greater of $1 million or 5% of the "net sales price" or "value" of Catalina, "whichever is appropriate," payable within 60 days of the Butlers receiving the proceeds from the sale of their Catalina shares. (*See* Complaint, exs. 1 and 2, ¶¶ 1.2, 1.4, 1.5.) Catalina contends that no payments are owed to the Defendants because the Butlers have not sold any shares of stock (nor has Catalina sold all or substantially all of its assets). Defendants contend that, notwithstanding the fact that the Butlers still own all their shares of Catalina stock, the Transaction[2] (i.e., the sale of some of Catalina's assets) triggered Defendants'

---

[1] Day asserts that during a conversation between her counsel and Plaintiff's counsel, "Plaintiff's counsel…admitted the Bonus Compensation Agreement was triggered." (Mot., at p. 10). This is not true, and mischaracterizes counsel's conversation. Plaintiff's counsel merely noted what is already alleged in the Complaint, that Defendants had satisfied the 7 ½ year employment condition required to qualify for bonuses. This fact is not disputed. (Declaration of Michael C. Lieb ("Lieb Decl."), ¶ 2).

[2] In the Transaction, Catalina was represented by Ervin Cohen & Jessup, LLP, located in Beverly Hills, California. (Berney Decl., ¶ 5.)

rights to payment. (Mot., at p. 2). This, however, is an issue for another day. The issue before the Court today is whether a Nevada resident, formerly employed by a California business, can compel the transfer of this lawsuit to Florida, where her California-barred lawyer now lives.

### III. ARGUMENT

Under 28 U.S.C. § 1404(a), a district court has discretion to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000). In evaluating whether transfer is appropriate under Section 1404(a), a court must "balance the preference accorded to the plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*, 2005 WL 4715213, at *2 (C.D. Cal. Apr. 28, 2005). Courts typically weigh a number of public and private factors, including: plaintiff's choice of forum; the convenience of the parties; the convenience of the witnesses; the location of books and records; which forum's law applies; the interests of justice; and administrative considerations. *Rad Commc'ns Inc. v. Sec. Nat'l Ins. Co. et al.,* 2025 WL 1673750, at *3 (C.D. Cal. Mar. 31, 2025). In the Ninth Circuit, additional factors may also be relevant in assessing a motion to transfer venue, including: the location where the relevant agreements were negotiated and executed; the contacts relating to plaintiff's cause of action in the chosen forum; the differences in the costs of litigation in the two forums; and access to the source of proof." *Id. citing Jones,* 211 F.3d at 498-99.

"[T]here is a strong presumption in favor of the plaintiff's choice of forum." *See Celestial*, 2005 WL 4715213, at *2. Section 1404(a) "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient and inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id*. As such, it is a defendant's burden to make a strong showing of inconvenience to warrant upsetting plaintiff's

ERVIN COHEN & JESSUP LLP

choice of forum. *Id.*

Day has failed to make a showing of inconvenience sufficient to warrant upsetting Catalina's choice to pursue this action in the Central District of California; and, regardless, the Middle District of Florida would be an improper venue for transfer because Day doesn't live there anymore. Day admits in her Motion that factors like the negotiation and execution of the Agreements (which took place in California), governing law, and Catalina's choice of forum favor this action remaining in California. (Mot., at p. 7). She instead bases her request for a venue transfer on the some contacts with Florida, speculated differences in the costs of litigation, the availability of compulsory process to compel non-party witnesses to attend trial, and the ease of access to sources of proof, which as explained below, do not support moving this matter to the Middle District of Florida.

### A. Venue is Proper in the Central District of California.

Venue is governed by 28 U.S.C. § 1391, which provides that "[a] civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." Under the foregoing, it is undisputed that venue is proper in this Court because a substantial part of the events giving rise to this dispute – namely execution and performance under the Agreements – occurred here.

Day argues that venue is also proper in the Middle District of Florida because the Transaction (i.e., the sale of some of Catalina's assets), which she contends triggered her right to a bonus payment, occurred there. But Defendants' claims arise out of the Agreements that were executed in California and are governed by

California law. Indeed, Day's 7 ½ years of service that potentially entitles her to a bonus in the future, were performed while she lived and worked for Catalina in California. (Berney Decl., ¶ 8). The 2025 Transaction is not any part of the performance under agreements signed 23 years earlier.

Further, even if the Middle District of Florida were *a* proper venue because of the Transaction, as discussed below, that does not override Catalina's proper decision to bring the action here to adjudicate claims over a contract negotiated, signed and substantially performed in this judicial district.

### B. The Parties Have Contacts in California and Catalina's Books, Records and Accounting Information is Exclusively in California.

Day primarily contends that the parties' contacts with Florida and the "relative ease of access to sources of proof" weigh in favor of transferring this action to the Middle District of Florida. They do not. Most of Catalina's key witnesses, primarily current and former employees, officers and directors, owners, accountants and attorneys with knowledge of both the Agreements and the Transaction, reside in California. In addition, all of Catalina's books, records, and accounting information, are maintained in Los Angeles County. (Berney Decl., ¶ 5).

#### 1. *Parties' Contacts*

Jean Butler and her late husband Frank Butler signed the Agreements for Catalina. Jean Butler is 95 years old and lives in Los Angeles County, California. She certainly would not be able to attend proceedings in Florida. (Berney Decl., ¶ 10).

The shareholders of Catalina are: (i) the Butler Family Trust, of which Jean Butler is Trustee, and (ii) the trusts of her adult children, of which Russell L. Berney is Trustee. (Berney Decl., ¶ 2). Russell Berney is a licensed California attorney with his offices in Los Angeles. (Berney Decl., ¶ 1).

