Shumaker, Loop & Kendrick, LLP
Steven M. Berman, Bar No. 256846
sberman@shumaker.com
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone: 813.229.7600
Facsimile: 813.229.1660

Attorneys for Defendant
Sharon Day

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| CATALINA YACHTS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARON DAY, an individual; GERARD DOUGLAS, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants<br><br>GERARD DOUGLAS,<br><br>Counter-Plaintiff<br><br>v.<br><br>CATALINA YACHTS, INC., a California corporation; RUSSELL LANE BERNEY, as Trustee; JEAN C. BUTLER, as Trustee, MICHAEL REARDON, an individual; and ROES 1 through 5, as Trustees, inclusive<br><br>Counter-Defendant<br><br>and | Case No. 2:25-CV-04090-SVW-RAOx<br><br>**ANSWER AND COUNTERCLAIMS OF DEFENDANT SHARON DAY**<br><br>Hon. Stephen V. Wilson<br>United States District Judge<br>Courtroom 10A<br>Action Filed: May 7, 2025<br><br>**JURY TRIAL DEMANDED** |

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 1 -

ANSWER AND COUNTERCLAIMS OF
DEFENDANT SHARON DAY
2:25-CV-04090

SHARON DAY,

Counter-Plaintiff,

v.

CATALINA YACHTS, INC., a California corporation; MICHAEL REARDON, an individual,

Counter-Defendants.

Defendant, Sharon Day (hereinafter "Day") answers the Complaint ("Complaint") filed by Plaintiff, Catalina Yachts, Inc. (hereafter "Catalina" or "Plaintiff") in the above styled matter and asserts her Counterclaims as against Catalina and as against Michael Reardon as follows. Any and all allegations not expressly admitted, denied, qualified or otherwise responded to are hereby denied.

**Answer to Complaint**

1. Defendant admits the allegations in Paragraph 1, lines 19-26, and denies the allegations in the last sentence, lines 26-28.

2. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2.

3. Defendant admits that, following the destruction of her home by Hurricane Helene, she is currently resides with her daughter in the State of Nevada and denies the remaining allegations in Paragraph 3.

4. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4, and therefore denies them.

5. Defendant admits the amount in controversy exceeds $75,000, but

otherwise denies the allegations in Paragraph 5.

6. Defendant admits the allegations in Paragraph 6.

7. Paragraph 7 sets forth legal conclusions and argument to which no response is required. To the extent a response is required, Defendant denies the allegations.

8. Paragraph 8 sets forth legal conclusions and argument to which no response is required. To the extent a response is required, Defendant denies the allegations but acknowledges this Court has ruled that venue is proper in the Central District of California.

9. Defendant admits the allegation in Paragraph 9 as it pertains to her employment, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Defendant Douglas and therefore denies them.

10. Defendant denies the allegations in Paragraph 10 and further states that she formally retired on December 2, 2024.

11. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies them.

12. Defendant admits the allegation in Paragraph 12 as it pertains to her execution of a Bonus Agreement, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Defendant Douglas and therefore denies such allegations.

13. Paragraph 13 sets forth legal conclusions and argument to which no response is required. Furthermore, the allegations in Paragraph 13 reference a written agreement, which speaks for itself. To the extent a response is required, and to the extent the allegations differ from or mischaracterizes, misuses, or misstates the agreement, Defendant denies such allegations.

14. Defendant admits the Bonus Agreement exists and is a valid contract, which speaks for itself. Otherwise, Defendant denies the allegations in Paragraph 14

to the extent it sets forth legal conclusions and argument, to which no response is required and, to the extent the allegations differ from or mischaracterizes, misuses, or misstates the agreement Defendant denies such allegations.

15. Defendant admits the Bonus Agreement exists and is a valid contract, which speaks for itself. Otherwise, Defendant denies the allegations in Paragraph 15 to the extent it sets forth legal conclusions and argument, to which no response is required, and to the extent the allegations differ from or mischaracterizes, misuses, or misstates the agreement Defendant denies such allegations.

16. Defendant admits she remained employed by Catalina beyond May 18, 2010, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Defendant Douglas and therefore denies those allegations. Because the allegations in Paragraph 16 regarding the Sale of Catalina prior to that date are vague and lack specificity, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies such allegations.

17. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations that "the Butlers have not sold any shares of Catalina nor received any payment or consideration for the sales of their shares," and therefore denies those allegations. Furthermore, Paragraph 17 also sets forth legal conclusions and argument to which no response is required, and the allegations in Paragraph 17 reference a written agreement, which speaks for itself. To the extent a response is required, and to the extent the allegations differ from or mischaracterizes, misuses, or misstates the agreement, Defendant denies such allegations in Paragraph 17.

18. Paragraph 18 sets forth legal conclusions and argument to which no response is required, and the allegations in Paragraph 18 reference a written agreement, which speaks for itself. To the extent a response is required, and to the extent the allegations differ from or mischaracterizes, misuses, or misstates the

agreement, Defendant denies such allegations in Paragraph 18.

19. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations that "the Butlers have never sold any shares of Catalina and continue to hold 100% of their shares today," and therefore denies those allegations. Furthermore, Paragraph 19 also sets forth legal conclusions and argument to which no response is required, and the allegations in Paragraph 19 reference a written agreement, which speaks for itself. To the extent a response is required, and to the extent the allegations differ from or mischaracterizes, misuses, or misstates the agreement, Defendant denies such allegations in Paragraph 19.

20. Defendant hereby incorporates the responses herein for Paragraphs 1-19, inclusive, as if fully set forth herein.

21. Defendant admits an actual controversy exists as to whether Defendant is entitled to payment under the terms of the Bonus Compensation Agreement and admits the payment is owed to her under the Bonus Compensation Agreement. The remainder of Paragraph 21 sets forth legal conclusions and argument, to which no response is required, and also references a written agreement, which speaks for itself. To the extent a response is required, and to the extent the allegations differ from or mischaracterizes, misuses, or misstates the agreement, Defendant denies the allegations in Paragraph 21.

**Affirmative Defenses**

Defendant asserts the following defenses with respect to the allegations in the Complaint, without assuming the burden of proof or persuasion where such burden rests on Plaintiff. Defendant has not knowingly or intentionally waived any applicable defenses or counterclaims, and she reserves the right to assert and rely upon other applicable defenses or counterclaims that may become available or apparent throughout the course of the action, including, but not limited to the conduct

of discovery. Defendant reserves the right to amend, or seek to amend, her Answer, including her affirmative other defenses and counterclaims.

### First Defense

The Complaint fails to state a claim upon which relief may be granted, and Plaintiff has not pled the claim with the required specificity under the Federal Rules of Civil Procedure.

### Second Defense

Plaintiff's breach of the contract bars its claim.

### Third Defense

The applicable statute of limitations bars Plaintiff's claim, in whole or in part.

### Fourth Defense

The doctrine of estoppel bars Plaintiff's claim based on party admissions, including statements by Plaintiff's counsel confirming Catalina Yachts was aware of the obligation in the Bonus Agreement and planned to fulfill the obligation.

### Fifth Defense

The doctrines of unclean hands and *in pari delicto* bar Plaintiff's claim.

### Sixth Defense

The doctrines of waiver and/or release bar Plaintiff's claim.

### Seventh Defense

Plaintiff's claim is barred, in whole or in part, by its bad faith.

## Eight Defense

Plaintiff's claim is barred by its fraud and/or misrepresentations.

## Ninth Defense

Plaintiff's claim is barred by its own culpable conduct.

## Tenth Defense

The doctrine of laches bars Plaintiff's claim.

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 7 -

ANSWER AND COUNTERCLAIMS OF
DEFENDANT SHARON DAY
2:25-CV-04090

## COUNTERCLAIMS

Counter-Plaintiff Day ("Day"), by and through her counsel, alleges as against Counter-Defendants, Catalina Yachts, Inc., and Michael Reardon ("Reardon") as follows:

**Jurisdiction, Justiciability, and Venue**

1. Day is currently a resident of the State of Nevada.

2. Upon information and belief, Catalina Yachts, Inc., ("Catalina") is a California corporation with a place of business in Los Angeles County, California, and is owned by various family trusts created by Frank and Jean Butler.

3. Upon information and belief, Additional Counter-Defendant Michael Reardon (hereinafter "Reardon") is a resident of the State of North Carolina.

4. Again, This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Catalina and Defendant Day and Gerard Douglas and because the amount in controversy exceeds the jurisdictional minimum of $75,000.

