Michael C. Lieb (SBN 126831)
    mlieb@ecjlaw.com
Zoe M. Vallier (SBN 324324)
    zvallier@ecjlaw.com
Jacqueline McGuinness (SBN 337625)
    jmcguinness@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Plaintiff/Counter-Defendant
CATALINA YACHTS, INC.
and Counter-Defendants RUSSELL L.
BERNEY and JEAN C. BUTLER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CATALINA YACHTS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARON DAY, an individual; GERARD DOUGLAS, an individual; and DOES 1 through 10, inclusive,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:25-cv-04090-SVW-RAO<br><br>Assigned to The Hon. Stephen V. Wilson<br><br>**COUNTER-DEFENDANTS CATALINA YACHTS, INC.'S, RUSSELL LANE BERNEY'S, AND JEAN C. BUTLER'S NOTICE OF MOTION AND MOTION TO DISMISS GERARD DOUGLAS' COUNTERCLAIM AND COUNT FOUR OF SHARON DAY'S COUNTERCLAIM**<br><br>*[Filed concurrently with Declaration of Jacqueline McGuinness; and [Proposed] Order]*<br><br>Date:    October 20, 2025<br>Time:    1:30 p.m.<br>Dept.:    10A<br><br>Action Filed:  May 7, 2025<br>Trial Date:    None Set |

ERVIN COHEN & JESSUP LLP

**TO ALL PARTIES AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on October 25, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Stephen V. Wilson, U.S. District Judge of the Central District of California, in Courtroom 10A of First Street Courthouse located at 350 W. 1st Street, 10th Floor, Los Angeles, California 90012, Plaintiff/Counter-Defendant Catalina Yachts, Inc. ("Catalina") and Counter-Defendants Russell Lane Berney ("Berney") and Jean C. Butler ("Butler") (collectively, "Movants") will and hereby do move the court for an order dismissing all of the counterclaims brought by Defendant Gerard Douglas ("Douglas") in his First Amended Counterclaim ("FACC") on the ground that they are all barred by the four-year contractual statute of limitations. In the alternative, Movants seek dismissal of Counts 1, 5, 6, 8, 10, and 11 of Douglas' FACC on the following grounds:

| Count | Cause of Action | Ground |
|-------|-----------------|--------|
| One | Breach of Contract | Statute of Limitations |
| Five | Elder Financial Abuse | Douglas is not a California Resident |
| Six | Fraudulent Transfer | Claim lies only against transferee |
| Eight | Intentional Interference | Movants are not strangers to the contract |
| Ten | Unjust Enrichment | Not a cause of action |
| Eleven | Accounting | Grounds for Accounting not alleged |

Count Four of the Counterclaim of Sharon Day ("Day") is substantially identical to Count Six of the Douglas Counterclaim, and thus this Motion also seeks the dismissal of Count Four of Day's Counterclaim. Collectively, this Motion refers to Douglas and Day as "Defendants."

The parties met and conferred regarding the substance of this Motion, including by participating in a telephonic conference on August 22, 2025 during which the parties discussed the counterclaims and the applicable law. Notwithstanding those discussions, Defendants declined to withdraw or amend the counterclaims outlined above. (*See* Declaration of Jacqueline McGuinness in Support of Motion (the "McGuinness Decl."), ¶¶ 2, 3). Accordingly, this Motion is

ERVIN COHEN & JESSUP LLP

1  made following the conference of counsel pursuant to Local Civil Rule 7-3.

2      This Motion is based on this Notice and the Memorandum of Points and

3  Authorities provided below, the McGuinness Declaration, the pleadings and papers

4  on file, and any other matter that may be presented at the hearing.

5

6  DATED:  August 29, 2025          ERVIN COHEN & JESSUP LLP
                                    Michael C. Lieb
7                                   Zoe M. Vallier
8                                   Jacqueline McGuinness

9

10                                  By:  _____/s/ Michael C. Lieb_____
11                                       Michael C. Lieb
                                         Attorneys for Counter-Defendants,
12                                       Catalina Yachts, Inc., Russell Lane Berney,
13                                       and Jean C. Butler

