Shumaker, Loop & Kendrick, LLP
Steven M. Berman, Bar No. 256846
sberman@shumaker.com
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone: 813.229.7600
Facsimile: 813.229.1660

Attorneys for Defendant
Sharon Day

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| CATALINA YACHTS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARON DAY, an individual; GERARD DOUGLAS, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants<br><br>GERARD DOUGLAS,<br><br>Plaintiff<br><br>v.<br>_____<br>Defendant<br><br>and<br><br>SHARON DAY,<br><br>Counterclaim Plaintiff,<br><br>v. | Case No. 2:25-CV-04090-SVW-RAOx<br><br>**AMENDED ANSWER AND COUNTERCLAIMS OF DEFENDANT SHARON DAY**<br><br>Hon. Stephen V. Wilson<br>United States District Judge<br>Courtroom 10A<br>Action Filed: May 7, 2025<br><br>**JURY TRIAL DEMANDED** |

- 1 -

AMENDED COUNTERCLAIMS OF
DEFENDANT SHARON DAY
2:25-CV-04090

38299655v4

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

CATALINA YACHTS, INC.,
a California Corporation,

        Counterclaim Defendant.

Defendant/Counterclaimant, Sharon Day (hereinafter "Day") by and through undersigned counsel, hereby files this Amended Counterclaim[1] against Plaintiff/Counter-Defendant Catalina Yachts, Inc., pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure. No responsive pleading to the original Counterclaim has been filed; therefore, Counterclaimant files this Amended Counterclaim as a matter of right.

## COUNTERCLAIMS

Counter-Plaintiff Day ("Day"), by and through her counsel, alleges as against Counter-Defendants, Catalina Yachts, Inc., as follows:

**Jurisdiction, Justiciability, and Venue**

1. Day is currently a resident of the State of Nevada.

2. Upon information and belief, Catalina Yachts, Inc., ("Catalina") is a California corporation with a place of business in Los Angeles County, California, and is owned by various family trusts created by Frank and Jean Butler.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Catalina and Defendant Day and Gerard Douglas and because the amount in controversy exceeds the jurisdictional minimum of $75,000.

4. This Court has subject matter jurisdiction over the Counterclaims

---

[1] This filing does not amend Day's Answer to the Complaint, (Doc. No. 46), and that pleading remains as filed.

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 2 -

AMENDED COUNTERCLAIMS OF DEFENDANT SHARON DAY
2:25-CV-04090

38299655v4

pursuant to 28 U.S.C § 1367(a).

5. This Court has personal jurisdiction over Catalina Yachts.

6. This Court has determined venue is proper in the Central District of California because a substantial part of the events or omissions giving rise to the claim occurred in Los Angeles County.

**Factual Allegations**

7. Day began a five-decade long career at Catalina Yachts, Inc., ("Catalina Yachts") in Woodland Hills, California, as an Administrative Assistant to the President back in July 1974. She was soon promoted to Office Manager, and eventually advanced to become the Vice-President of Sales. In that role, she focused on developing sales strategies and coordinating efforts with Catalina dealers throughout the United States and internationally.

8. In 2001, Frank Butler, the founder of Catalina Yachts, was quoted as saying Day and Defendant Douglas "really have had more to do with the success we've had than anyone else." (CATALINA YACHTS: ONE BIG FAMILY; Steve Mitchell; available at https://www.catalina22.org/index.php/cruising?view=article&id=56&catid=20; visited 7/28/2025).[2]

9. On November 18, 2002, Day, Jean Butler (individually), and Frank Butler (as President of Catalina Yachts and individually) executed the Bonus Compensation Agreement, which is attached to the Complaint as Exhibit 1. (Doc. No. 1-1).

10. Day was employed by Catalina Yachts when she signed the Bonus Compensation Agreement.

11. Catalina Yachts offered Day this Bonus Compensation Agreement to

---

[2] Attached as Exhibit 1.

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 3 -

AMENDED COUNTERCLAIMS OF DEFENDANT SHARON DAY
2:25-CV-04090

38299655v4

secure her continued employment, as evidenced by the Recitals, which provide, "Employee is a key employee of Catalina and a Director of Catalina Yachts . . . . Catlina wishes to retain Employee's services." (Doc. No. 1-1, p. 2, Recitals ¶ A-B).

12. The Bonus Agreement also identified all issued and outstanding shares of stock as being owned by nine separate Butler Family Trusts, defined as a group and referenced in the document as the "Butlers." (Doc. No. 1-1, p. 2, Recital ¶ C).

