Michael C. Lieb (SBN 126831)
　mlieb@ecjlaw.com
Zoe M. Vallier (SBN 324324)
　zvallier@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Plaintiff/Counter-Defendant
CATALINA YACHTS, INC.
and Counter-Defendants RUSSELL L.
BERNEY and JEAN C. BUTLER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CATALINA YACHTS, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SHARON DAY, an individual; GERARD DOUGLAS, an individual; and DOES 1 through 10, inclusive,<br><br>　　　　Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:25-cv-04090-SVW-RAO<br><br>Assigned to The Hon. Stephen V. Wilson<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Statement of Uncontroverted Facts; Declarations of Michael C. Lieb, Wesley Sanders, and Marc Reese; Appendix of Evidence; and [Proposed] Judgment]*<br><br>Date:　　January 12, 2026<br>Time:　　1:30 p.m.<br>Crtrm.:　10A<br><br>Action Filed:　May 7, 2025<br>Trial Date:　　February 17, 2026 |

**TO THE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 12, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard[1] in Courtroom 10A of the above-referenced Court, located at 350 W. First Street, Los Angeles, CA 90012, pursuant to Rule 56, Plaintiff/Counter-Defendant Catalina Yachts, Inc. ("Plaintiff" or "Catalina") will, and hereby does, move the Court for an order granting Summary Judgment in its favor on (1) its request for Declaratory Relief, and (2) all claims asserted by Defendant/Counter-Plaintiff Sharon Day ("Day") against Catalina.

Catalina moves for summary judgment on the grounds that there is no genuine issue as to any material fact and Catalina is entitled to judgment as a matter of law. The sole issue before this Court is whether an April 2025 transaction between Catalina and a buyer triggered Day's rights to a $1 million bonus under a contract call Bonus Compensation Agreement ("BCA") between Catalina and Day, which is an issue of contract interpretation. It did not; and the BCA leaves no room for any other interpretation. All of Day's claims hinge on her having a present right to payment from Catalina, but she does not. Therefore, Catalina is entitled to prevail both on its complaint for declaratory judgment and on Day's counterclaim.

The Motion is based on this Notice, the concurrently filed Memorandum of Points and Authorities, Statement of Uncontroverted Facts, Declarations of Marc Reese, Wesley Sanders, and Michael C. Lieb, the exhibits attached thereto, Appendix of Evidence, [Proposed] Judgment, and all the pleadings and files in this matter, and on such other matters as may be presented to the Court at the time of

---

[1] As explained in the *Ex Parte* Application filed herewith, Catalina is requesting the Court to set this matter for hearing on January 12, 2026 – a date that was originally an available hearing date on the Court's calendar, but that was "closed" before this motion could be filed. Should the Court set this matter for hearing on a different date, Catalina will provide an updated notice to the parties.

hearing. This Motion is also accompanied by an *ex parte* application requesting the Court to hear the Motion on the date set forth in this notice.

      The motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 3, 2025.

DATED: December 15, 2025      ERVIN COHEN & JESSUP LLP
                                        Michael C. Lieb
                                        Zoe M. Vallier

                          By:    */s/ Michael C. Lieb*
                               Michael C. Lieb
                               Attorneys for Plaintiff/Counter-Defendant CATALINA YACHTS, INC. and Counter-Defendants RUSSELL L. BERNEY and JEAN C. BUTLER

# TABLE OF CONTENTS

| | Page |
|---|---:|
| I. INTRODUCTION | 7 |
| II. STATEMENT OF FACTS | 7 |
| III. LEGAL STANDARD | 10 |
| IV. SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT TO CATALINA'S CAUSE OF ACTION FOR DECLARATORY JUDGMENT | 10 |
|     A. As Applied to the Reardon Transaction, the Terms of the BCA Are Clear and Unambiguous | 10 |
|     B. The BCA Is Not Reasonably Susceptible to the Interpretation that the Reardon Transaction Triggered Day's Bonus Payment. | 11 |
|     C. The Rescission of the Reardon Transaction Undermines any "Appeal to Equity" by Day. | 12 |
| V. EACH OF DAY'S COUNTERCLAIMS FAIL AS A MATTER OF LAW | 13 |
|     A. Day's Breach of Contract Claim Fails as a Matter of Law | 13 |
|     B. Day's Breach of the Duty of Good Faith and Fair Dealing Claim Fails as a Matter of Law | 14 |
|     C. Day's Promissory Estoppel Claim Fails as a Matter of Law | 15 |
|     D. Day's Fraudulent Transfer of Assets Claim Fails as a Matter of Law | 16 |
| VI. CONCLUSION | 17 |

