Michael C. Lieb (SBN 126831)
  mlieb@ecjlaw.com
Zoe M. Vallier (SBN 324324)
  zvallier@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Plaintiff/Counter-Defendant
CATALINA YACHTS, INC.
and Counter-Defendants RUSSELL L.
BERNEY and JEAN C. BUTLER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CATALINA YACHTS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARON DAY, an individual; GERARD DOUGLAS, an individual; and DOES 1 through 10, inclusive,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:25-cv-04090-SVW-RAO<br><br>Assigned to The Hon. Stephen V. Wilson<br><br>**STATEMENT OF UNCONTROVERTED FACTS FILED IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Notice of Motion and Memorandum of Points and Authorities, Declarations of Marc Reese, Wesley Sanders, and Michael C. Lieb; Appendix of Evidence; and Proposed Judgment]*<br><br>Date: January 12, 2026<br>Time: 1:30 p.m.<br>Crtrm.: 10A<br><br>Action Filed: May 7, 2025<br>Trial Date: February 17, 2026 |

17639.11:11723892.1

STATEMENT OF UNCONTROVERTED FACTS FILED IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff/Counter-Defendant Catalina Yachts, Inc. ("Plaintiff" or "Catalina"), pursuant to FRCP 56 and Local Rule 56-1, hereby submits the following Statement of Uncontroverted Facts filed in support of its Motion for Summary Judgment against Defendant Sharon Day ("Day"):

| MOVING PARTY'S UNCONTROVERTED FACTS | MOVING PARTY'S SUPPORTING EVIDENCE |
|---|---|
| 1. Sharon Day signed the Bonus Compensation Agreement ("BCA") on or about November 18, 2002. | Declaration of Michael C. Lieb ("Lieb Decl."), ex. 3, BCA. |
| 2. The BCA states that Day will be paid a bonus equal to the greater of $1 million or 5% of the "net sales price" received by the Catalina shareholders on a sale of their shares of stock. | Lieb Decl., ex. 3, BCA §§ 1.2(i) and 1.4 (page 3 of 5). |
| 3. Section 1.1 of the BCA states: "1.1. When Bonus is Earned. Employee shall earn the Bonus if Employee continues to work full-time for Catalina until the earlier of: (i) the sale of Catalina; or (ii) seven and one-half (7-1/2) years from the date of execution of this Agreement." | Lieb Decl., ex. 3, BCA § 1.1 (page 2 of 5). |
| 4. Day remained employed by Catalina for more than 7 ½ years after she signed the BCA. | Lieb Decl., ex. 2, Amended Answer and Counterclaims of Defendant Sharon Day ("Day |

| MOVING PARTY'S UNCONTROVERTED FACTS | MOVING PARTY'S SUPPORTING EVIDENCE |
|---|---|
|  | Counterclaim"), ¶¶ 17, 24. |
| 5. Day "earned" her bonus when she continued to work for Catalina for an additional 7 ½ years after signing the BCA on November 18, 2002. | Lieb Decl., ex. 3, BCA § 1.1 (page 2 of 5); Lieb Decl., ex. 2, Day Counterclaim, ¶¶ 17, 24. |
| 6. Day also could have earned her bonus if a "Sale of Catalina" had occurred before 7 ½ years after signing the BCA on November 18, 2002. | Lieb Decl., ex. 3, BCA § 1.1 (page 2 of 5). |
| 7. "Sale of Catalina" is defined in the BCA to "include[] sale of the Butlers' stock or sale of all of Catalina's assets." | Lieb Decl., ex. 3, BCA § 1.1 (page 2 of 5). |
| 8. There was no Sale of Catalina prior to May 18, 2010. | Reese Decl., ¶ 5. |
| 9. Day retired from Catalina on December 2, 2024. | Lieb Decl., ex. 2, Day Counterclaim, ¶ 24. |
| 10. Section 1.5 of the BCA states: "1.5. Timing of Payments. Catalina agrees to pay the Bonus to Employee within sixty (60) days of payment to the Butlers of the consideration they are to be paid for their shares. If the consideration, or part of it, paid to the Butlers is in the form of the buyer's securities, Catalina or its acquirer | Lieb Decl., ex. 3, BCA § 1.5 (page 3 of 5). |

