1  Shumaker, Loop & Kendrick, LLP
2  Steven M. Berman, Bar No. 256846
   sberman@shumaker.com
3  101 East Kennedy Boulevard
   Suite 2800
4  Tampa, Florida 33602
   Telephone:  813.229.7600
5  Facsimile:   813.229.1660

6  Attorneys for Defendant
   Sharon Day

7

8                  **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11  CATALINA YACHTS, INC., a          Case No. 2:25-CV-04090-SVW-RAO
    California Corporation,
12                                     Assigned to the Hon. Stephen V.
          Plaintiff,                   Wilson
13
          v.                           **DEFENDANT/COUNTERCLAIM**
14                                     **PLAINTIFF SHARON DAY'S**
    SHARON DAY, an individual;         **NOTICE OF MOTION AND**
15  GERARD DOUGLAS, an individual;     **MEMORANDUM OF POINTS**
    and DOES 1 through 10, inclusive,  **AND AUTHORITIES IN SUPPORT**
16                                     **OF MOTION FOR PARTIAL**
          Defendants                   **SUMMARY JUDGMENT**
17
18  GERARD DOUGLAS,
                                       Date: January 26, 2026
19        Plaintiff                    Time: 1:30 p.m.
                                       Courtroom 10A
20  v.
    _____              Action Filed: May 7, 2025
21                                     Trial Date: February 17, 2026
          Defendant
22
23  and

24
    SHARON DAY,
25
    Counterclaim Plaintiff,
26
    v.
27
    CATALINA YACHTS, INC.,
28

- 1 -                SHARON DAY'S MOTION FOR PARTIAL
                           SUMMARY JUDGMENT
                                2:25-CV-04090

38664570v1

a California Corporation,

        Counterclaim Defendant.

**TO THE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 26, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 10A of the above-referenced Court, located at 350 W. First Street, Los Angeles, CA 90012, pursuant to Rule 56, Defendant/Counter-Plaintiff Sharon Day ("Ms. Day" or the "Counter-Plaintiff") will and hereby does, move this Court for an order granting partial summary judgment in her favor on her request for declaratory relief as more fully set forth herein.

Ms. Day, the movant, is the Plaintiff's longest tenured employee, having risen from the position of an administrative assistant to the president of Catalina over the course of more than five decades. Ms. Day moves for partial summary judgment on the grounds that there is no genuine issue as to any material fact with respect to two discrete partial summary judgment issues, and she is entitled to judgment as a matter of law on those two narrow issues. Specifically, the issues before this Court, that can and should be decided as a matter of law are: (1) whether, setting aside the timing of payment, Ms. Day has earned deferred compensation, based on the terms and provisions of her Bonus Compensation Agreement, affording her a present or future right to payment of her bonus compensation, and (2) whether the subject Bonus Compensation Agreement is ambiguous so as to permit consideration of parol evidence in its interpretation.

Sharon Day's Motion for Partial Summary Judgment (the "Motion") is based upon this Notice and the concurrently filed Memorandum of Points and Authorities,

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 2 -

SHARON DAY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
2:25-CV-04090

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Statement of Uncontroverted Facts, exhibits attached thereto, Appendix of Evidence, [Proposed] Judgment, and all pleadings and files in this matter, and upon such other matters as may be presented to this Court at the time of hearing.

The Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 5, 2025.


DATED: December 22, 2025          SHUMAKER, LOOP & KENDRICK, LLP

Steven M. Berman, Esq.


