1  Shumaker, Loop & Kendrick, LLP
   Steven M. Berman, Bar No. 256846
2  sberman@shumaker.com
   101 East Kennedy Boulevard
3  Suite 2800
   Tampa, Florida 33602
4  Telephone:  813.229.7600
   Facsimile:   813.229.1660
5
   Attorneys for Defendant
6  Sharon Day

7

8              **UNITED STATES DISTRICT COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

| | |
|---|---|
| 11  CATALINA YACHTS, INC., a California Corporation, | Case No. 2:25-CV-04090-SVW-RAO |
| 12                Plaintiff, | Assigned to The Hon. Stephen V. Wilson |
| 13      v. | |
| 14  SHARON DAY, an individual; GERARD DOUGLAS, an individual; and DOES 1 through 10, inclusive, | **REDACTED** |
| 15 | **DEFENDANT/COUNTER-PLAINTIFF'S APPENDIX OF EVIDENCE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 16 | |
| 17               Defendants | |
| 18  GERARD DOUGLAS, | *[Filed concurrently with Notice of Motion and Memorandum of Points and Authorities; Statement of Uncontroverted Facts; and [Proposed] Order]* |
| 19                Plaintiff | |
| 20      v. _____ | |
| 21 | |
| 22               Defendant | Date: January 26, 2026 |
| 23      and | Time: 1:30 p.m. Courtroom 10A |
| 24  SHARON DAY, | Action Filed: May 7, 2025 |
| 25    Counterclaim Plaintiff, | Trial Date: February 17, 2026 |
| 26      v. | |
| 27  CATALINA YACHTS, INC., a California Corporation, | |
| 28 | |

1    Counterclaim Defendant.

2

3

4

5    Defendant/Counter-Plaintiff, Sharon Day, submits this Appendix of Evidence

6    in support of her Motion for Partial Summary Judgment.

7

| Exhibit Number | Document Description | Exhibit Authenticated By |
|---|---|---|
| 1 | Deposition Transcript of Corporate Representative of Catalina Yachts, Inc., taken on December 10, 2025 | Steven M. Berman |
| 2 | Warranty Deed reflecting November 2020 sale to Generation Church of Tampa Bay, Inc. | Steven M. Berman |
| 3 | Warranty Deed reflecting July 2024 sale to Prometheus Maritime Properties | Steven M. Berman |
| 4 | Asset Purchase Agreement dated April 23, 2025 (to be filed under seal) | Steven M. Berman |
| 5 | Affidavit of Michael Reardon | Steven M. Berman |
| 6 | Deposition Transcript of Keith Lichtman, taken on December 8, 2025 | Steven M. Berman |
| 7 | Bonus Compensation Agreement | Steven M. Berman |

SHUMAKER, LOOP &
KENDRICK, LLP
ATTORNEYS AT LAW
TAMPA

- 2 -

APPENDIX OF EVIDENCE
2:25-CV-04090

1

2    Dated:  December 22, 2025                    SHUMAKER, LOOP & KENDRICK,
                                                  LLP
3                                                 Steven M. Berman
                                                  By: */s/ Steven M. Berman*
4
                                                      Steven M. Berman
5                                                     Attorney for Defendant
                                                      SHARON DAY
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Marc Reese
December 10, 2025

```
 1   and you've now testified that both those things have
 2   happened; correct?
 3           MR. LIEB:  Mischaracterizes testimony.
 4           But go ahead.
 5           THE WITNESS:  We sold the assets of Catalina.
 6   BY MR. BERMAN:
 7       Q    Right.
 8       A    Not all of them.
 9       Q    Okay.  But Sharon Day worked for seven and a
10   half years -- more than seven and a half years,
11   according to testimony, since November 18th of 2002,
12   right, before she retired?
13       A    Yes, that's correct.
14       Q    So even if you didn't sell Catalina as
15   described in 1.1, she certainly complied with
16   Romanette ii working seven and a half years from the
17   date of November 18th, 2002, before she retired; right?
18       A    I'm -- okay.  I'm not an attorney.  Okay?
19       Q    I understand.
20       A    And so consequently there's a lot of different
21   sections on this agreement, so I would think that there
22   might be sections that apply, and thus should all be
23   looked into it.
24       Q    Sure.
25       A    I think the -- to me, the main function was
```