Other potential witnesses for Catalina include Keith Lichtman, who is a Catalina director and officer and works and resides in Los Angeles County,

California, and Martha Selby, Frank Butler's former assistant, who resides in California. (Berney Decl., ¶ 10). Marc Reese, Catalina's President and another Catalina Director, also resides and works in Los Angeles County. (*Id.*). Catalina's only business location, which is also where all its business records are located, is in Los Angeles County. (Berney Decl., ¶¶ 5-6).

Day currently lives in Nevada. She states that she formerly lived in the Florida district to which she wants to transfer venue. However, as recently as three years ago, she executed the Statement of Information for Catalina in which she identified herself as Catalina's Chief Executive Officer, with a business address in Simi Valley, California. (Berney Decl., ¶ 13, ex. A).

Remarkably, Day contends that a 50-minute flight from Nevada to California with no time zone change would cause her more of a burden than a five-hour flight to Florida across three time zones. (Day Decl., ¶ 16). It seems obvious that she is bringing this motion for her lawyer's convenience – a non-factor in considerations of venue.

Day has identified certain individuals whom she believes are Catalina employees whom she speculates have knowledge regarding the sale of Catalina's assets, and whom she claims reside in Florida or outside of California. Other than Patrick Turner (a former Officer and Director of Catalina for the past few years), the individuals she has identified by name appear to be former operations people involved with assembling boats, and none of them played any role in the negotiation or execution of the Agreements or the documents comprising the Transaction documents. (Berney Decl., ¶ 11). Day has not identified any information they might have that may be of relevance to this dispute. Indeed, this is not a complicated matter, the assets sold are easily identifiable in the contract of sale and plainly do not comprise the majority of the assets of Catalina.

No venue will be convenient for all parties and witnesses, and some degree of travel will be required regardless of where the case is tried. However, as courts in

this Circuit have consistently held, a transfer under Section 1404(a) is not warranted where it would merely shift the inconvenience from one party to another. *See Celestial*, 2005 WL 4715213, at *2. And here, the inconvenience would shift not from one party to another, but to both parties from Day's Florida counsel.

### 2. Access to Sources of Proof

As described above, Day also places undue emphasis on the sale of some of Catalina's assets in Florida, claiming this is central to the dispute and claiming that related evidence is located in Florida. This is incorrect – Catalina has no assets in Florida except for some real property investment property. (Berney Decl., ¶ 6). Catalina has no Florida assets it could produce, for example. To the extent evidence regarding Catalina's assets is relevant, Catalina's records, including the records of the Transaction, are housed entirely in California, and Catalina's longtime accountants are also based in Los Angeles County. (Berney Decl., ¶ 5). Further, this firm (Ervin Cohen & Jessup), which is based in Beverly Hills, represented Catalina in the Transaction. (*Id.*)

### C. Location of Potential Third Party Witnesses for Day Does Not Favor Transfer to Florida.

Day has failed to identify any material third-party witnesses whose location would support transferring this case to Florida. In her Declaration, she merely asserts that "[t]hese individuals are likely to be material witnesses in this case" based on their alleged knowledge of the sale of Catalina's assets, but she does not clarify which third-party witnesses she is referring to. (Day Decl., ¶ 12.) She further states that third-party witnesses who may have knowledge regarding the sale and purchase of Catalina's Florida-based operations reside in North Carolina. (Day Decl., ¶ 14.) These vague assertions are insufficient, and certainly don't weigh in favor of moving the case to Florida.

Indeed, without specific information as to who these individuals are, the nature of their anticipated testimony and its relevance to the issues in dispute, and

any issues that would render them unavailable if the case remained here, the Court cannot reasonably determine whether their testimony will be necessary, material, or unavailable. What is clear, however, is that none of the potential third-party individuals identified by Day signed the Agreements, nor has she alleged that they participated in the drafting or negotiation of those agreements. Accordingly, the mere fact that some of Day's potential third-party witnesses may reside outside of California (with many also outside of Florida) does not weigh in favor of transfer under Section 1404(a).

### D. Interests of Justice Do Not Weigh in Favor of Transfer.

Finally, Day contends that the interests of justice weigh in favor of transferring the action. They do not. The interests of justice include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case. *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1134 (C.D. Cal. 2009). Of these three concerns, familiarity with the governing California law favors leaving the case here. There are no related cases to be kept together. And administrative considerations such as docket congestion (which Day has not adequately supported anyway) are given little weight in the Ninth Circuit in assessing the propriety of a Section 1404(a) transfer. *Id.* (refusing to take "congestion" into account when deciding whether venue transfer was appropriate.)

Again, the Agreements at issue are California contracts. They were executed while Day and Douglas were employed in California, and they are governed by California law. As such, this Court, located in the very jurisdiction where the agreements were formed, is best positioned to interpret and apply that law. The Central District of California has a clear interest in adjudicating contractual disputes involving California employers and California-based agreements. For these reasons, the interests of justice strongly favor retaining venue in this District.

/ / /

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Transfer Venue.

DATED: June 23, 2025                ERVIN COHEN & JESSUP LLP
                                    Michael C. Lieb
                                    Zoe M. Vallier

                              By: _____
                                    Michael C. Lieb
                                    Attorneys for Plaintiff CATALINA
                                    YACHTS, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Catalina Yachts, Inc., certifies that this brief contains 3,024 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

Dated: June 23, 2025

_____
Michael C. Lieb
Attorneys for Plaintiff CATALINA YACHTS, INC.