5. This Court has subject matter jurisdiction over the Counterclaims against Additional Counter-Defendants Reardon, pursuant to 28 U.S.C § 1367(a) and Federal Rules of Civil Procedure 13(b) and (h) and 20(a)(2)(A). Reardon may be joined in this action because Counter-Plaintiff Day asserts a right to relief against Catalina and Reardon jointly, severally or in the alternative with respect to and arising out of the same transaction, occurrence, or series of transactions or occurrences related to breach of the Bonus Compensation Agreement.

6. This Court has personal jurisdiction over Catalina Yachts and and over Reardon based on his purposeful availment and doing business with residents of the State of California, with the contacts arising out of the transaction involving the sale and purchase of assets from Catalina Yachts, a California corporation.

7. This Court has determined venue is proper in the Central District of California because a substantial part of the events or omissions giving rise to the claim occurred in Los Angeles County.

**Factual Allegations**

8. Day began a five-decade long career at Catalina Yachts, Inc., ("Catalina Yachts") in Woodland Hills, California, as an Administrative Assistant to the President back in July 1974. She was soon promoted to Office Manager, and eventually advanced to Vice-President of Sales. In that role, she focused on developing sales strategies and coordinating efforts with Catalina dealers throughout the United States and internationally.

9. In 2001, Frank Butler, the founder of Catalina Yachts, was quoted as saying Day and Defendant Douglas "really have had more to do with the success we've had than anyone else." (Catalina Yachts: One Big Family; Steve Mitchell; available at https://www.catalina22.org/index.php/cruising?view=article&id=56&catid=20; visited 7/28/2025).[1]

10. On November 18, 2002, Day, Jean Butler (individually), and Frank Butler (as President of Catalina Yachts and individually) executed the Bonus Compensation Agreement, which is attached to the Complaint as Exhibit 1. (Doc. No. 1-1).

11. Day was employed by Catalina Yachts when she signed the Bonus Compensation Agreement.

12. Catalina Yachts offered Day this Bonus Compensation Agreement to secure her continued employment, as evidenced by the Recitals, which provide, "Employee is a key employee of Catalina and a Director of Catalina Yachts . . . .

---

[1] Attached as Exhibit 1.

1   Catlina wishes to retain Employee's services." (Doc. No. 1-1, p. 2, Recitals ¶ A-B).

2      13.   The Bonus Agreement also identified all issued and outstanding shares
3   of stock as being owned by nine separate Butler Family Trusts, defined as a group
4   and referenced in the document as the "Butlers." (Doc. No. 1-1, p. 2, Recital ¶ C).

5      14.   Under the Bonus Compensation Agreement, the "Bonus is Earned" if
6   Day continued working full-time for Catalina "until the earlier of: (i) the sale of
7   Catalina; or (ii) seven and one-half (7-1/2) years from the date of execution of this
8   Agreement." (Doc. No. 1-1, p. 2 Recital ¶ 1.1).

9      15.   The Bonus Compensation Agreement defined the "Sale of Catalina" to
10  include "sale of the Butlers' stock **or** sale of all of Catalina's assets." (Doc. No. 1-1,
11  p. 2, Recital ¶ 1.1 (emphasis in original)).

12     16.   The Bonus Compensation Agreement provided for the payment of a
13  bonus to Day as "additional compensation equal to five percent (5%) of the: (i) net
14  sales price; or (ii) value of Catalina, whichever is appropriate." (Doc. No. 1-1, p. 3
15  ¶1.2).  Under the express terms, "The Bonus paid to Employee shall be no less than
16  one million ($1,000,000)." (Doc. No. 1-1, p. 3, Recital ¶ 1.4).

17     17.   If the bonus was to be determined based upon the value of Catalina
18  Yachts, the Bonus Compensation Agreement required Catalina Yachts to "select an
19  independent, professional appraiser. . . [to] determine Catalina's fair market value."
20  (Doc. No. 1-1, p. 3, Recital ¶1.3).

21     18.   In 2010, Day's right to the bonus vested because she had completed
22  seven and one-half years of employment following execution of the Bonus
23  Compensation Agreement.