1

# **<u>TABLE OF CONTENTS</u>**

2

Page

3   I.   INTRODUCTION ...................................................................... 8

4   II.   ARGUMENT ........................................................................... 10

5   A.   Factual Background .............................................................. 10

6   B.   Legal Standard ..................................................................... 13

7   C.   All Claims Are Barred By The Statute of Limitations. ........................ 13

8   D.   Count Five – Elder Financial Abuse Should Be Dismissed. ................ 14

9   E.   Count Six - Fraudulent Transfer Of Assets Should Be Dismissed. ....... 15

10   1.   Douglas Fails To Meet The Pleading Requirements. ................. 15

11   2.   Douglas Cannot Seek Double Recovery. ................................. 16

12   3.   Day's Count Four Should Be Dismissed For The Same Reasons. .............................................................. 17

13

14   F.   Count Eight - Intentional Interference with Contract Should Be Dismissed. ......................................................... 17

15   G.   Count Ten - Unjust Enrichment Should Be Dismissed. ..................... 20

16   H.   Count Eleven - Accounting Should Be Dismissed. ............................ 20

17   III.   CONCLUSION ...................................................................... 21

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5
*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005) .................................................................. 10

6

7
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 13

8

9
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 13

10

11
*Bureerong v. Uvawas*,
  922 F. Supp. 1450 (C.D. Cal. 1996) ...................................................... 13

12

13
*Cafusso v. Gen. Dynamics C4 Sys.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................... 13

14
*Hueso v. Select Portfolio Servicing, Inc.*,
  527 F. Supp. 3d 1210 (S.D. Cal. 2021) ................................................. 20

15

16
*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................... 13

17

18
*Kelleher v. Kelleher*,
  2014 WL 94197 (N.D. Cal. Jan. 9, 2014) ............................................. 16

19

20
*Lee v. Lee*,
  2021 WL 4459762 (C.D. Cal. May 13, 2021) ....................................... 18

21
*Leitner v. Sadhana Temple of New York, Inc.*,
  2014 WL 12588645 (C.D. Cal. June 10, 2014) ..................................... 20

22

23
*Los Angeles Airways, Inc. v. Davis*,
  687 F.2d 321 (9th Cir. 1982) ................................................................. 18

24

25
*Moses v. Innoprise Software*,
  2013 WL 6019536 (N.D. Cal. Nov. 13, 2013) ...................................... 16

26

27
*Salandstacy Corp. v. Freeney*,
  2014 WL 12570924 (C.D. Cal. Jan. 3, 2014) ........................................ 18

28

ERVIN COHEN & JESSUP LLP

*In re VeriFone Sec. Litig.*,
    11 F.3d 865 (9th Cir. 1993) ............................................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................... 13

**State Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) ....................................................................... 18

*Aryeh v. Canon Business Solutions, Inc.*,
    55 Cal.4th 1185 (2013) ..................................................................... 14

*Cortez v. Vogt*,
    52 Cal. App. 4th 917 (1997) ............................................................. 16

*Los Defensores, Inc. v. Gomez*,
    223 Cal. App. 4th 377 (2014) ........................................................... 20

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003) ........................................................... 20

*Mintz v. Blue Cross of California*,
    172 Cal. App. 4th 1594 (2009) .................................................... 18, 19

*PM Group, Inc. v. Stewart*,
    154 Cal. App. 4th 55 (2007) ............................................................. 19

*Pooshs v. Philip Morris USA, Inc.*,
    51 Cal.4th 788 (2011) ....................................................................... 14

*Renda v. Nevarez*,
    223 Cal. App. 4th 1231 (2014) .................................................... 16, 17

**Statutes**

Cal. Civ. Code § 3439 ............................................................................ 16

Cal. Civ. Proc. § 337 .............................................................................. 13

Cal. Wel. & Inst. Code § 15610 ....................................................... 14, 15

Cal. Wel. & Inst. Code § 15657 ............................................................. 14

Fed. R. Civ. P. 12(b)(6) .......................................................................... 13

ERVIN COHEN & JESSUP LLP

6

Fed. R. Civ. P. 8(a) ................................................................................. 13

Fed. R. Civ. P. 9(b) ............................................................... 10, 13, 16, 17

ERVIN COHEN & JESSUP LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Catalina Yachts, Inc. ("Catalina") filed a declaratory judgment action seeking to resolve a dispute over bonus payment obligations under agreements it entered into in 2002 with defendants Sharon Day ("Day") and Gerard Douglas ("Douglas") (collectively, "Defendants"). Both Defendants responded with counterclaims. Both Defendants added Michael Reardon ("Reardon") as a counterclaim defendant, alleging that he was the recipient of a fraudulent transfer. Douglas also added Russell Lane Berney ("Berney") and Jean C. Butler ("Butler"), who collectively control the trusts that are the sole shareholders of Catalina.