13. Under the Bonus Compensation Agreement, the "Bonus is Earned" if Day continued working full-time for Catalina "until the earlier of: (i) the sale of Catalina; or (ii) seven and one-half (7-1/2) years from the date of execution of this Agreement." (Doc. No. 1-1, p. 2 Recital ¶ 1.1).

14. The Bonus Compensation Agreement defined the "Sale of Catalina" to include "sale of the Butlers' stock **or** sale of all of Catalina's assets." (Doc. No. 1-1, p. 2, Recital ¶ 1.1 (emphasis in original)).

15. The Bonus Compensation Agreement provided for the payment of a bonus to Day as "additional compensation equal to five percent (5%) of the: (i) net sales price; or (ii) value of Catalina, whichever is appropriate." (Doc. No. 1-1, p. 3 ¶1.2). Under the express terms, "The Bonus paid to Employee shall be no less than one million ($1,000,000)." (Doc. No. 1-1, p. 3, Recital ¶ 1.4).

16. If the bonus was to be determined based upon the value of Catalina Yachts, the Bonus Compensation Agreement required Catalina Yachts to "select an independent, professional appraiser. . . [to] determine Catalina's fair market value." (Doc. No. 1-1, p. 3, Recital ¶1.3).

17. In 2010, Day's right to the bonus vested because she had completed seven and one-half years of employment following execution of the Bonus Compensation Agreement.

18. Throughout her employment and continuing until his passing in 2020, Frank Butler repeatedly reaffirmed Catalina's obligation to Day and stated she would

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 4 -

AMENDED COUNTERCLAIMS OF DEFENDANT SHARON DAY
2:25-CV-04090

38299655v4

be paid in full, pursuant to the Bonus Compensation Agreement. Mr. Butler often made these comments in front of others, including Jean Butler, the Butlers' adult children, and Sharon Day's husband.

19. Following the passing of Catalina Yachts' founder and President Frank Butler in 2020, Catalina Yachts appointed Day to be his successor to assume the role and responsibilities of President of Catalina Yachts, continuing to lead the company with a commitment to its legacy and growth.

20. In 2021, Day moved to Florida and worked almost exclusively at Catalina Yachts' offices in Florida.

21. Following the passing of Mr. Butler, Jean Butler continued to repeatedly reaffirm Catalina's obligation to Day that she would be paid pursuant to the Bonus Compensation Agreement. Ms. Butler made statements including "you will be taken care of" and "you will get your money" referring to the Bonus Compensation Agreement.

22. During her employment, Day also communicated almost weekly with the Butlers' daughter Nancy Bear, who repeatedly reaffirmed Catalina Yachts' obligation to Day that she would be paid pursuant to the Bonus Compensation Agreement and made statements like "you deserve that."

23. Day relied on these statements when she moved to Florida and continued her employment.

24. On December 2, 2024, with the assistance of Catalina's counsel, Day formally submitted her agreed retirement documents and stepped down as President.

25. Day remained employed with Catalina Yachts, in part, because she had earned the bonus in an amount to be determined under the Bonus Compensation Agreement.

26. On February 14, 2025, Michael Reardon ("Reardon") learned that Catalina Yachts, Inc. ("Catalina") was potentially for sale. Mr. Reardon learned this

information at the Miami Boat Show, when he first met Patrick Turner, who was then the President of Catalina

27. In early March 2025, Michael Reardon entered into negotiations with Marc Reese and Russell Berney to purchase the assets of Catalina.

28. At all times, Mr. Reese and Mr. Berney acted on behalf of the ownership of and for Catalina.

29. The negotiations culminated in an agreement to purchase the assets of Catalina, as memorialized in the signed, confidential Asset Purchase Agreement dated April 23, 2025.

30. Toward the end of April 2025, and prior to execution of the Asset Purchase Agreement, Mr. Reardon learned from Ms. Day's counsel that Ms. Day had an employment agreement that promises a payment upon the sale of Catalina. Catalina had not previously disclosed this obligation to Mr. Reardon.

31. Mr. Reardon did not agree to take on this liability, so the Asset Purchase Agreement, which was still being negotiated, was revised at that time to exclude any liability, related to Ms. Day's employment contract, somehow being transferred to Mr. Reardon.