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Applied Med. Distribution Corp. v. Ah Sung Int'l, Inc.*,
  2015 WL 12910766 (C.D. Cal. Apr. 29, 2015).................................................. 10

*Barris Indus., Inc. v. Worldvision Enters., Inc.*,
  875 F.2d 1446 (9th Cir. 1989) ....................................................................... 11, 12

*Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California*,
  618 F.3d 1066 (9th Cir. 2010) ............................................................................ 12

*Callahan v. City of Sanger*,
  2015 WL 2455419 (E.D. Cal. May 22, 2015)..................................................... 12

*Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*,
  295 F. Supp. 2d 1091 (N.D. Cal. 2003).............................................................. 10

*Frith v. Fed. Express Corp.*,
  2009 WL 10675202 (C.D. Cal. Dec. 11, 2009) ................................................. 13

*Lee v. Select Portfolio Servicing Inc.*,
  2015 WL 12659931 (C.D. Cal. Feb. 5, 2015)..................................................... 13

*Moses v. Innoprise Software*,
  2013 WL 6019536 (N.D. Cal. Nov. 13, 2013)................................................... 16

**State Cases**

*A-C Co. v. Security Pacific Nat. Bank*,
  173 Cal.App.3d 462 (1985).................................................................................. 15

*Bank of the West v. Superior Court*
  2 Cal.4th 1254 (1992).......................................................................................... 11

*Comunale v. Traders & General Ins. Co.*,
  50 Cal. 2d 654 (1958).......................................................................................... 14

*Cortez v. Vogt*,
  52 Cal. App. 4th 917 (1997)................................................................................ 16

*Guz v. Bechtel National, Inc.*,
    24 Cal. 4th 317 (2000) ................................................................................ 14

*Renda v. Nevarez*,
    223 Cal. App. 4th 1231 (2014) .................................................................... 17

*Toscano v. Greene Music*,
    124 Cal.App.4th 685 (2004) ........................................................................ 15

*Youngman v. Nevada Irr. Dist.*,
    70 Cal.2d 240 (1969) ................................................................................... 15

**State Statutes**

Cal. Civ. Code § 3439.04 ................................................................................... 16

**Other Authorities**

CACI No. 325 .................................................................................................... 14

Fed. R. Civ. P. 56(a) .......................................................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This entire action is resolved by the terms of the parties' contract. As framed by both the Complaint of Catalina Yachts, Inc. ("Catalina") and the First Amended Counterclaim of Sharon Day ("Day"), the sole issue before this Court is whether an April 2025 transaction between Catalina and a buyer by the name of Michael Reardon ("Reardon" and the "Reardon Transaction") triggered Day's rights to a $1 million bonus under a contract called the Bonus Compensation Agreement ("BCA"). It did not; and the BCA leaves no room for any other interpretation. That is the sole issue in this action and as a matter of law and undisputed fact, Catalina is thus entitled to prevail on both its complaint and Day's counterclaim.

## II. STATEMENT OF FACTS

Sharon Day signed the BCA on or about November 18, 2002. [Uncontroverted Material Fact ("UMF") No. 1.] The BCA states that Day will be paid a "minimum bonus" of $1 million or 5% of the "net sales price" received by the Catalina shareholders on a sale of their shares of stock, whichever is greater. [UMF. No. 2].

The BCA contains different provisions for when the bonus is "earned" and the "timing of payment."

Per BCA Section 1.1, Day "earned" her bonus when she continued to work for Catalina for an additional 7½ years after signing the BCA on November 18, 2002 – i.e., roughly May 18, 2010.[2] [UMF Nos. 3, 5.]

---

[2] Day also could have earned the bonus if a "Sale of Catalina" had occurred before 7½ years, but that did not happen. [UMF Nos. 6, 8.]

> 1.1. **When Bonus is Earned.**
>
> Employee shall earn the Bonus if Employee continues to work full-time for Catalina until the **earlier** of:
>
> (i) the sale of Catalina; or
>
> (ii) seven and one-half (7-1/2) years from the date of execution of this Agreement.
>
> "Sale of Catalina" includes sale of the Butlers' stock **or** sale of all of Catalina's assets.