17639.11:11723892.1

3

STATEMENT OF UNCONTROVERTED FACTS FILED IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED FACTS | MOVING PARTY'S SUPPORTING EVIDENCE |
|---|---|
| shall convey to Employee five percent (5%) of the securities to be delivered to the Butlers." | |
| 11. The "Butlers" are defined in Recital C of the BCA as nine separate trusts that collectively owned all the shares of Catalina stock when the BCA was signed. | Lieb Decl., ex. 3, BCA Recital C (page 2 of 5); Reese Decl., ¶ 4. |
| 12. No Catalina stock has ever been sold. | Reese Decl., ¶ 4. |
| 13. Section 1.6 of the BCA states that if payment of the bonus was to be made over time, Day would be paid as the Catalina shareholders received their payments, provided that the full bonus was to be paid within five years. | Lieb Decl., ex. 3, BCA § 1.6 (page 3 of 5). |
| 14. In April 2025, Catalina entered into a purchase agreement with Michael Reardon whereby Reardon was to purchase certain Catalina assets (the "Reardon Transaction"). | Reese Decl., ex. 1, Asset Purchase Agreement ("APA") [CAT000020]. |
| 15. The Reardon Transaction was entered into after an extensive search for a buyer, with Reardon's bid being the most certain and financially advantageous to Catalina. | Reese Decl., ¶ 8. |
| 16. Reardon's consideration for the Reardon | Reese Decl., ex. 1, APA § 1.6 |

| **MOVING PARTY'S UNCONTROVERTED FACTS** | **MOVING PARTY'S SUPPORTING EVIDENCE** |
|---|---|
| Transaction consisted of the assumption of $1.45 million of Catalina's trade payables and a $1 million promissory note payable over 3 years. | [CAT000023-24]. |
| 17. In the Reardon Transaction, Reardon received specific tangible assets of Catalina (i.e., machinery, work-in-progress and tools) used for building boats and the right to use Catalina's trademarks and tradename for building boats. | Reese Decl., ex. 1, APA § 1.1 [CAT000020]. |
| 18. After the Reardon Transaction, Catalina still retained between $25 million and $30 million in assets. | Reese Decl., ¶ 5; Lieb decl., exs. 4-6; Sanders decl., ¶ 2. |
| 19. Day contends that the Reardon Transaction triggered her right to payment of her bonus. | Lieb Decl., ex. 2, Day Counterclaim, ¶ 37. |
| 20. Day alleges that "[u]pon information and belief, Catalina sold its assets used or useful in the operation of its business to Michael Reardon and/or a related entity on or about April 23, 2025." | Lieb Decl., ex. 2, Day Counterclaim, ¶ 34. |
| 21. Day alleges that the Reardon Transaction was structured "to attempt to avoid triggering the obligation to pay Day the Vested Bonus by purporting to sell fewer | Lieb Decl., ex. 2, Day Counterclaim, ¶ 35. |

| MOVING PARTY'S UNCONTROVERTED FACTS | MOVING PARTY'S SUPPORTING EVIDENCE |
|---|---|
| than all of Catalina Yachts' assets and none of its stock." | |
| 22. Day alleges "upon information and belief" that "Catalina structured the sale of all Catalina's assets used and/or useful in the operation of its business in April 2025 to prevent Day from recovering a bonus under the Bonus Compensation Agreement that would have occurred if Catalina had sold the stock to the acquirer of the assets." | Lieb Decl., ex. 2, Day Counterclaim, ¶ 50. |
| 23. Day's Count One for Breach of Contract relies on an interpretation of the BCA that "[u]nder the express provisions of the Bonus Compensation Agreement, Catalina Yachts became obligated to pay Day in April 2025 upon the sale of all of the assets used and/or useful in the operation of the business." | Lieb Decl., ex. 2, Day Counterclaim, ¶ 44. |
| 24. Day alleges that she relied on representations made by Catalina, to her detriment, that Day would receive her bonus "upon the sale of Catalina." | Lieb Decl., ex. 2, Day Counterclaim, ¶¶ 54-55. |
| 25. Reardon made one payment of $4,166 under the $1 million promissory note and | Reese Decl., ¶ 9. |

| MOVING PARTY'S UNCONTROVERTED FACTS | MOVING PARTY'S SUPPORTING EVIDENCE |
|---|---|
| then defaulted. | |
| 26. Catalina has regained possession of the property leased to Reardon and is in the process of legal proceedings in Florida to recover the other purchased assets | Reese Decl., ¶ 9. |
| 27. The Reardon Transaction did not involve the sale of any of the Butlers' shares of stock. | Reese Decl., ¶¶ 4, 6-7; Reese Decl., ex. 1, APA. |
| 28. Catalina entered into the Reardon Transaction because the business of building its boats was no longer profitable. | Reese Decl., ¶ 7. |
| 29. The Reardon Transaction was not made with the intent to hinder, delay, or defraud any creditor; the Reardon bid was selected in a competitive bidding process as the most definitive and financially advantageous offer received by Catalina, which Catalina believed represented an adequate price for the assets transferred; and was not intended to create or leave Catalina with debts it was unable to pay, nor did it leave Catalina with assets that were unreasonably small. | Reese Decl., ¶¶ 8, 10. |

DATED: December 15, 2025         ERVIN COHEN & JESSUP LLP
                                 Michael C. Lieb
                                 Zoe M. Vallier


                        By:      */s/ Michael C. Lieb*
                                 Michael C. Lieb
                                 Attorneys for Plaintiff/Counter-Defendant CATALINA YACHTS, INC. and Counter-Defendants RUSSELL L. BERNEY and JEAN C. BUTLER