By:    */s/ Steven M. Berman*
       Steven M. Berman
       Attorney for Counter-Plaintiff
       SHARON DAY

SHARON DAY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
2:25-CV-04090

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3    I.    INTRODUCTION …………………………………………………… 6

4    II.    STATEMENT OF FACTS ………………………………………….... 8

5    III.    LEGAL STANDARD ………………………………………………… 11

6    IV.    ARGUMENT ……………………………………………………….. 11

7        a.  The Agreement, as to Entitlement to the Deferred Compensation, Is
            Clear and Ms. Day Unquestionably Is Due Her Compensation …... 11

8        b.  The Agreement, as to the Timing of Payment, is Ambiguous as a
9            Matter of Law …………………………………………………... 13

10    V.    PRAYER FOR RELIEF …………………………………………… 14

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 4 -

SHARON DAY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
2:25-CV-04090

1

## <u>TABLE OF AUTHORITIES</u>

2                                                                          <u>Page</u>

3    **Federal Cases**

4    *Southern California Ga Co. v. City of Santa Ana*,
5         336 F.3d 885, 889 (9th Cir. 2003) …………………………………………… 11

6    *Seoul Semiconductor Co., Ltd. v. Finelite, Inc.*,
          694 F. Supp. 3d 1199, 1208-09 (N.D. Cal. 2023) ………………………….. 11
7

**Other Authorities**

8    Fed. R. Civ. P. 56 …………………………………………………………………….. 11

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

4

5

6

7

8

9

10

11

     This is a narrow Motion for Partial Summary Judgment intended to streamline trial by resolving two narrow legal questions about a decades-old written compensation contract between Catalina Yachts, Inc. ("Catalina") and its former employee, Sharon Day ("Ms. Day") called the Bonus Compensation Agreement. That Bonus Compensation Agreement dated November 18, 2002 (the "Agreement") contracted to pay Ms. Day as follows:

12

### 1.1    When Bonus is Earned.

13

14

15

[Ms. Day] shall earn the Bonus if [Ms. Day] continues to work full-time for Catalina until the earlier of: (i) the sale of Catalina; or (ii) seven and one-half (7-1/2) years from the date of execution of this Agreement.

16

17

"Sale of Catalina" includes sale of the Butlers' stock or sale of all of Catalina's assets.

18

…

19

### 1.4    Minimum Bonus.

20

21

… The Bonus paid to [Ms. Day] shall be no less than one million ($1,000,000).

22

The Agreement is unambiguous as to the issue of Ms. Day's entitlement to a bonus

23

24

representing deferred compensation equal to five percent of the assets of the company

25

with a minimum compensation of $1,000,000.  Even Catalina has admitted that on

26

deposition.  Substantial assets of Catalina have already been sold, and the Bonus due

27

28

will be in excess of the contractual minimum.  Ms. Day worked for Catalina

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 6 -

SHARON DAY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
2:25-CV-04090

continuously from the execution of the Agreement until her retirement in 2024. Accordingly, Ms. Day's right to a bonus vested on or about May 18, 2010.

After addressing the first partial summary judgment issue of entitlement, this Court will then have to tackle the question of when must the Bonus be paid. Unfortunately, the Agreement drafted by Catalina, contains multiple provisions regarding the timing of payment, not entitlement, that pull in different directions, including definitions and conditions that interact imperfectly across scenarios involving a stock sale versus an asset sale, valuation in the absence of a sale, and the respective obligations of Catalina and the Butler family trusts and their trustees. Those drafting features render the Agreement reasonably susceptible to more than one interpretation, which, under California law, is sufficient to establish ambiguity as a matter of law. Catalina's interpretation would allow it to indefinitely put off payment and effectively evade paying Ms. Day's Bonus indefinitely so long as no stock sale occurs, a result that conflicts with the Agreement's structure, contradicts statements made by Catalina acknowledging the obligation owed, and frustrates the parties' intent in entering into the Agreement.