Mazo Reese
December 10, 2025

1    she worked at least seven and a half years from

2    November 18, 2002?

3            MR. LIEB:  It's been asked and answered.

4            THE WITNESS:  Absolutely she has.

5    BY MR. BERMAN:

6        Q    Okay.  And so with respect to this provision,

7    understanding there are other provisions as to timing,

8    but as to this provision, do you believe she's met the

9    "when bonus is earned" requirements in your reading?  I

10   understand you're not a lawyer.

11       A    For sure she's reached it because she worked

12   over the seven and a half years from that aspect.

13       Q    Okay.  Right.

14       A    Beyond that, I don't know what else you want me

15   to say.

16       Q    Okay.  You're hesitating because you're not

17   sure if Catalina was sold?

18       A    Well, the way this document is written up is a

19   little unclear in certain areas, and I believe this is

20   one of them.  And I think that it's confusing.

21       Q    Okay.  Fair enough.

22            What part of this agreement do you think is

23   unclear or confusing to you as the president of

24   Catalina?

25       A    As the president of Catalina?

Mazo Reese
December 10, 2025

1              MR. BERMAN:  Okay.

2              MR. LIEB:  -- conclusion.

3              MR. BERMAN:  I understand.

4              THE WITNESS:  Can you ask your question again,

5    please?

6              MR. BERMAN:  Sure.

7    BY MR. BERMAN:

8         Q    I'm asking you to assume what Catalina's CPA

9    told me, which is the Butlers will never sell their

10   shares of stock because there would be adverse tax

11   consequences to that.  And I'm asking you to equally

12   assume that Catalina will sell the church property, the

13   Salt Creek property, the business assets, and the other

14   Florida real estate that you believe is worth between 17

15   and $22 million and never sell its shares of stock.

16            So if the company just sells off its assets, at

17   that point in time, when would Sharon get her bonus?

18        A    That's part of the confusing part about the

19   document.

20        Q    Okay.  I appreciate that.

21            Have you had any discussions with any of the

22   family members about when you or the family members

23   think it's right to pay Sharon her deferred

24   compensation?

25        A    Have I?  No.

# EXHIBIT 2

# WILL BE FILED UNDER SEAL

EXHIBIT 3

Case 2:25-cv-04040-SVW-PD    Document 33    Filed 10/22/25    Page 11 of 29   Page
ID #:993

This Instrument Prepared by and return to:

R. Andrew George, Esq.

520 D Street, Suite C

Clearwater, FL 33756

Tax Parcel ID: 30-31-17-78600-001-0010

## WARRANTY DEED

THIS WARRANTY DEED is made as of July 25, 2024, between **CATALINA
INVESTMENTS, LLC**, a Florida limited liability company, whose mailing address is 3807
Westherly Circle, Westlake Village, California 91361 (the "Grantor"), and **PROMETHEUS
MARITIME PROPERTIES, LLC**, a Delaware limited liability company, whose mailing
address is 520 D Street, Suite C, Clearwater, Florida 33756 (the "Grantee").

Whenever used herein and wherever the context permits or requires, the terms "Grantor" and
"Grantee" shall include the singular and the plural; the heirs, legal representatives, and assigns of
individuals; and the successors and assigns of corporations, companies, trusts, and partnerships.

## W I T N E S S E T H :

That Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS
($10.00) and other good and valuable considerations to Grantor in hand paid by Grantee, the
receipt and sufficiency of which are hereby acknowledged, has granted, bargained and sold to
Grantee and Grantee's successors and assigns forever, that certain parcel of land lying and being
in Pinellas County, State of Florida (the "Property"), more particularly described as follows:

See **Exhibit "A"** attached hereto and incorporated herein.