24     19.   Throughout her employment and continuing until his passing in 2020,
25  Frank Butler repeatedly reaffirmed Catalina's obligation to Day and stated she would
26  be paid in full pursuant to the Bonus Compensation Agreement. Mr. Butler often
27  made these comments in front of others, including Jean Butler, the Butlers' adult

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 10 -

ANSWER AND COUNTERCLAIMS OF
DEFENDANT SHARON DAY
2:25-CV-04090

children, and Sharon Day's husband.

20. Following the passing of Catalina Yachts' founder and President Frank Butler in 2020, Catalina Yachts appointed Day to be his successor to assume the role and responsibilities of President of Catalina Yachts, continuing to lead the company with a commitment to its legacy and growth.

21. In 2021, Day moved to Florida and worked almost exclusively at Catalina Yachts' offices in Florida.

22. Following the passing of Mr. Butler, Jean Butler continued to repeatedly reaffirm Catalina's obligation to Day that she would be paid pursuant to the Bonus Compensation Agreement. Ms. Butler made statements including "you will be taken care of" and "you will get your money" referring to the Bonus Compensation Agreement.

23. During her employment, Day also communicated almost weekly with the Butlers' daughter Nancy Bear, who repeatedly reaffirmed Catalina Yachts' obligation to Day that she would be paid pursuant to the Bonus Compensation Agreement and made statements like "you deserve that."

24. On December 2, 2024, Day formally submitted her retirement documents and stepped down as President.

25. Day had remained employed with Catalina Yachts because she had earned the bonus in an amount to be determined under the Bonus Compensation Agreement.

26. Upon information and belief, Catalina sold all of its assets used or useful in the operation of its business to Counter-Defendant Reardon and/or a related entity on or about April 23, 2025.

27. Upon information and belief, Catalina Yachts structured the sale to attempt to avoid triggering the obligation to pay Day the Vested Bonus by purporting to sell fewer than all of Catalina Yachts' assets and none of its stock.

28. As a result of this transaction, Catalina is insolvent or left with insufficient assets with which to honor its obligations to creditors.

29. Catalina's sale of all of the assets used and/or useful in the operation of its business in April 2025 obligated Catalina to pay Day under the terms of the Bonus Compensation Agreement.

30. After learning of the sale, Day, through counsel, demanded Catalina pay the bonus owed pursuant to the Bonus Compensation Agreement. Catalina, through counsel, did not dispute owing the bonus pursuant to the Bonus Compensation Agreement and indicated it would pay the bonus pursuant to the Bonus Compensation Agreement. A copy of correspondence with counsel is attached as Exhibit 2.

31. Subsequently, Catalina refused and continues to refuse to pay the bonus Day is entitled to receive under the Bonus Compensation Agreement.

**Count One – Breach of Contract**
**(Against Catalina)**

32. Day restates Paragraphs 1-31 of the Counterclaims and incorporates those allegations by reference as if fully set forth herein.

33. Catalina and Day entered into the Bonus Compensation Agreement, which is a valid and enforceable contract.

34. After executing the Bonus Compensation Agreement, Day continued her employment with Catalina for more than seven and a half years.

35. Day performed all obligations, covenants, and conditions, including conditions precedent, required of her under the Bonus Compensation Agreement, except to the extent any such obligations, covenants, or conditions have been excused, prevented, or waived by Catalina's acts or omissions.

36. Under the express provisions of the Bonus Compensation Agreement,

Catalina Yachts became obligated to pay Day in April 2025 upon the sale of all of the assets used and/or useful in the operation of the business.

37. Catalina Yachts breached the Bonus Compensation Agreement by failing to pay Day five percent (5%) of Catalina Yacht's fair market value, or one million dollars ($1,000,000), whichever is greater, which was triggered when Catalina sold all of the assets used and/or useful in the operation of the business to Reardon.

38. As a direct and proximate result of Catalina's actions, Day has suffered and will continue to suffer damages in an amount in excess of $75,000 to be proven at trial.

**Count Two – Breach of Duty of Good Faith and Fair Dealing**
**(Against Catalina)**

39. Day restates Paragraphs 1-38 of the Counterclaims and incorporates those allegations by reference as if fully set forth herein.

40. Catalina and Day entered into the Bonus Compensation Agreement, which is a valid and enforceable contract, and by executing the contract, Catalina provided Day an implied covenant of good faith and fair dealing.

41. Upon information and belief, Catalina structured the sale of all Catalina's assets used and/or useful in the operation of its business in April 2025 to prevent Day from recovering a bonus under the Bonus Compensation Agreement that would have occurred if Catalina had sold the stock to the acquirer of the assets.