The dispute arises out of identical contracts, each called a "Bonus Compensation Agreement," (each the "Agreement") that Catalina signed with Day and Douglas in November 2002. The Agreements are exhibits 1 and 2 to the Complaint (Dkts. 1); and Douglas also attached his own Agreement to his Counterclaim (Dkts. 30, 55, Ex. A), while Day acknowledges the genuineness of the contract attached to Catalina's complaint. (Dkt. 46, ¶ 14; 55).

Catalina alleges and seeks a declaration that no money is due under either Agreement because payment is only due on a sale of shares of Catalina stock to a third party. (Dkt. 1, Exs. 1, 2) (Agreement § 1.5). Neither Defendant alleges that the Butlers have sold any of their Catalina stock—and they have not.

Catalina acknowledges in its complaint that Day and Douglas have "earned" their bonuses. Section 1.1 of the Agreements states that the bonuses are "earn[ed]" if Day and Douglas remained with Catalina for seven and one-half years from the date of execution of the Agreement (or earlier, if Catalina were sold prior to the seven and one-half years anniversary date, which it was not). But, pursuant to sections 1.2 and 1.5, Defendants are entitled to *payment* of their bonuses only upon, and from the proceeds of, the sale of Catalina stock.

Day acknowledges in her counterclaim that she was not entitled to payment

ERVIN COHEN & JESSUP LLP

1  after seven and one-half years. She contends that a transaction that closed in or

2  around April 2025, in which Catalina sold what Day contends are all of Catalina's

3  operating assets, triggered her right to payment. (Dkt. 46, ¶ 29.)

4      Douglas, on the other hand, alleges:

5          "35.   The bonus vested upon Douglas's continued

6      employment for seven and a half years following execution of

7      the [Agreement]."

8                  *      *      *      *

9          "37.   Catalina was obligated to determine the value of

10     *and pay the bonus upon vesting*." (Emphasis added.)

11  Dkt. 55. Thus, based on Douglas' own allegations, he became entitled to payment in

12  May 2010. His claim for the bonus thus became time-barred in May 2014. All of

13  Douglas' claims hinge on his right to payment of his bonus. If the contract does not

14  give him that right—or if his assertion of that right is time-barred—all of his claims

15  fail.

16     Douglas *does* allege in a second breach of contract count, which incorporates

17  the first count and all prior paragraphs of the counterclaim, that Catalina again

18  breached the Agreement in April 2025 when it entered into an Asset Purchase

19  Agreement with Counter-Defendant Reardon. (Dkt. 55, ¶¶ 29, 46). But if the bonus

20  had been due in 2010, that is the date of breach.

21     Each Douglas counterclaim thus suffers from the same fatal defect: Douglas

22  alleges his bonus "vested" in May 2010 when he completed seven and one-half

23  years of employment; and on vesting, payment became due. Thus, any breach of

24  contract claim accrued in May 2010, over fifteen years ago, well beyond

25  California's four-year statute of limitations. All of Douglas' claims, regardless of

26  how they are repackaged, seek damages for this same 2010 injury and are therefore

27  time-barred.

28     Even were the Court to credit Douglas' expected argument that he is merely

ERVIN COHEN & JESSUP LLP

pleading in the alternative (and he is not; his Count Two incorporates Count One[1]), several of his claims must be dismissed:

- Count One for breach of contract is time-barred on its face.
- Count Five for elder financial abuse is improper because it is a claim available only to California residents.
- Count Six for fraudulent transfer fails to meet Rule 9(b)'s heightened pleading requirements and improperly seeks double recovery against the debtor. Day's Count Four should be dismissed for the same reasons.
- Count Eight for intentional interference targets parties who were not "strangers" to the contract—including Catalina's attorney, a contracting party, and controlling shareholders—all of whom are immune from interference liability under California law.
- Count Ten for unjust enrichment fails because California does not recognize an independent cause of action for unjust enrichment.
- Count Eleven for accounting fails to allege either a fiduciary relationship or sufficiently complex accounts to warrant equitable relief.