32. Mr. Berney and Mr. Reese informed Mr. Reardon, during negotiations, that Catalina was aware of the obligation to pay Ms. Day following consummation of the revised Asset Purchase Agreement. Mr. Berney and Mr. Reese told Mr. Reardon clearly Catalina was aware of and would pay the obligation to Ms. Day following the asset sale closing and that Mr. Reardon would not be responsible for it.

33. Mr. Reardon indicated no other similar liability was disclosed during his negotiations to purchase the assets of Catalina.

34. Upon information and belief, Catalina sold its assets used or useful in the operation of its business to Michael Reardon and/or a related entity on or about April 23, 2025.

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 6 -

AMENDED COUNTERCLAIMS OF DEFENDANT SHARON DAY
2:25-CV-04090

38299655v4

35. Upon information and belief, Catalina Yachts structured the sale to attempt to avoid triggering the obligation to pay Day the Vested Bonus by purporting to sell fewer than all of Catalina Yachts' assets and none of its stock.

36. As a result of this transaction, Catalina became insolvent or was left with insufficient assets with which to honor its obligations to creditors.

37. Catalina's sale of all of the assets used and/or useful in the operation of its business in April 2025 obligated Catalina to pay Day under the terms of the Bonus Compensation Agreement.

38. After learning of the sale, Day, through counsel, demanded Catalina pay the bonus owed pursuant to the Bonus Compensation Agreement. Catalina, through counsel, never disputed owing the bonus pursuant to the Bonus Compensation Agreement and indicated it would pay the bonus pursuant to the Bonus Compensation Agreement. A copy of correspondence with counsel is attached as Exhibit 2.

39. Subsequently, Catalina refused and continues to refuse to pay the bonus Day is entitled to receive under the Bonus Compensation Agreement.

**Count One – Breach of Contract**
**(Against Catalina)**

40. Day restates Paragraphs 1-39 of the Counterclaims and incorporates those allegations by reference as if fully set forth herein.

41. Catalina and Day entered into the Bonus Compensation Agreement, which is a valid and enforceable contract.

42. After executing the Bonus Compensation Agreement, Day continued her employment with Catalina for more than seven and a half years.

43. Day performed all obligations, covenants, and conditions, including conditions precedent, required of her under the Bonus Compensation Agreement,

Shumaker, Loop & Kendrick, LLP
Attorneys at Law
Tampa

- 7 -

AMENDED COUNTERCLAIMS OF DEFENDANT SHARON DAY
2:25-CV-04090

38299655v4

except to the extent any such obligations, covenants, or conditions have been excused, prevented, or waived by Catalina's acts or omissions.

44. Under the express provisions of the Bonus Compensation Agreement, Catalina Yachts became obligated to pay Day in April 2025 upon the sale of all of the assets used and/or useful in the operation of the business.

45. During negotiations for the sale of Catalina, Catalina and its agents admitted to the obligation under the Bonus Compensation Agreement and promised to pay under the Bonus Compensation Agreement upon the sale of Catalina.

46. Catalina Yachts breached the Bonus Compensation Agreement by failing to pay Day five percent (5%) of Catalina Yacht's fair market value, or one million dollars ($1,000,000), whichever is greater, which was triggered when Catalina sold all of the assets used and/or useful in the operation of the business to Reardon.

47. As a direct and proximate result of Catalina's actions, Day has suffered and will continue to suffer damages in an amount in excess of $75,000 to be proven at trial.

**Count Two – Breach of Duty of Good Faith and Fair Dealing**
**(Against Catalina)**

48. Day restates Paragraphs 1-39 of the Counterclaims and incorporates those allegations by reference as if fully set forth herein.

49. Catalina and Day entered into the Bonus Compensation Agreement, which is a valid and enforceable contract, and by executing the contract, Catalina provided Day an implied covenant of good faith and fair dealing.

50. Upon information and belief, in derogation of its covenant of good faith and fair dealing, Catalina structured the sale of all Catalina's assets used and/or useful in the operation of its business in April 2025 to prevent Day from recovering a bonus

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 8 -

AMENDED COUNTERCLAIMS OF DEFENDANT SHARON DAY
2:25-CV-04090

38299655v4

under the Bonus Compensation Agreement that would have occurred if Catalina had sold the stock to the acquirer of the assets.

51. Upon information and belief, Catalina's deceitful and intentional actions, in structuring the sale of all of the assets used and/or useful in the operation of its business, have made performance of the obligation to pay the Vested Bonus impossible and frustrated Day's right to receive a bonus owed pursuant to the Bonus Compensation Agreement.