She remained employed by Catalina for more than 7½ years. [UMF Nos. 4, 9].

The bonus was not payable, however, upon being earned. Under Section 1.5, labeled "Timing of Payments," Day was to be paid "within sixty (60) days of payment to the Butlers[3] of the consideration they are to be paid for their shares." [UMF No. 10]. Section 1.5 further states that if the consideration received by the Butlers was in the form of securities, Day would receive 5% of those securities. [UMF No. 10]. And Section 1.6 states that if payment was to be made over time, Day would be paid as the Catalina shareholders received their payments, provided that the full bonus was to be paid within five years. [UMF No. 13].

> 1.5. **Timing Of Payments.**
>
> Catalina agrees to pay the Bonus to Employee within sixty (60) days of payment to the Butlers of the consideration they are to be paid for their shares. If the consideration, or part of it, paid to the Butlers is in the form of the buyer's securities, Catalina or its acquirer shall convey to Employee five percent (5%) of the securities to be delivered to the Butlers.
>
> 1.6. **Pro Ration Of Payments.**
>
> This paragraph applies if the monetary portion of the compensation to be paid for the Butlers' Catalina shares is not paid in a lump sum. Catalina shall pay to Employee five percent (5%) of the periodic payment(s) that are to be paid to the Butlers, or their successors in interest, for their shares as they are paid. Despite the length of time over which the Butlers receive periodic payments, all cash payments to be paid to Employee shall be fully paid no later than five (5) years after the beginning of periodic payments.

The BCA does not impose any obligation on the Butlers ever to sell Catalina or their shares of stock.

---

[3] The "Butlers" are defined in Recital C of the BCA as nine separate trusts that collectively owned all the shares of Catalina stock when the BCA was signed, and no Catalina stock has ever been sold. [UMF Nos. 11, 12.]

In April 2025, Catalina consummated the Reardon Transaction whereby Reardon was to purchase certain Catalina assets. [UMF No. 14]. The terms of the sale are identified in Asset Purchase Agreement ("APA") submitted as exhibit 1. [UMF. No. 14]. Per the APA, Reardon's consideration consisted of a $1 million promissory note payable over three years. [UMF No. 16]. Reardon also agreed to assume $1.45 million of Catalina's trade payables. [UMF. No. 16]. In exchange, Reardon received specific tangible assets of Catalina (i.e., machinery, work-in-progress and tools) used for building boats and the right to use Catalina's trademarks and tradename for building boats. [UMF No. 17].[4]

Day contends that the Reardon Transaction triggered her right to payment of her bonus. [UMF No. 19]. Day alleges that the Reardon Transaction was structured "to attempt to avoid triggering the obligation to pay Day the Vested Bonus by purporting to sell fewer than all of Catalina Yachts' assets and none of its stock." [UMF No. 21].

The Reardon Transaction did not "purport" to sell fewer than all of Catalina's assets and none of its stock. It actually *did* sell far fewer than all of its assets and none of its stock because following the Reardon Transaction, Catalina still retained between $25 million and $30 million in assets. [UMF Nos. 12, 18]. Thus, the issue of whether a transaction that disposed of all, or substantially all, of Catalina's assets would have triggered Day's bonus rights, is irrelevant. The Reardon Transaction was not that hypothetical situation.

All of Day's claims hinge on her having a present right to payment from Catalina. Because she does not, Catalina is entitled to declaratory judgment on its claim and Catalina is entitled to a defense judgment against Day.

---

[4] The "was to" phrasing is intentional. Reardon made a single note payment of approximately $4,166 and then defaulted. [UMF No. 25.]