The Contract is unambiguous as it relates to Ms. Day's entitlement to payment as she meets all qualifications based upon her fifty-plus year tenure with Catalina, but is nonetheless ambiguous as it relates to the timing of the payment of Ms. Day's deferred compensation. The undisputed record establishes that: (i) the written

Agreement exists and was executed by Ms. Day and Catalina through its President, Frank Butler and his wife Jean Butler on or about November 18, 2002; (ii) Ms. Day fully performed, and her right to the Bonus vested not later than 7.5 years from execution as she retired on or about December 2024, having worked for Catalina without interruption for more than five decades; and (iii) Catalina's representatives acknowledged, under oath, Catalina's obligation to pay Ms. Day pursuant to the Agreement.  These uncontroverted facts establish Catalina's obligation to pay Ms. Day her deferred compensation under the Agreement, leaving for later proceedings only the timing of payment and any amount disputes the parties may raise.

## II.   STATEMENT OF FACTS

The parties do not dispute the existence of a valid and enforceable contract. [Uncontroverted Material Fact ("UMF") No. 1.].  On or about November 18, 2002, Ms. Day, Catalina, Frank Butler (as President and individually), and Jean Butler (individually) executed the Agreement.  [UMF No. 2.].  The Agreement states that Ms. Day "shall earn the Bonus if [she] continues to work full-time for Catalina until the earlier of: (i) the sale of Catalina; or (ii) seven and one-half (7-1/2) years from the date of execution of this Agreement," and defines "Sale of Catalina" to include "sale of the Butlers' stock or sale of all of Catalina's assets."   [UMF No. 3]. Elsewhere, the Agreement states that Catalina will pay the Bonus within 60 days of

"payment to the Butlers of the consideration they are to be paid for their shares" and contemplates periodic payments for the "Butlers' Catalina shares." [UMF No. 4]. "Bonus" is "additional compensation equal to five percent (5%) of the: (i) net sales price; or (ii) value of Catalina, whichever is appropriate," with a "Minimum Bonus" of "no less than one million ($1,000,000)" "if all conditions of [the] Agreement are satisfied." [UMF No. 5].

It is beyond peradventure that Ms. Day worked for Catalina continuously from the execution of the Agreement until her retirement in 2024. [UMF No. 6]. Accordingly, Ms. Day's right to a bonus vested on or about May 18, 2010. [UMF No. 7]. Catalina testified that "for sure [Ms. Day has] reached [the Agreement's 'when bonus is earned' requirements] because she worked over the seven and a half years…" [UMF No. 8]. The first sale of assets occurred in November 2020, when Catalina sold certain property located in Pinellas County, Florida, to Generation Church of Tampa Bay, Inc. for approximately $1,000,000.00 (the "First Sale"). [UMF No. 9]. The second sale of assets occurred in July 2024, when Catalina, for no consideration, transferred certain property located in Pinellas County, Florida, to Catalina Investments, LLC, a newly created entity controlled by the shareholders of Catalina, who then sold that property to Prometheus Maritime Properties for approximately $12,500,000.00, without using any of the sale proceeds to support necessary operations and without providing for payment to outstanding creditors

including Ms. Day (the "Second Sale"). [UMF No. 10]. The third sale of assets occurred in April 2025, when Catalina entered into an Asset Purchase Agreement (the "APA") with Michael Reardon (the "Buyer") for the sale of Catalina's assets in exchange for a $1,000,000.00 promissory note and the assumption of approximately $1,425,000.00 in liabilities. [UMF No. 11]. The APA provided that the Buyer "does not assume any liability under any agreements between [Catalina] and Sharon Day," reflecting Catalina's retention of the obligation. [UMF No. 12]. The Buyer declared that, prior to consummation of the transaction, "Mr. Berney and [Catalina's President] told me clearly Catalina was aware of and would pay the obligation to Ms. Day and that [the Buyer] would not be responsible for it." [UMF No. 13]. So, between the First Sale for $1,000,000.00, the Second Sale for $12,500,000.00, and the Third Sale for $2,425,000.00 in assumption of liabilities and a note payable, Catalina has had asset sales totaling $15,925,000.00 since the Agreement was executed and Ms. Day earned her deferred compensation.