TOGETHER WITH all and singular, the tenements, hereditaments, and appurtenances
thereto belonging or in anywise appertaining, and every right, title, or interest, legal or equitable,
of Grantor in and to the same.

TO HAVE AND TO HOLD the same in fee simple forever.

AND the Grantor hereby covenants with said Grantee that the Grantor is lawfully seized
of said land in fee simple; that the Grantor has good right and lawful authority to sell and convey
said land; and that the Property is free of all encumbrances except taxes and assessments accruing
subsequent to December 31, 2023. The Grantor hereby fully warrants the title to said land and
will defend the same against the lawful claims of all persons whomsoever.

IN WITNESS WHEREOF, Grantor has caused this Warranty Deed to be duly executed and delivered in its name on the date set forth above.

Signed, sealed, and delivered
in the presence of:

**GRANTOR:**

**CATALINA INVESTMENTS, LLC.**
a Florida limited liability company

Print Name: Marc Reese

By: _Jean Butler_
Name: Jean Butler
Title: Manager

Address: 3802 Weatherly Cir
Westlake Village CA
91361

Print Name:

Michael Murphy

Address: 2625 Townsgate Rd, Westlake Village, CA 91361
7/20/24

STATE OF California
COUNTY OF Los Angeles

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this 22 day of July, 2024, by Jean Butler, as Manager of CATALINA INVESTMENTS, LLC, a Florida limited liability company, on behalf of the company, who is ☐ personally known to me or ☒ produced CADL Y0415174 as identification.

_Sean Chavel_
Signature

Print Name: Sean Chavel
Notary Public, State and County aforesaid
Commission No.: 2408719
My Commission Expires: 6-21-26

see attachment

# CALIFORNIA ALL PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA }

COUNTY OF Los Angeles

On 7-22-24 before me, _____ Sean Chavel _____ Notary Public,

personally appeared _____ Jean Butler _____

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SEAN CHAVEL
Notary Public - California
Los Angeles County
Commission # 2408719
My Comm. Expires Jun 21, 2026

Signature: Sean Chavel (Seal)

_____ OPTIONAL _____

Description of Attached Document

Title or Type of Document: Warranty Deed    Number of Pages: 4

Document Date: 7-22-24    Other: _____

**EXHIBIT "A"**
Legal Description of the Property

Fee Parcel 1
Lot 1, Block 1, SALT CREEK BAYBORO SUBDIVISION # 2, according to the plat thereof as recorded in Plat Book 134, Page 62 and 63, of the public records of Pinellas County, Florida.

Easement Parcel 2
Easements as contained in that certain Quit Claim Deed, by and between Joseph K. Silvernail, as Grantor, and Vincent S. Lazzara, Steven B. Lazzara, Richard C. Lazzara and Joseph M. Fontana, as Grantees, filed December 28, 1995, recorded in Book 9205, Page 586 of Official Records, of Public Records of Pinellas County, Florida.

Easement Parcel 3
Easements as contained in that certain Cross Easement Agreement, by and between Catalina Yachts, Inc., a California corporation, as Grantor, and Joseph K. Silvernail, as Grantee, filed December 1, 2004, recorded in Book 13971, Page 1180 of Official Records, of the Public Records of Pinellas County, Florida.

EXHIBIT 4

# WILL BE FILED UNDER SEAL

EXHIBIT 5

Shumaker, Loop & Kendrick, LLP
Steven M. Berman, Bar No. 305704
sberman@shumaker.com
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone:  813.229.7600
Facsimile:   813.229.1660

Attorney for Defendant
Sharon Day

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| CATALINA YACHTS, INC., a California Corporation, <br><br> Plaintiff, <br><br> v. <br><br> SHARON DAY, an individual; GERARD DOUGLAS, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | Case No. 2:25-CV-04090-SVW-RAO <br><br> **DECLARATION OF MICHAEL REARDON** <br><br> Judge:     Hon. Stephen V. Wilson <br><br> Action Filed: May 7, 2025 <br> Trial Date:    January 6, 2026 |

NOW COMES Declarant Michael Reardon and declares under penalty of perjury as follows:

1.     I make this declaration based on my personal knowledge and, if called as a witness, I could and would testify competently to the facts stated herein.