42. Upon information and belief, Catalina's deceitful and intentional actions of structuring the sale of all of the assets used and/or useful in the operation of its business have made performance of the obligation to pay the Vested Bonus impossible and frustrated Day's right to receive a bonus owed pursuant to the Bonus Compensation Agreement.

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 13 -

ANSWER AND COUNTERCLAIMS OF
DEFENDANT SHARON DAY
2:25-CV-04090

43. As a direct and proximate result of Catalina Yacht's actions, Day has suffered and will continue to suffer damages in an amount in excess of $75,000 to be proven at trial.

**Count Three – Promissory Estoppel**
**(Against Catalina)**

44. Day restates Paragraphs 1-43 of the Counterclaims and incorporates those allegations by reference as if fully set forth herein.

45. Catalina, through its then-President Frank Butler, as well as Jean Butler and other shareholders of Catalina, made numerous representations that Day would receive her bonus owed under the Bonus Compensation Agreement upon the sale of Catalina.

46. Day relied on the oral and written representations to her detriment.

47. She continued her employment with Catalina, moved from California to Florida, did not seek alternative employment or business arrangements, and planned her retirement on the assumption that he would receive additional compensation from the Vested Bonus due to Catalina's repeated assurances that she would be paid the Vested Bonus upon the sale of Catalina's assets.

48. As a direct and proximate result of Catalina's actions, Day has suffered and will continue to suffer special and general damages in an amount in excess of $75,000 to be proven at trial.

**Count Four – Fraudulent Transfer of Assets 72. Cal. Civ. Code § 3439.04**
**(Against Catalina and Reardon)**

49. Day restates Paragraphs 1-48 of the Counterclaims and incorporates those allegations by reference as if fully set forth herein.

50. Under California Law, a "transfer made or obligation incurred by a

debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Civ. Code § 3439.04.

51. At all times relevant hereto, Catalina was a debtor of Day and Day was a creditor of Catalina by virtue of her entitlement to bonus compensation in the amount of not less than $1,000,000 that vested on May 18, 2010, pursuant to the Bonus Compensation Agreement.

52. Upon information and belief, in April 2025, while Catalina was indebted to Day, Catalina purported to transfer all of the assets used and/or useful in the operation of its business to Reardon and/or an entity associated with Reardon.

53. Upon information and belief, Catalina made the transfer with the intent to hinder, delay, or defraud Day.

54. Upon information and belief, Catalina transferred and Reardon received all of Catalina's assets used and/or useful in the operation of its yacht manufacturing and sales business without receiving a reasonably equivalent value in exchange for the transfer of assets.

55. Upon information and belief, Catalina engaged in the transaction and its remaining assets were unreasonable small in relation to the transaction.

56. Upon information and belief, the transfer is voidable under California law.

57. As a direct and proximate result of Catalina Yacht's actions, Day has suffered and will continue to suffer damages in an amount in excess of $75,000 to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Counter-Plaintiff Sharon Day respectfully requests that this

Court enter judgment as follows on Plaintiff's Complaint and the Counterclaims:

1. In response to Plaintiff's claim for declaratory relief, a declaration that Catalina Yachts owes Day a bonus payment under the Bonus Compensation Agreement and that Day is entitled to receive the bonus under the Bonus Compensation Agreement;

2. Judgment in favor of Day on the Counterclaims as follows:

   a. Damages in the amount to be proven at trial but not less than one million dollars ($1,000,000);

   b. A declaration that the transfer of assets from Catalina Yachts, Inc. to Reardon and/or an entity associated therewith constituted a voidable transfer under California Civil Code §§ 3439 et seq., an order avoiding the transfer to the extent necessary to satisfy Day's claim; an order of attachment or other provisional remedy against the assets transferred; and an accounting of all assets transferred;

   c. Pre-judgment and post-judgment interest at the legal rate;

   d. Reasonable attorneys' fees and costs of suit; and

   e. Such other and further relief as this Court deems just and proper.

3. Day hereby demands a trial by jury on all issues so triable.

Dated: July 28, 2025

SHUMAKER, LOOP & KENDRICK, LLP
Steven M. Berman
By: /s/ Steven M. Berman
    Steven M. Berman
    Attorney for Defendant
    SHARON DAY