## II.    ARGUMENT

### A.    Factual Background

In November 2002, Douglas and Day each executed substantially similar Agreements with Catalina. (Dkt. 1, ¶ 12; Dkt. 46, ¶ 10; Dkt. 55, ¶ 23). Under these Agreements, Day and Douglas would each earn a bonus if they continued to work full-time for Catalina until the earlier of: "(i) the sale of Catalina; or (ii) seven and

---

[1] *See also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 585–86 (2d Cir. 2005) (holding that plaintiff cannot plead in the alternative "where it must state allegations which are at odds with each other in order for it to make out all the elements of an individual claim.")  Here, to allege a timely claim for breach of contract in 2025, he cannot allege that the contract was actually breached in 2010 because that bars his claim.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  one-half (7½) years from the date of execution of this agreement." (Dkt. 1, Exs. 1,

2  2) (Agreement § 1.1). The agreements defined "Sale of Catalina," for purposes of

3  determining whether Defendants' obligation to serve at least seven and one-half

4  years would be shortened, to include "sale of the Butlers' stock or sale of all of

5  Catalina's assets." (*Id.*). The amount of the bonus is 5% of Catalina's net sales price

6  or of its value, "whichever is appropriate."[2] (*Id.* at § 1.2).

7      Section 1.5 establishes the timing of payment, which is "within sixty (60)

8  days of payment to the Butlers of the consideration they are to be paid for their

9  shares." If the Butlers are to be paid over time for their shares, then the bonus would

10  also be paid over time, capped at five years. (*Id.* at § 1.6).

11      Thus, the bonus cannot even be calculated, much less paid, until the Butlers'

12  shares of Catalina are sold; and even then, payment could take as long as five years

13  depending on the terms of the sale.

14      The Agreements also establish a $1 million minimum. (*Id.* at § 1.4). But of

15  course, it could not be known if that minimum is triggered until the shares are sold

16  and the sales price is known.

17      The dispute centers on whether bonus payments became due when Day and

18  Douglas completed their employment terms, or whether payments are only triggered

19  when "the Butlers" (Catalina's controlling shareholders through various family

20  trusts) receive payment for the sale of their stock. Neither Defendant alleges that the

21  Butlers have sold any shares of Catalina; indeed, they continue to hold 100% of

22  their shares today. Yet, Douglas alleges that his bonus became payable in May 2010

23  when he completed seven and one-half years of employment. (Dkt. 55, ¶¶ 25, 36-

24

25  [2]    The reference to valuation as an alternative method to calculate the bonus is a

26  product of Section II., under which Day or Douglas would be entitled to a

27  valuation proceeding if they died or became disabled before completing seven

      and one-half years of service. It is undisputed that they remained employed

28  well beyond the seven and one-half year minimum period.

1    38). By so alleging, he has acknowledged his claim, as he seeks to construe the

2    Agreement, is time-barred.

3         On April 30, 2025, Catalina sold some of its assets to an individual named

4    Reardon. (Dkt. 1, ¶ 18). Douglas' First Amended Counterclaim ("FACC") alleges

5    that Berney and Butler (among others) serve as trustees of trusts that hold all stock

6    in Catalina and exercised the voting rights associated with the shares of stock held in

7    trust to approve the asset sale in 2025. (Dkt. 55, ¶¶ 9-10, 15, 25). Douglas is suing

8    Berney and Butler for authorizing the Reardon sale by voting for it.

9         On May 7, 2025, Catalina filed this action seeking declaratory judgment that

10   no bonus payments are currently due under the Agreements. (Dkt. 1). Douglas filed

11   his Answer and Counterclaim on July 16, 2025 (Dkt. 43) and Day filed her Answer

12   and Counterclaims on July 28, 2025 (Dkt. 46). On August 1, 2025, the parties

13   stipulated to extend Catalina's deadline to respond to both sets of Counterclaims to

14   August 18, 2025, or twenty-one days from the filing of any amended counterclaim.

15   (Dkt. 52). Douglas subsequently filed his FACC on August 8, 2025. (Dkt. 55).

16        Douglas' FACC includes eleven causes of action, all of which are challenged

17   in this Motion on statute of limitations grounds. (Dkt. 55). Additionally, six specific

18   claims are challenged on independent substantive grounds: breach of contract

19   (Count One), elder financial abuse (Count Five), fraudulent transfer of assets (Count

20   Six), intentional interference with contract (Count Eight), unjust enrichment (Count

21   Ten), and accounting (Count Eleven). Even if these claims are not time-barred by

22   Douglas' allegation that his bonus vested in May 2010, these claims are still not

23   viable for the reasons discussed below.

24        To avoid repetitive filings, Movants also seek in this Motion the dismissal of

25   Day's Count Four. Her Count Four, alleging fraudulent transfer, suffers from the

26   same deficiencies as Douglas' Count Six, and should be dismissed for the reasons

27   discussed in Section II.E., below.