52. As a direct and proximate result of Catalina Yacht's actions, Day has suffered and will continue to suffer damages in an amount in excess of $75,000 to be proven at trial.

**Count Three – Promissory Estoppel**
**(Against Catalina)**

53. Day restates Paragraphs 1-39 of the Counterclaims and incorporates those allegations by reference as if fully set forth herein.

54. Catalina, through its then-President Frank Butler, as well as Jean Butler and other shareholders of Catalina, made numerous representations that Day would receive her bonus owed under the Bonus Compensation Agreement upon the sale of Catalina.

55. Day relied on the oral and written representations to her detriment.

56. She continued her employment with Catalina, moved from California to Florida, did not seek alternative employment or business arrangements, and planned her retirement on the assumption that he would receive additional compensation from the Vested Bonus due to Catalina's repeated assurances that she would be paid the Vested Bonus upon the sale of Catalina's assets.

57. As a direct and proximate result of Catalina's actions, Day has suffered and will continue to suffer special and general damages in an amount in excess of $75,000 to be proven at trial.

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 9 -

AMENDED COUNTERCLAIMS OF
DEFENDANT SHARON DAY
2:25-CV-04090

38299655v4

**Count Four – Fraudulent Transfer of Assets 72. Cal. Civ. Code § 3439.04 (Against Catalina)**

58. Day restates Paragraphs 1-39 of the Counterclaims and incorporates those allegations by reference as if fully set forth herein.

59. Under California Law, a "transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Civ. Code § 3439.04.

60. At all times relevant hereto, Catalina was a debtor of Day and Day was a creditor of Catalina by virtue of her entitlement to bonus compensation in the amount of not less than $1,000,000 that vested on May 18, 2010, pursuant to the Bonus Compensation Agreement.

61. Upon information and belief, in April 2025, while Catalina was indebted to Day, Catalina purported to transfer its assets used and/or useful in the operation of its business to Mr. Reardon and/or an entity associated with Mr. Reardon.

62. Upon information and belief, Catalina made the transfer with the intent to hinder, delay, or defraud Day.

63. Upon information and belief, Catalina transferred and Reardon received all of Catalina's assets used and/or useful in the operation of its yacht manufacturing and sales business without receiving a reasonably equivalent value in exchange for the transfer of assets.

64. Upon information and belief, Catalina engaged in the transaction and its remaining assets were unreasonable small in relation to the transaction.

65. Upon information and belief, Catalina is liable for damages resulting from the fraudulent transfer consistent with California law.

66. As a direct and proximate result of Catalina Yacht's actions, Day has

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 10 -

AMENDED COUNTERCLAIMS OF DEFENDANT SHARON DAY
2:25-CV-04090

38299655v4

suffered and will continue to suffer damages in an amount in excess of $75,000 to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Counter-Plaintiff Sharon Day respectfully requests that this Court enter judgment as follows on Plaintiff's Complaint and the Counterclaims:

1. In response to Plaintiff's claim for declaratory relief, a declaration that Catalina Yachts owes Day a bonus payment under the Bonus Compensation Agreement and that Day is entitled to receive the bonus under the Bonus Compensation Agreement;

2. Judgment in favor of Day on the Counterclaims as follows:

    a. Damages in the amount to be proven at trial but not less than one million dollars ($1,000,000);

    b. A declaration that the transfer of assets from Catalina Yachts, Inc. to Reardon and/or an entity associated therewith constituted a voidable transfer under California Civil Code §§ 3439 et seq., an order damages consistent with Day's claim; and an accounting of all assets transferred;

    c. Pre-judgment and post-judgment interest at the legal rate;

    d. Reasonable attorneys' fees and costs of suit; and

    e. Such other and further relief as this Court deems just and proper.

3. Day hereby demands a trial by jury on all issues so triable.

- 11 -

AMENDED COUNTERCLAIMS OF DEFENDANT SHARON DAY
2:25-CV-04090

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

38299655v4

| | |
|---|---|
| Dated:  October 3, 2025 | SHUMAKER, LOOP & KENDRICK, LLP<br>Steven M. Berman<br>By:/s/ Steven M. Berman<br>　　Steven M. Berman<br>　　Attorney for Defendant<br>　　SHARON DAY |

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 12 -

AMENDED COUNTERCLAIMS OF DEFENDANT SHARON DAY
2:25-CV-04090

38299655v4