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has made a showing that this standard is met, the burden shifts to the party opposing summary judgment to demonstrate that there is a genuine issue for trial. *Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*, 295 F. Supp. 2d 1091, 1101 (N.D. Cal. 2003). Summary judgment on the meaning of the terms of a contract is appropriate where the contract terms are clear and unambiguous, even if the parties disagree as to their meaning. *Id*. Interpretation of contract is a matter of law, including whether the contract is ambiguous. *Id.*

## IV. SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT TO CATALINA'S CAUSE OF ACTION FOR DECLARATORY JUDGMENT

This dispute can only be resolved through court interpretation of the terms of the parties' respective rights and obligations under the BCA. Where, as here, a contract's terms are clear and unambiguous, a court may on summary judgment grant declaratory relief regarding interpretation of the contract. *Applied Med. Distribution Corp. v. Ah Sung Int'l, Inc.*, 2015 WL 12910766, at *4 (C.D. Cal. Apr. 29, 2015)

### A. As Applied to the Reardon Transaction, the Terms of the BCA Are Clear and Unambiguous

Day's theory of this case seems to be that there are ambiguities in the BCA; and thus there are situations that hypothetically *may* arise in which Day's entitlement to a bonus payment could be unclear. But those hypotheticals are not before the Court, and the application of the BCA to the Reardon Transaction is not

ambiguous. *Bank of the West v. Superior Court* 2 Cal.4th 1254, 1265 (1992) ("language in a contract must be construed in the context of that instrument as a whole, *and in the circumstances of that case*, and cannot be found to be ambiguous in the abstract.") (Emphasis added; citations omitted.). Thus, that there could be some future transaction that comes sufficiently close to a sale of all of the Butlers' shares of Catalina stock is irrelevant. The issue here is whether the Reardon Transaction triggers Day's bonus payment, and it does not.

Day's only concrete factual allegation to support the payment of her bonus appears in paragraph 34 of her counterclaim: "Catalina sold its assets used or useful in the operation of its business to Michael Reardon . . . ." [UMF No. 20]. But that was not a sale of the Butlers' shares of Catalina stock, nor was it the functional equivalent. It was, in fact, a sale of less than 10% of Catalina's assets by value, and that is not a disputable fact. [UMF Nos. 14, 18].

B.  **The BCA Is Not Reasonably Susceptible to the Interpretation that the Reardon Transaction Triggered Day's Bonus Payment.**

Catalina does not anticipate that any parol evidence will be offered because none was uncovered in discovery. But, even were parol evidence offered, it would not be able to overcome the basic facts at hand. Reardon paid about $2.5 million for a small subset of the more than $25 million of assets Catalina owns. The Reardon Transaction was not the sale of the Butlers' shares of Catalina stock, nor did the Reardon Transaction dispossess Catalina of all or substantially all of its assets. Those facts are not disputed and they end the inquiry.

Under California law, "the test of admissibilty of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the contract is reasonably susceptible." *Barris Indus., Inc. v. Worldvision Enters., Inc.,* 875 F.2d 1446, 1450 (9th Cir. 1989) (citing California case law). Thus, even if a contract appears to be absolutely clear on its

face, the court is required to engage in preliminary consideration of extrinsic evidence to see whether it creates ambiguity. *Id*. However, if the extrinsic evidence advances an interpretation to which the contract is not reasonably susceptible, the extrinsic evidence is not admissible. *Id. citing A. Kemp Fisheries, Inc. v. Castle and Cooke, Inc.*, 852 F.2d 483, 496 (9th Cir. 1988). The mere existence of extrinsic evidence supporting an alternative meaning does not foreclose summary judgment where the extrinsic evidence is insufficient to render the contract susceptible to the non-movant's proffered interpretation. *Id*.

      Here, the BCA is not reasonably susceptible to an interpretation that the Reardon Transaction triggered a bonus payment because the Reardon Transaction did not include any sale or transfer of the Butlers' shares of Catalina, nor, given that Catalina still holds over $25 million in assets, was it the functional equivalent. [UMF Nos. 18, 27]. Thus, even were Day to proffer evidence to support her argument, that evidence would be inadmissible because it would not offer an interpretation to which the BCA is reasonably susceptible. *See Callahan v. City of Sanger*, 2015 WL 2455419, at *12 (E.D. Cal. May 22, 2015) *citing Wagner v. Columbia Pictures Industries, Inc.,* 146 Cal.App.4th 586, 52 Cal.Rptr.3d 898, 903 (2007) (rejecting evidence that contradicted, rather than explained, a written agreement and noting "[t]he problem with [the plaintiff's] extrinsic evidence is that it does not explain the contract language, it contradicts it."); *Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California,* 618 F.3d 1066, 1073 (9th Cir. 2010) (The interpretation of a contract is a judicial function).