As noted above, Catalina testified that "for sure [Ms. Day has] reached [the Agreement's 'when bonus is earned' requirements] because she worked over the seven and a half years…" [UMF No. 8]. Catalina also testified that "the way [the Agreement] is written up is a little unclear in certain areas." [UMF No. 14]. Catalina further testified that in a scenario where Catalina sells its assets without the Butlers selling their shares, the timing of Ms. Day's Bonus payment is "part of the confusing

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 10 -

SHARON DAY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
2:25-CV-04090

part about the document." [UMF No. 15].

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment where there is "no genuine issue as to any material fact and the movant party is entitled to judgment as a matter of law." Contract ambiguity is a question of law for the Court and may be resolved on summary judgment. *See Southern California Ga Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) ("Ambiguity is a question of law for the court."). A provision is ambiguous when it is capable of two or more constructions that are both reasonable. *Seoul Semiconductor Co., Ltd. v. Finelite, Inc.*, 694 F. Supp. 3d 1199, 1208-09 (N.D. Cal. 2023). Determining whether parol evidence is admissible is a two-step process: first, a court provisionally receives all credible evidence regarding the parties' intentions to determine whether the language is reasonably susceptible to an interpretation urged by a party, and if it is reasonably susceptible, the extrinsic evidence is admitted to aid in interpreting the contract. *Id.* at 1209.

## IV.    ARGUMENT

### a. **The Agreement, as to entitlement to the deferred compensation, is clear and Ms. Day unquestionably is due her compensation.**

Even accepting ambiguity in certain payment and timing mechanics, the

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 11 -

SHARON DAY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
2:25-CV-04090

undisputed facts establish Catalina's present or future obligation to pay the Bonus to Ms. Day under the Agreement. Here, the record undisputedly shows: (1) the existence of a valid written contract; (2) performance and vesting; and (3) Catalina's retention and acknowledgement of the obligation.

The Agreement was executed by Ms. Day, Frank Butler, Jean Butler, and Catalina, and Catalina's own filing attaches the Agreement. [UMF No. 2]. The Agreement states that Ms. Day "shall earn the Bonus" if she works full-time until the earlier of a "Sale of Catalina" or 7.5 years from execution. [UMF No. 3]. It is undisputed that Ms. Day satisfied the 7.5-year requirement in 2010. [UMF Nos. 6, 7, and 8]. Accordingly, at minimum, her right to a bonus vested by that time. Catalina's testimony confirms this conclusion: "for sure [Ms. Day has] reached [the Agreement's 'when bonus is earned' requirements] because she worked over the seven and a half years…" [UMF No. 8].

Furthermore, the APA expressly provided that the Buyer "does not assume any liability under any agreements between [Catalina] and Sharon Day," thereby confirming Catalina's retention of Ms. Day's contractual rights and corresponding liabilities. [UMF No. 12]. Additionally, the Buyer declared that, prior to consummation of the transaction, "Mr. Berney and [Catalina's President] told me clearly Catalina was aware of and would pay the obligation to Ms. Day and that [the Buyer] would not be responsible for it." [UMF No. 13].

1

2

3

      b.  **The Agreement, as to the timing of payment, is ambiguous as a matter of law.**

4

5

6

7

8

9

10

11

12

13

14

15

      The Agreement's text is reasonably susceptible to more than one interpretation on material issues, including, but not limited to: (i) which event or events trigger(s) Catalina's obligation to pay in the context of an asset sale; (ii) how a "Sale of Catalina," expressly defined to include a sale of all assets, operates alongside provisions that elsewhere tie the timing of payment to the Butlers' receipt of consideration for their "shares"; and (iii) whether, and in what manner, the "Minimum Bonus" applies across different timing and valuation frameworks in stock-sale versus asset-sale scenarios.  These provisions overlap and do not cohere into a single, unambiguous contractual scheme.