2.     I first learned that Catalina Yachts, Inc. ("Catalina") was potentially for sale at the Miami Boat Show around February 14, 2025, when I first met Patrick Turner, who was then the President of Catalina.

3. In early March 2025, I entered into negotiations with Marc Reese and Russell Berney to purchase the assets of Catalina.

4. At all times, Mr. Reese and Mr. Berney acted on behalf of the ownership of and for Catalina.

5. The negotiations culminated in an agreement to purchase the assets of Catalina, as memorialized in the signed, confidential Asset Purchase Agreement dated April 23, 2025.

6. Toward the end of April 2025, and prior to execution of the Asset Purchase Agreement, I received a call from the Shumaker law firm to schedule a call with Sharon Day's attorney, Steve Berman. I learned during that call that Ms. Day had an employment agreement that promises a payment upon the sale of Catalina. Given that I was negotiating to purchase Catalina and this obligation was not disclosed to me, I was surprised to learn of it from Ms. Day's counsel.

7. I did not agree to take on this liability, so the Asset Purchase Agreement, which was still being negotiated, was revised at that time to exclude any liability, related to Ms. Day's employment contract, somehow being transferred to me.

8. Mr. Berney and Mr. Reese informed me during negotiations that Catalina was aware of the obligation to pay Ms. Day following consummation of our revised Asset Purchase Agreement. Mr. Berney and Mr. Reese told me clearly Catalina was aware of and would pay the obligation to Ms. Day and that I would not be responsible for it.

9. No other similar liability was disclosed during my negotiations to purchase the assets of Catalina.

10. If called to testify at any trial in the case, involving Catalina and Ms. Day regarding Catalina's obligation to pay Ms. Day following the sale of Catalina's assets to me, I will testify consistent with this declaration herein.

1    I declare under penalty of perjury under the laws of the United States of
2    America that the foregoing is true and correct.

3

4    Executed on ~~Sept 22 2025~~, at Edenton, North Carolina.

5

6

7    Michael Reardon

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Shumaker, Loop &
Kendrick, LLP

- 3 -    DECLARATION OF MICHAEL REARDON

38247970v4

# EXHIBIT 6

KEITH LICHTMAN                    December 08, 2025                                30
91973

```
 1  not sure of the property size anymore.
 2      Q.    And you described it in your earlier
 3  testimony as Catalina selling the Salt Creek
 4  property to itself.   What did you mean by that?
 5      A.    They -- through -- through, you know,
 6  Catalina Yachts sold it to Catalina Investments, and
 7  I believe Catalina Investments sold it to
 8  Prometheus, which is the eventual buyer.  But I'm
 9  not -- I'm, you know, I'm not sure of the exact
10  timeline or how that -- and then -- and then
11  Catalina Investments then owed Catalina, Inc. that
12  amount of money, so --
13      Q.    Okay.  And do you remember approximately
14  what the sales price was to that third party?
15      A.    Yeah, I think it -- I think it was
16  approximately --
17            THE REPORTER:  Sorry.  Just let each other
18  totally finish questions and answers before
19  starting, just so we can get a clean record.
20      A.    I think it was around twelve million five
21  hundred thousand.
22      Q.    Okay.
23      A.    Before escrow freezing -- before escrow
24  freezing it.
25      Q.    Right.  And so the twelve million five
```

KEITH LICHTMAN                         December 08, 2025                              31
91973

1    hundred thousand from the Salt Creek property and

2    the million and a half from the church property gets

3    us to about $14 million.  Were any of those $14

4    million of asset sales set aside to pay Sharon Day

5    her retirement monies?

6         A.   No, not that I know of, no.

7         Q.   Do you know who took the $14 million from

8    the various asset sales of the Salt Creek property

9    and the church property?

10        A.   The church property, Catalina Yachts, Inc.

11   used to continue operations.  That was used to

12   continue operations.