28

ERVIN COHEN & JESSUP LLP

1    B.    **Legal Standard**

2    Dismissal is appropriate where a pleading's factual allegations, together with

3    all reasonable inferences, fail to "state a plausible claim for relief." Fed. R. Civ. P.

4    12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Cafusso v. Gen. Dynamics C4*

5    *Sys.*, 637 F.3d 1047, 1054 (9th Cir. 2011). While a court will assume the truth of all

6    factual allegations for purposes of a motion to dismiss, the court may disregard

7    conclusory allegations of law and unwarranted inferences. *In re VeriFone Sec.*

8    *Litig.*, 11 F.3d 865, 868 (9th Cir. 1993); *Bureerong v. Uvawas*, 922 F. Supp. 1450,

9    1462 (C.D. Cal. 1996). Similarly, "[t]hreadbare recitals of the elements of a cause of

10    action, supported by mere conclusory statements," are not taken as true. *Iqbal*, 556

11    U.S. at 678 (citation omitted). Instead, to avoid dismissal, a party must set forth

12    factual allegations that raise a right to relief above the speculative level. *Bell Atl.*

13    *Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (stating that if plaintiffs "have not

14    nudged their claims across the line from conceivable to plausible, their complaint

15    must be dismissed"). Pleadings that only permit the court to infer "the mere

16    possibility of misconduct," are insufficient to survive a motion to dismiss. *Iqbal*,

17    556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

18    In addition to the typical pleading requirements under Rule 8(a), allegations

19    of fraudulent conduct are subject to Rule 9(b)'s heightened pleading requirement,

20    even if fraud is not a necessary element of the stated claim. *Kearns v. Ford Motor*

21    *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

22    1097, 1106 (9th Cir. 2003).

23    C.    **All Claims Are Barred By The Statute of Limitations.**

24    All of Douglas' counterclaims are time-barred because Count One for breach

25    of contract establishes that the claim accrued more than four years before this action

26    was filed, rendering all other claims—which stem from this breach of contract

27    claim—also untimely.

28    California Code of Civil Procedure section 337, subdivision (a) imposes a

ERVIN COHEN & JESSUP LLP

four-year statute of limitations on claims for breach of a written contract. Douglas alleges that his bonus vested upon completion of "seven and one-half years of employment following execution of the bonus agreement," which was executed in November 2002. (Dkt. 55, ¶¶ 22, 25, 35, 38, Ex. A). The FACC alleges that, upon vesting, Plaintiff was obligated to pay Douglas the bonus, and by not doing so, breached the Agreement. (*Id.*, ¶¶ 2, 37, 38). Seven and one-half years after November 2002 places the vesting date and alleged breach in May 2010. Accordingly, per his own counterclaim, all of Douglas' alleged rights to payment accrued, and thus all applicable statutes of limitations began to run, in May 2010. *Pooshs v. Philip Morris USA, Inc.*, 51 Cal.4th 788, 797 (2011) ("A cause of action accrues 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation.") (Citation omitted.)

Douglas cannot circumvent the statute of limitations by recasting his time-barred 2010 breach of contract claim as arising from the 2025 asset sale. His complaint alleges that Catalina's obligation to pay the bonus arose in May 2010. (Dkt. 55, ¶¶ 35, 37). It was not the breach of a continuing obligation that could be breached anew fifteen years later because fifteen years later, Douglas' right to enforce his claim had become time-barred. *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185, 1199 (2013) ("Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.'") (Citation omitted.)

All of Douglas' claims, regardless of how they are framed, seek redress for the same injury: Catalina's failure to pay the bonus that Douglas claims should have been paid in 2010. Accordingly, all of Douglas' claims are time-barred.

### D.   Count Five – Elder Financial Abuse Should Be Dismissed.

Douglas alleges his claim for elder financial abuse under California Welfare & Institutions Code sections 15610.20 and 15657.6.