      C.    <u>**The Rescission of the Reardon Transaction Undermines any "Appeal to Equity" by Day.**</u>

      Day seems to be making an appeal to equity, proffering the notion that Catalina intentionally structured the Reardon Transaction to avoid paying her bonus. [UMF Nos. 21, 22]. On its face, the argument is nonsensical: Catalina could not have structured a sale of less than 10% of its assets by value as a sale of stock. It

was selling specific assets; it was not bringing in a partner.

And, any appeal to the equities vanishes entirely when the aftermath of the Reardon Transaction is considered. Reardon made one $4,166 payment under the $1 million promissory note and then defaulted. [UMF No. 25]. Catalina is not depriving Day of the proceeds of a completed transaction.

## V. EACH OF DAY'S COUNTERCLAIMS FAIL AS A MATTER OF LAW

For the reasons described above, Catalina is also entitled to a defense judgment on each of Day's counterclaims, all of which hinge on the contention that the Reardon Transaction triggered her right to the bonus payment, which it did not.

### A. Day's Breach of Contract Claim Fails as a Matter of Law

The elements of a breach of contract claim under California law are "the making of the contract and its terms, plaintiff's performance, defendants' breach, and damage to plaintiff therefrom." *Lee v. Select Portfolio Servicing Inc.,* 2015 WL 12659931, at *3 (C.D. Cal. Feb. 5, 2015). To survive summary judgment, a party must identify a provision of a contract that creates an obligation that has been violated. *See id.*; *see also Frith v. Fed. Express Corp.,* 2009 WL 10675202, at *3 (C.D. Cal. Dec. 11, 2009).

Day's Count One for Breach of Contract relies on an interpretation of the BCA that "[u]nder the express provisions of the Bonus Compensation Agreement, Catalina Yachts became obligated to pay Day in April 2025 upon the sale of all of the assets used and/or useful in the operation of the business." [UMF No. 23]. The BCA is not reasonably susceptible to this interpretation because there is no reference in the BCA to assets "used and/or useful in the operation of the business."

As noted above, Section 1.5 "Timing Of Payments", triggers payment only on a sale of the Butlers' shares of stock.

Section 1.1 "When Bonus Is Earned", concerned what it says, i.e., when the bonus is earned -- not when it is paid. But, *even if* the Section 1.1 definition of "Sale of Catalina" were incorporated into Section 1.5, the result would be the same.

Section 1.1 states the bonus is "earned" upon the sale of the Butler's stock or the sale of "all of Catalina's assets." There is no evidence that the Butlers sold their Catalina shares or that Catalina sold all of its assets, because neither event occurred.

Catalina is thus entitled to summary judgment on Day's Count One.

### B. Day's Breach of the Duty of Good Faith and Fair Dealing Claim Fails as a Matter of Law

There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. *See Comunale v. Traders & General Ins. Co.,* 50 Cal. 2d 654, 658 (1958). The elements required to prove such a claim are that: (1) plaintiff and defendant entered into a contract; (2) plaintiff did all, or substantially all of the significant things that the contract required him to do; (3) the conditions for defendant's performance occurred; (4) defendant prevented plaintiff from receiving the benefits under the contract; (5) by doing so, defendant did not act fairly and in good faith; (6) plaintiff was harmed by defendant's conduct. *See* CACI No. 325; *see also Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349-50 (2000).

Importantly, "while the implied covenant requires mutual fairness in applying a contract's actual terms, it cannot substantively alter those terms." *Id.* at 327.

Here, Day cannot identify any evidence to support the contention that: the conditions for Catalina's performance occurred (element 3); Catalina prevented Day from receiving benefits due her under the BCA (element 4); or that Catalina acted in bad faith (element 5).

Day alleges, "upon information and belief," that Catalina structured the Reardon Transaction to prevent Day from recovering a bonus "that would have occurred if Catalina had sold the stock to the acquirer of the assets." [UMF No. 22]. But as noted above, that allegation makes no sense because the Reardon Transaction involved about 10% of Catalina's assets by value. The fact that Reardon defaulted on even that limited obligation further establishes that he could not have bought all

the assets or all the shares of stock. Nevertheless, a sale of all Catalina's assets or its shares simply did not occur.