16

17

18

19

20

21

22

23

24

25

26

27

      First, the Agreement provides that Ms. Day "shall earn the Bonus" upon the occurrence of either a "Sale of Catalina" or 7.5 years of continued employment, and it expressly defines "Sale of Catalina" to include "sale of all of Catalina's assets." [UMF No. 3]. At the same time, however, the Agreement's payment mechanics elsewhere speak in terms of payment within 60 days of "payment to the Butlers of the consideration they are to be paid for their shares" and periodic payments for the "Butlers' Catalina shares." [UMF No. 4].  Those provisions presume stock-sale consideration flows directly to the Butlers, not to the corporation, and they do not squarely address an asset sale in which consideration is paid to the corporation itself,

28

1   not the Butlers.

2   Second, the Agreement's "Minimum Bonus" of "no less than one million
3
4   ($1,000,000)" applies "if all conditions of [the Agreement] are satisfied," but the
5   Agreement does not specify whether that minimum attaches upon vesting by time
6
7   (7.5 years), upon a qualifying "Sale of Catalina," or both, nor how to reconcile the
8   minimum with the stock-focused timing language when the defined "Sale of
9   Catalina" occurs via an asset sale transaction.  [UMF No. 5].

10  Finally, Catalina, through its corporate representative and current President,
11
12  Marc Reese, admitted that the Agreement, solely as it relates to the timing of
13  payment, is "unclear" and "confusing."  [UMF Nos. 14, 15].  California law deems
14
15  a contract ambiguous where it is reasonably susceptible to more than one
16  interpretation.  *Seoul Semiconductor*, 694 F. Supp. 3d at 1208-09.  The Agreement
17  here satisfies that standard.  Resolving how the parties intended these provisions to
18
19  operate—particularly across sale structures—will require parol evidence and is for
20  trial.   This Court should grant summary adjudication that the Agreement is
21  ambiguous.
22
23
24
25
26
27
28

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

SHARON DAY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
2:25-CV-04090

## V.    PRAYER FOR RELIEF

Sharon Day respectfully requests that this Court enter an order:

1.    Granting partial summary judgment that Catalina Yachts, Inc. presently owes Sharon Day a bonus under the Bonus Compensation Agreement, with all issues concerning the timing of payment expressly reserved;

2.    Granting partial summary judgment that the Bonus Compensation Agreement dated November 18, 2002, is ambiguous as a matter of law;

3.    Preserving all unresolved issues for trial; and

4.    Awarding such other and further relief as this Court deems just and proper.

Dated: December 22, 2025          SHUMAKER, LOOP & KENDRICK, LLP
                                  Steven M. Berman
                                  By: */s/ Steven M. Berman*
                                      Steven M. Berman
                                      Attorney for SHARON DAY

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for Sharon Day certifies that this brief contains 2,142 words, which:

[x] complies with the word limit of L.R. 11-6.1.

[ ] complies with the word limit set by court order dated _____.

SHUMAKER, LOOP & KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 15 -

SHARON DAY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
2:25-CV-04090

1

## **CERTIFICATE OF SERVICE**

2

3

I HEREBY CERTIFY that, on December 22, 2025, a true and correct copy of

4

the foregoing was served via CM/ECF on all counsel of record who are registered

5

CM/ECF users and via electronic mail on Michael C. Lieb, mlieb@ecjlaw.com, and

6

7

Zoe M. Vallier, zvallier@ecjlaw.co, counsel for Catalina Yachts, Inc.; Daniel A.

8

Kaplan, dkaplan@danielkaplanlaw.com, and Aaron D. Sadock,

9

asadock@panakoslaw.com, counsel for Gerard Douglas; Bonnie McKnight,

10

11

bmcknight@panakoslaw.com, and Carly Totah, ct@danielkaplanlaw.com, counsel

12

for Gerard Douglas.

13

14

December 22, 2025                                /s/ Steven M. Berman
                                                    Steven M. Berman

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 16 -

SHARON DAY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
2:25-CV-04090