13        Q.   Okay.

14        A.   And then --

15        Q.   After it was sold to the church?

16        A.   Yeah.  Yeah.  It was in our bucket to use.

17             MARC REESE:  Mr. Berman?

18             MR. BERMAN:  I'm sorry.  Is there a

19   question from a third party?

20   BY MR. BERMAN:

21        Q.   I'm sorry, Mr. Lichtman, you can continue.

22        A.   Yeah, so we used that money to have -- to

23   continue because when you have 20 boats on the

24   floor, 15 boats on the floor, it takes a lot of

25   money for the work in process, so we were using that

KEITH LICHTMAN                        December 08, 2025                                   32
91973

1   money to cover our work in process, we were using

2   that money to cover any losses we had, year in and

3   year out.  The twelve and a half million was --

4   Catalina Yachts Florida never -- never got to

5   receive any of that money or use it in production.

6        Q.   And so you indicated that some of the

7   church money was used for operations, but the Salt

8   Creek sale proceeds were not used for the

9   operations?

10       A.   Correct.

11       Q.   And at any point in time after the Salt

12  Creek property was sold -- first of all, do you

13  recall when the Salt Creek property was sold

14  approximately?

15       A.   Latter part of 2024, I think.  The last

16  quarter, September of 2024, I think.

17       Q.   Okay.  And was Catalina Yachts able to pay

18  all of its financial obligations in the ordinary

19  course at the point in time when it sold the Salt

20  Creek property?

21       A.   No.  We were having financial difficulty.

22  Our boat sales were down.  We had too many boats on

23  the floor that dealers may have stopped ordering, or

24  they held on, saying, you know, "We need more time,"

25  numerous reasons.  But, no, we were not financially

# EXHIBIT 7

# SHARON DAY
# Bonus Compensation Agreement

This Agreement is entered into and effective on ⎯⎯ 1⎯8⎯, 2002, by and between:

    (i)    **Sharon Day** ("Employee");

    (ii)    **Frank Butler** and **Jean Butler**, as individuals; and

    (iii)    **Catalina Yachts**, a California Corporation, ("Catalina") with its principal place of business located in Woodland Hills, California.

## RECITALS

A.    Employee is a key employee of Catalina and a Director of Catalina Yachts, and has been employed by it for more than 25 years.

B.    Catalina wishes to retain Employee's services.

C.    All Catalina's issued and outstanding shares of stock are owned by the:

    (i)    Butler Family Trust;

    (ii)    Frank Butler Grantor Retained Annuity Trust - Catalina (Deborah);

    (iii)    Frank Butler Grantor Retained Annuity Trust - Catalina (Mary);

    (iv)    Frank Butler Grantor Retained Annuity Trust - Catalina (Nancy);

    (v)    Frank Butler Grantor Retained Annuity Trust - Catalina (David);

    (vi)    Jean Butler Grantor Retained Annuity Trust - Catalina (Deborah);

    (vii)    Jean Butler Grantor Retained Annuity Trust - Catalina (Mary);

    (viii)    Jean Butler Grantor Retained Annuity Trust - Catalina (Nancy); and

    (ix)    Jean Butler Grantor Retained Annuity Trust - Catalina (David).

Reference in this Agreement to **"Butlers"** are intended to be to these trusts as a group.

## I. Continued Employment and Bonus

### 1.1. When Bonus Is Earned.

Employee shall earn the Bonus if Employee continues to work full-time for Catalina until the **earlier** of:

    (i)    the sale of Catalina; or

    (ii)    seven and one-half (7-1/2) years from the date of execution of this Agreement.

"Sale of Catalina" includes sale of the Butlers' stock **or** sale of all of Catalina's assets.

Bonus Compensation Agreement re: Sharon Day
Page 2 of 4

### 1.2. How Bonus Is Measured.

The Bonus shall be additional compensation equal to five percent (5%) of the:

(i)    net sales price; or

(ii)    value of Catalina, whichever is appropriate.