14

ERVIN COHEN & JESSUP LLP

As an initial matter, Section 15657.6 applies to elders who are incompetent. If Douglas is not competent, he should not be managing a lawsuit. But more importantly, Section 15657.6 does not apply "to any agreement entered into by an elder or dependent adult when the elder or dependent adult had capacity." Douglas alleges he was working for Catalina as chief engineer and vice president at the time of execution of the Agreement. (Dkt. 55, ¶ 1). He further alleges he continued in that position for nearly 20 more years—until January 15, 2021. (*Id.*, ¶ 28). His own allegations contradict his contention that he lacked capacity in 2002. He also does not allege that he was 65 years old in 2002.[3]

As to Section 15610.20 (as well as Section 15657.6), Douglas admits he is a resident of Florida. (*Id.*, ¶ 7). Only California residents may assert a financial elder abuse claim under the Welfare & Institutions Code. Cal. Wel. & Inst. Code § 15610.27 ("Elder" means any person residing in this state, 65 years of age or older). Count Five must be dismissed.

**E.    Count Six - Fraudulent Transfer Of Assets Should Be Dismissed.**

Douglas' fraudulent transfer claim against Plaintiff fails to state a claim for multiple independent reasons.

*1.    Douglas Fails To Meet The Pleading Requirements.*

A "transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay, or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as

---

[3]    Douglas does allege that he was 65 years old "[a]t all times relevant hereto." To the extent that means he is alleging he was 65 in 2002, the allegation is provably false, and presumably his counsel will correct it in his opposition.

MOTION TO DISMISS COUNTERCLAIMS

ERVIN COHEN & JESSUP LLP

1    they became due." *Cortez v. Vogt*, 52 Cal. App. 4th 917, 928 (1997) (internal

2    citations omitted); *see also* Cal. Civ. Code § 3439.04; *Moses v. Innoprise Software*,

3    2013 WL 6019536, at * 8 (N.D. Cal. Nov. 13, 2013). The elements of a fraudulent

4    transfer claim must be pled with particularity pursuant to Federal Rule of Civil

5    Procedure 9(b).[4] *Kelleher v. Kelleher*, 2014 WL 94197, at *5 (N.D. Cal. Jan. 9,

6    2014).

7        Douglas' allegations fall far short of a particularized factual showing. Instead,

8    Douglas alleges that Catalina "made the transfer with actual intent to hinder, delay,

9    or defraud Douglas" (Dkt. 55, ¶¶ 71, 72) without alleging specific facts showing

10   fraudulent intent. These bare conclusions cannot satisfy Rule 9(b)'s heightened

11   pleading requirements.

12              **2.    Douglas Cannot Seek Double Recovery.**

13       More fundamentally, Douglas' fraudulent transfer claim against Catalina

14   violates the well-established principle that "a plaintiff is entitled to only a single

15   recovery for a distinct harm suffered, and double or duplicative recovery for the

16   same harm is prohibited." *Renda v. Nevarez*, 223 Cal. App. 4th 1231, 1237-38

17   (2014). As the *Renda* court explained, granting a creditor "an additional judgment

18   against [the debtor] under the UFTA . . . *would in effect allow [the creditor] to*

19   *recover more than the underlying judgment, which the [UFTA] does not allow*." *Id.*

20   (emphasis in original) (internal quotation marks omitted).

21       The fraudulent transfer claim seeks relief from Catalina for the same

22   underlying harm as Douglas' breach of contract claims: the alleged failure to pay the

23

24   [4]    While Douglas' counterclaim appears to be for a common law fraudulent
         transfer of assets claim, the analysis is the same as the analysis under
25       California Civil Code section 3439 (California's Uniform Voidable
         Transactions Act). *Kelleher*, 2014 WL 94197, at *6 ("the same analysis
26       applies to both causes of action and Plaintiff must make a particularized
         showing of the circumstances constituting actual fraud on the part of the
27       named Defendants").

28

ERVIN COHEN & JESSUP LLP

1   bonus. And it accomplishes nothing. If the Court rules in favor of Douglas on his

2   contract claim, it will enter judgment in his favor and against Catalina. It is for that

3   reason that a fraudulent transfer claim lies against the *recipient* of the allegedly

4   fraudulent transfer (in this case Reardon). The purpose of the claim is to allow a

5   creditor, who first establishes he is a creditor, to recover property that should have

6   been available to satisfy the debt but is no longer available. That relief lies only

7   against the recipient of the property; the transferor, for better or worse, has

8   transferred its rights in that property. *Renda*, 223 Cal. App. 4th at 1236–37

9   (explaining that, under common law principles, courts have held that "a money

10  judgment against the transferee was permissible, but a money judgment against the

11  debtor was 'not sustained by reason or authority.'"). The transferor cannot transfer it

12  back.

13          Thus, either the fraudulent transfer claim is a nullity because it serves no

14  purpose as to Catalina, or it seeks a second award of damages on the same alleged

15  debt, which the double-recovery doctrine prohibits.