Had Catalina essentially hypothetically hollowed itself out by selling Reardon all of its assets, that would be a far different situation. But Catalina only sold approximately 10% of its assets and Catalina itself retained those sale proceeds. Catalina was under no obligation to sell Reardon all its assets or to sell everything to someone else; nor were the shareholders under any duty or obligation to sell their shares. Indeed, the BCA does not impose any obligation on anyone to enter into any transaction at all. The implied covenant cannot create an obligation that the BCA does not impose, and summary judgment should be granted as to Day's Count Two.

### C. Day's Promissory Estoppel Claim Fails as a Matter of Law

At the outset it bears noting that Day's promissory estoppel claim is an equitable cause of action on which she is not entitled to a jury trial. *A-C Co. v. Security Pacific Nat. Bank,* 173 Cal.App.3d 462, 472 (1985). The Court will decide this claim either by this motion or at trial.

"'Promissory estoppel is a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' (Citations.) The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.'" *Toscano v. Greene Music*, 124 Cal.App.4th 685, 692 (2004) *quoting Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority,* 23 Cal.4th 305, 310 (2000). As explained by the California Supreme Court, "[u]nder this doctrine a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Youngman v. Nevada Irr. Dist.*, 70 Cal.2d 240, 249–50 (1969) (internal citations omitted).

Here, Day alleges that she relied on representations made by Catalina, to her

detriment, that Day would receive her bonus "upon the sale of Catalina." [UMF No. 24]. Were that the case, and there is no evidence of those alleged representations, the BCA defines "sale of Catalina" as the sale of the Butlers' stock or all of Catalina's assets. [UMF No. 7]. Given that Day signed the BCA with that language, there is no reasonable basis for her to contend that any oral promises she may allege support her recovery based on the Reardon Transaction. Therefore, summary judgment should be granted as to Count Three – Promissory Estoppel.

### D. Day's Fraudulent Transfer of Assets Claim Fails as a Matter of Law

A "transfer of assets made by a debtor is fraudulent to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay, or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due." *Cortez v. Vogt*, 52 Cal. App. 4th 917, 928 (1997) (internal citations omitted); *see also* Cal. Civ. Code § 3439.04; *Moses v. Innoprise Software*, 2013 WL 6019536, at * 8 (N.D. Cal. Nov. 13, 2013).

Day cannot satisfy any of the elements of her claim. There is no evidence that Catalina engaged in the Reardon transaction with an intent to hinder, delay or defraud any creditor or that the Reardon agreed purchase price was inadequate. [UMF Nos. 15, 16, 28, 29]. Nor is there any evidence that, at the time of or following the Reardon Transaction, (which had Reardon performed, would have left Catalina with more than $25 million in assets) Catalina was engaged in any transaction for which its assets were unreasonably small, or that Catalina incurred debts it was unable to pay. There is just a complete failure of proof on this point.

Further, Reardon has defaulted and the entire transaction is being unwound,

with Catalina already having regained possession of the property leased to Reardon. [UMF No. 26]. Reardon made one $4,166 payment under the $1 million promissory note and then defaulted. [UMF No. 25]. Catalina has thus recovered, or is in the process of recovering, what it intended to transfer. [UMF No. 26]. On that ground alone, summary judgment is warranted as to Day's Count Four - Fraudulent Transfer.

Further, a fraudulent transfer claim is merely duplicative of the other causes of action because, as to the alleged transferor (Catalina) it offers no relief that the other causes of action would not. *See Renda v. Nevarez*, 223 Cal. App. 4th 1231 (2014). Thus, given that Catalina is entitled to judgment on Day's Counts One through Three; it is also entitled to judgment on Count Four.

## VI. CONCLUSION

For the foregoing reasons, Catalina respectfully requests that the Court grant its Motion for Summary Judgment in its entirety.

DATED: December 15, 2025

ERVIN COHEN & JESSUP LLP
Michael C. Lieb
Zoe M. Vallier

By: _____/s/ Michael C. Lieb_____
Michael C. Lieb
Attorneys for Plaintiff/Counter-Defendant CATALINA YACHTS, INC. and Counter-Defendants RUSSELL L. BERNEY and JEAN C. BUTLER

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for for Plaintiff/Counter-Defendant Catalina Yachts, Inc. and Counter-Defendants Russell L. Berney and Jean C. Butler, certify that this brief contains 3,370 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: December 15, 2025        */s/ Michael C. Lieb*
                                Michael C. Lieb