### 1.3. Determining Fair Market Value.

This paragraph applies if Catalina must be valued for purposes of determining the Bonus. Catalina shall select an independent, professional appraiser. The appraiser shall determine Catalina's fair market value. The Bonus shall be five percent (5%) of Catalina's fair market value, unreduced by discounts such as lack of marketability and lack of control. The appraisal shall be conclusive between the parties regarding the value of Catalina shares.

### 1.4. Minimum Bonus.

This minimum applies if all conditions of this Agreement are satisfied and despite the formula set forth above. The Bonus paid to Employee shall be no less than one million ($1,000,000).

### 1.5. Timing Of Payments.

Catalina agrees to pay the Bonus to Employee within sixty (60) days of payment to the Butlers of the consideration they are to be paid for their shares. If the consideration, or part of it, paid to the Butlers is in the form of the buyer's securities, Catalina or its acquirer shall convey to Employee five percent (5%) of the securities to be delivered to the Butlers.

### 1.6. Pro Ration Of Payments.

This paragraph applies if the monetary portion of the compensation to be paid for the Butlers' Catalina shares is not paid in a lump sum. Catalina shall pay to Employee five percent (5%) of the periodic payment(s) that are to be paid to the Butlers, or their successors in interest, for their shares as they are paid. Despite the length of time over which the Butlers receive periodic payments, all cash payments to be paid to Employee shall be fully paid no later than five (5) years after the beginning of periodic payments.

### 1.7. Binding On Parties.

The parties agree that the sales price and terms for all shares of Catalina stock negotiated by the Butlers, their heirs, or successors in interest shall be conclusive between the parties as to the value of Catalina Stock.

## II. Termination of Employment

This paragraph applies if Employee dies or becomes totally disabled before the conclusion of seven and one-half (7-1/2) years from the date of this Agreement or sale of all of the outstanding Catalina shares, whichever comes first. Catalina shall pay Employee or Employee's estate, as the case may be, an amount equal to the value of five percent (5%) of the total number of outstanding Catalina shares. The payment shall be made within sixty (60) days of the date of Employee's death or total disability.

If Employee becomes unable to work full-time for Catalina due to illness or disability

Bonus Compensation Agreement re: Sharon Day
Page 3 of 4

not amounting to total disability, the parties agree to negotiate a modified arrangement which would allow Employee to continue a manageable work schedule and still receive a full bonus payment.

### III.  No Personal Liability

The Butlers agree to notify any buyer of their stock of this Agreement. The Butlers further agree to reconfirm, in the contract for the sale of their stock, Catalina's liability to make the payments provided for in this Agreement following the sale. If Catalina is to be merged into another corporation after acquisition, the Butlers agree to obtain the surviving corporation's written consent to make the required payment(s). If the Butlers take the steps outlined in this paragraph, they shall not have any personal liability to Employee.

### IV.  Entire Agreement

This document constitutes the parties' entire understanding on this subject. Understandings or representations of any kind of preceding the date of this Agreement shall not bind any party except to the extent incorporated in this Agreement. This Agreement may only be modified by a document in writing signed by all parties.

WHEREFORE, the parties have executed this Agreement on *November 18* _____, 2002.


_Sharon Day_
**Sharon Day**

_Jean Butler_
**Jean Butler, Individually**


**Catalina Yachts,**
**A California Corporation**


_Frank Butler_
**By: Frank Butler, President**

_Frank Butler_
**Frank Butler, Individually**

Bonus Compensation Agreement re: Sharon Day
Page 4 of 4

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On November 18 , 2002 before me, Michele Rene Borowski , a
Notary Public personally appeared **Sharon Day** personally know to me to be the person
whose name is subscribed to the within instrument and acknowledged to me that she
executed the same.

WITNESS my hand and official seal.

Signature



STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On November 18 , 2002 before me, Michele Rene Borowski , a
Notary Public personally appeared **Frank Butler** and **Jean Butler** personally known to me to
be the persons whose names are subscribed to the within instrument and acknowledged to
me that they executed the same as individuals, and that Frank Butler also executed this
instrument in his authorized capacity, and that by his signature on the instrument the entity
upon behalf of which he acted executed the instrument.

WITNESS my hand and official seal.

Signature