16                **3.    *Day's Count Four Should Be Dismissed For The Same***

17                        ***Reasons.***

18          Like Douglas, Day attempts to plead her fraudulent transfer claim with vague

19  "information and belief" allegations that fail to meet the Rule 9(b) pleading

20  requirements. And, on a more basic level, she too seeks either a double recovery

21  against Catalina or an impossible remedy that would compel Catalina to cause

22  Reardon to transfer back Catalina's property. This is simply not a claim that is

23  adequately pleaded, and even if it were, it is not a claim that lies against Catalina.

24          **F.    <u>Count Eight - Intentional Interference with Contract Should Be</u>**

25                **<u>Dismissed.</u>**

26          Douglas sued Butler and Berney, the controlling shareholders of Catalina, for

27  tortious interference with a contract between Douglas and Catalina. Under

28  California law, only a "stranger to [the] contract may be liable in tort for

ERVIN COHEN & JESSUP LLP

intentionally interfering with the performance" of it. *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1603 (2009) (internal quotation marks omitted). The "tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994); *see also Salandstacy Corp. v. Freeney*, 2014 WL 12570924, at *4 (C.D. Cal. Jan. 3, 2014) (the manager's privilege "is designed to protect the important interests served by the confidential relationship between a fiduciary and his principal"); *see also Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir. 1982) (finding that under California law, where "an advisor is motivated in part by a desire to benefit his principal, his conduct in inducing a breach of contract should be privileged."); *Lee v. Lee*, 2021 WL 4459762, at *21 (C.D. Cal. May 13, 2021) (denying motion for leave to amend where defendants alleged to have induced breach were CEO and other corporate officers, finding that "the manager's privilege would likely apply to their actions as the CEO" and concluding "[t]his potential futility confirms that amendment is not warranted").

In *Mintz*, the plaintiff sued Blue Cross (the claims administrator) for intentional interference with his insurance contract with CalPERS, alleging that Blue Cross denied coverage for his cancer treatment. 172 Cal. App. 4th at 1603. The California Court of Appeal held that plaintiff could not state a claim for interference because Blue Cross was not "a stranger" to the contract because it acted as CalPERS's agent in administering the insurance contract, explaining that the pertinent question is whether the defendant has a sufficient relationship to the contracting parties to preclude stranger status. *Id.* at 1603-4. The court rejected the plaintiff's attempt to avoid the "stranger" requirement by alleging that Blue Cross "was not acting in the course and scope of its agency for CalPERS," explaining "that is a conclusion we need not and do not accept as true, and the complaint alleges no facts that would support that conclusion." *Id.*

ERVIN COHEN & JESSUP LLP

1   The FACC's own allegations establish that Berney and Butler cannot be

2   "strangers" to the contract based on multiple overlapping relationships, each of

3   which independently defeats this claim.

4   *First*, the FACC explicitly alleges that Berney and Butler acted as agents for

5   Catalina in connection with the asset sale that allegedly triggered the interference.

6   (Dkt. 55, ¶¶ 18, 86). California courts have consistently held that "corporate agents

7   and employees acting for and on behalf of a corporation cannot be held liable for

8   inducing a breach of the corporation's contract." *Mintz*, 172 Cal. App. 4th at 1604

9   (internal quotation marks omitted). The FACC alleges that Berney and Butler were

10  acting as Catalina's agents in structuring and executing the asset sale, the very

11  transaction that Douglas now claims should have triggered his bonus payment under

12  the Agreement. (Dkt. 55, ¶¶ 18, 86); *Mintz*, 172 Cal. App. 4th at 1604 (the

13  "contracting party's agent, like the contracting party, cannot be liable for

14  interference with the contract").

15  *Second*, the FACC alleges that Berney was Catalina's attorney and that the

16  asset purchase agreement was entered into at his direction. (Dkt. 55, ¶¶ 18, 29). An

17  attorney acting as a contracting party's agent cannot be liable for an interference

18  claim. *Mintz*, 172 Cal. App. 4th at 1604; *see also PM Group, Inc. v. Stewart*, 154

19  Cal. App. 4th 55, 65 (2007) (neither entertainer nor his manager, lawyer, and agent

20  could be liable for tortious interference with subcontracts).

21  *Third*, the FACC alleges that Butler signed the Agreement "individually."

22  (Dkt. 55, ¶ 23). A party to a contract cannot interfere with that same contract. *Mintz*,

23  172 Cal. App. 4th at 1604.

24  While Douglas may argue that Berney was not acting in his attorney capacity

25  and Butler was not acting in her individual capacity, as explained in *Mintz*, "the

26  court need not accept those facts as true, as the complaint alleges no facts that would

27  support that conclusion." 172 Cal. App. 4th at 1605. The FACC provides no factual

28  basis for distinguishing between Berney and Butler's various roles or explaining

1  how they could have acted outside those relationships with Catalina.

2  **Fourth**, even setting aside their roles as attorney and a contracting party,

3  Berney and Butler possess the type of ownership interest that precludes stranger

4  status. The FACC alleges that as trustees of trusts, they (among others) "hold[] all

5  stock in Catalina Yachts, Inc." who "exercised the voting rights associated with the

6  shares of stock held in trust to approve a sale transaction." (Dkt. 55, ¶¶ 9, 10, 15,

7  25.). As shareholders and ultimate legal owners, Berney and Butler possess exactly

8  the type of direct relationship that *Mintz* held precludes stranger status.

9  **G.    Count Ten - Unjust Enrichment Should Be Dismissed.**

10  Douglas' claim for unjust enrichment against Plaintiff, Berney, and Butler

11  should be dismissed because California does not recognize an independent cause of

12  action for unjust enrichment. *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th

13  779, 793 (2003) ("there is no cause of action in California for unjust enrichment.");

14  *see also Leitner v. Sadhana Temple of New York, Inc.*, 2014 WL 12588645, at *12

15  (C.D. Cal. June 10, 2014) ("Federal courts have consistently . . . held that California

16  law does not recognize a cause of action for unjust enrichment").

17  **H.    Count Eleven - Accounting Should Be Dismissed.**

18  Douglas' accounting claim fails to allege the essential elements required

19  under California law. "An action for an accounting may be brought to compel the

20  defendant to account to the plaintiff for money or property, (1) where a fiduciary

21  relationship exists between the parties, or (2) where, even though no fiduciary

22  relationship exists, the accounts are so complicated that an ordinary legal action

23  demanding a fixed sum is impracticable." *Los Defensores, Inc. v. Gomez*, 223 Cal.

24  App. 4th 377, 401 (2014). A plaintiff must meet "the considerable burden of

25  showing 'that the accounts between the parties are of such a complicated nature that

26  only a court of equity can satisfactorily unravel them.'" *Hueso v. Select Portfolio*

27  *Servicing, Inc.*, 527 F. Supp. 3d 1210, 1235 (S.D. Cal. 2021).

28  The FACC alleges neither a fiduciary relationship between Douglas and

ERVIN COHEN & JESSUP LLP

1  Catalina nor that any accounts are so complicated that ordinary legal action is

2  impracticable. Indeed, the FACC seeks a valuation of Catalina's fair market value to

3  calculate his bonus percentage (Dkt. 55, ¶ 103), not an accounting at all—and

4  certainly not an accounting of complex records. This relief is not available through

5  an accounting claim, which is designed to compel production and examination of

6  financial records, not asset valuation. It is also irrelevant because, as discussed

7  above, a valuation proceeding would only have been triggered if Douglas died or

8  became disabled before May 2010.

9  **III.   CONCLUSION**

10      For the foregoing reasons, Movants respectfully request that this Court

11  dismiss all of the claims alleged in Douglas' FACC as time-barred. In the

12  alternative, the Court should dismiss Counts 1, 5, 6, 8, 10 and 11. The Court should

13  also dismiss Day's claim for fraudulent transfer, as against Catalina, for the same

14  reasons it should dismiss Count 6 of Douglas' FACC.

15  DATED:  August 29, 2025          ERVIN COHEN & JESSUP LLP

16                                   Michael C. Lieb
                                     Zoe M. Vallier
17                                   Jacqueline McGuinness

18

19                           By:        /s/ Michael C. Lieb
20                                   Michael C. Lieb
                                     Attorneys for Counter-Defendants,
21                                   Catalina Yachts, Inc., Russell Lane Berney,
                                     and Jean C. Butler
22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Counter-Defendants, Catalina Yachts, Inc., Russell Lane Berney, and Jean C. Butler, certify that this brief contains 4,829 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: August 29, 2025                    */s/ Michael C. Lieb*

_____

Michael C. Lieb

17639.11:11618532.8

22

MOTION TO DISMISS COUNTERCLAIMS