Michael C. Lieb (SBN 126831)
  mlieb@ecjlaw.com
Zoe M. Vallier (SBN 324324)
  zvallier@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Plaintiff/Counter-Defendant
CATALINA YACHTS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CATALINA YACHTS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARON DAY, an individual; GERARD DOUGLAS, an individual; and DOES 1 through 10, inclusive,<br><br>Defendant.<br><br>────────────────<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:25-cv-04090-SVW-RAO<br><br>Assigned to The Hon. Stephen V. Wilson<br><br>**CATALINA YACHTS INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Statement of Uncontroverted Facts; Declarations of Marc Reese, Michael C. Lieb, and Wesley Sanders; Appendix of Evidence; [Proposed] Order; and [Proposed] Judgment]*<br><br>Date:    March 16, 2026<br>Time:    1:30 p.m.<br>Crtrm.: 10A<br><br>Action Filed:   May 7, 2025<br>Trial Date:     April 21, 2026 |

ERVIN COHEN & JESSUP LLP

**TO THE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 16, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 10A of the above-referenced Court, located at 350 W. First Street, Los Angeles, CA 90012, pursuant to Rule 56, Plaintiff/Counter-Defendant Catalina Yachts, Inc. ("Plaintiff" or "Catalina") will, and hereby does, move the Court for an order granting Summary Judgment in its favor on (1) its Complaint for Declaratory Judgment, and (2) all claims asserted by Defendant/Counter-Plaintiff Sharon Day ("Day") against Catalina, or in the alternative for partial summary judgment on each of its and Day's claims. Catalina moves for summary judgment on the grounds that there is no genuine issue as to any material fact and Catalina is entitled to judgment as a matter of law.

The sole issue before this Court is whether certain events (Day's retirement from Catalina and/or certain sales of some of Catalina assets) triggered Day's rights to a bonus under a contract called Bonus Compensation Agreement ("BCA") between Catalina and Day, which is an issue of contract interpretation. Neither Day's retirement nor any asset sale has triggered a bonus payment; and the BCA leaves no room for any other interpretation. All of Day's claims hinge on her having a present right to payment from Catalina, but she does not. Therefore, Catalina is entitled to prevail both on its complaint for declaratory judgment and on Day's counterclaim.

The Motion is based on this Notice, the concurrently filed Memorandum of Points and Authorities, Statement of Uncontroverted Facts, Declarations of Marc Reese, Wesley Sanders, and Michael C. Lieb, Appendix of Evidence, [Proposed] Judgment, and all the pleadings and files in this matter, and on such other matters as may be presented to the Court at the time of hearing.

The motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 3, 2025, and following the Court's order on January

ERVIN COHEN & JESSUP LLP

1  12, 2025 vacating Catalina's pending motion for summary judgement.

2

3  DATED:  February 13, 2026          ERVIN COHEN & JESSUP LLP

4                                                    Michael C. Lieb
                                                     Zoe M. Vallier
5

6

7                                          By:        /s/ Michael C. Lieb

8                                                    Michael C. Lieb

9                                                    Attorneys for Plaintiff/Counter-Defendant
                                                     CATALINA YACHTS, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................. 8

II. STATEMENT OF FACTS ............................................................................... 8

    A. The Bonus Compensation Agreement ................................................. 8

    B. The Asset Sales ................................................................................... 10

        1. The "Church Property" Sale .................................................... 10

        2. Salt Creek Transaction ............................................................ 11

        3. The Reardon Transaction ........................................................ 12

III. LEGAL STANDARD ...................................................................................... 14

IV. SUMMARY JUDGMENT SHOULD BE GRANTED WITH
RESPECT TO CATALINA'S CAUSE OF ACTION FOR
DECLARATORY JUDGMENT ..................................................................... 14

    A. The Asset Sales Do Not Trigger Day's Payment Rights. .................... 14

    B. The BCA Is Not Reasonably Susceptible to the Interpretation
that the Asset Sales Triggered Day's Bonus Payment ......................... 15

    C. The Rescission of the Reardon Transaction Undermines any
"Appeal to Equity" by Day. ................................................................. 17

V. EACH OF DAY'S COUNTERCLAIMS FAIL AS A MATTER OF
LAW ............................................................................................................... 17

    A. Day's Breach of Contract Claim Fails as a Matter of Law.................. 18

    B. Day's Breach of the Duty of Good Faith and Fair Dealing Claim
Fails as a Matter of Law....................................................................... 19

    C. Day's Promissory Estoppel Claim Fails as a Matter of Law............... 20

    D. Day's Fraudulent Transfer of Assets Claim Fails as a Matter of
Law ....................................................................................................... 22

        1. Day Lacks Standing. ................................................................ 22

        2. Day Cannot Satisfy Any Elements of her Fraudulent
Transfer Claim ......................................................................... 23

        3. Day's Fraudulent Transfer Claim Fails Because it is
Duplicative of Her Other Causes of Action ............................ 25

VI. CONCLUSION ............................................................................................... 25

ERVIN COHEN & JESSUP LLP

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Applied Med. Distribution Corp. v. Ah Sung Int'l, Inc.*,
  2015 WL 12910766 (C.D. Cal. Apr. 29, 2015)....................................14

*Barris Indus., Inc. v. Worldvision Enters., Inc.*,
  875 F.2d 1446 (9th Cir. 1989) ...........................................................16

*Bestwall LLC v. Off. Comm. of Asbestos Claimants of Bestwall, LLC*,
  148 F.4th 233 (4th Cir. 2025)............................................................11

*In re Blanchard*,
  547 B.R. 347 (Bankr. C.D. Cal. 2016) ..........................................22, 24

*Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California*,
  618 F.3d 1066 (9th Cir. 2010) ...........................................................17

*Callahan v. City of Sanger*,
  2015 WL 2455419 (E.D. Cal. May 22, 2015)......................................17

*Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*,
  295 F. Supp. 2d 1091 (N.D. Cal. 2003).............................................14

*Frith v. Fed. Express Corp.*,
  2009 WL 10675202 (C.D. Cal. Dec. 11, 2009) ..................................18

*Lee v. Select Portfolio Servicing Inc.*,
  2015 WL 12659931 (C.D. Cal. Feb. 5, 2015)....................................18

*Moses v. Innoprise Software*,
  2013 WL 6019536 (N.D. Cal. Nov. 13, 2013)....................................23

**State Cases**

*A-C Co. v. Security Pacific Nat. Bank*,
  173 Cal.App.3d 462 (1985)...............................................................20

*Annod Corp. v. Hamilton & Samuels*,
  100 Cal.App.4th 1286 (2002)............................................................24

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

*Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*,
  42 Cal. App. 5th 918 (2019) .................................................................... 19

*Bank of the West v. Superior Court*,
  2 Cal.4th 1254 (1992) ........................................................................... 14

*Broome v. Regents of Univ. of California*,
  80 Cal. App. 5th 375 (2022) ................................................................. 21

*Comunale v. Traders & General Ins. Co.*,
  50 Cal. 2d 654 (1958) ........................................................................... 19

*Cortez v. Vogt*,
  52 Cal. App. 4th 917 (1997) ................................................................. 23

*Filip v. Bucurenciu*,
  129 Cal.App.4th 825 (2005) ................................................................. 24

*Guz v. Bechtel National, Inc.*,
  24 Cal. 4th 317 (2000) .......................................................................... 19

*Renda v. Nevarez*,
  223 Cal. App. 4th 1231 (2014) ............................................................. 25

*Slivinsky v. Watkins-Johnson Co*.,
  221 Cal. App. 3d 799 (1990) ................................................................ 21

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
  14 Cal. App. 4th 637 (1993) ................................................................. 22

*US Ecology, Inc. v. State of California*,
  129 Cal. App. 4th 887 (2005) ............................................................... 20

**State Statutes**

Cal. Civ. Code § 3439.04 ........................................................................ 23

Cal. Civ. Code § 3439.04(a)(1) ............................................................... 22

Cal. Civ. Code § 3439.04(a)(2) ............................................................... 22

Cal. Civ. Code § 3439.05 .................................................................. 22, 23

Cal. Civ. Code § 3439.08(a) .................................................................... 24

Cal. Civ. Proc. Code § 1856 .................................................................... 21

Cal. Code Civ. Proc. § 337 ........................................................................ 11

Fla. Stat. § 726.105(1)(a) ........................................................................ 22

Fla. Stat. § 726.105(1)(b) ........................................................................ 22

Fla. Stat. § 726.106 ........................................................................... 22, 23

Fla. Stat. § 726.109(1) ............................................................................ 24

Texas Business Organizations Code §1.002(55)(A) ................................. 11

**Other Authorities**

CACI No. 325 ........................................................................................... 19

Fed. R. Civ. P. 56(a) ................................................................................. 14

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This entire action is resolved by the terms of the parties' contract. As framed by both the Complaint of Catalina Yachts, Inc. ("Catalina") and the Second Amended Counterclaim of Sharon Day ("Day"), the sole issue before this Court is whether certain events (Day's retirement from Catalina and/or certain sales of some of Catalina assets), triggered Day's rights to a bonus under a contract called the Bonus Compensation Agreement ("BCA"). They did not, because payment to Day is triggered only by the sale of the Butlers' shares of Catalina stock. And, even if a sale of all, or substantially all, Catalina assets triggered payment, there was no sale of all or substantially all Catalina assets. The BCA leaves no room for any other interpretation. Catalina is entitled to judgment because the Butlers have not sold their shares of Catalina stock and Catalina has not sold all or substantially all of its assets.

### II.    STATEMENT OF FACTS

#### A.    The Bonus Compensation Agreement

Sharon Day signed the BCA on or about November 18, 2002. [Uncontroverted Material Fact ("UMF") No. 1.] The BCA states that Day will be paid a "minimum bonus" of $1 million or 5% of the "net sales price" received by the Catalina shareholders on a sale of their shares of stock, whichever is greater. [UMF. No. 2].

The BCA contains different provisions for when the bonus is "earned" and the "timing of payment."

Per BCA Section 1.1, Day "earned" her bonus when she continued to work for Catalina for an additional 7½ years after signing the BCA on November 18, 2002 – i.e., roughly May 18, 2010. [UMF Nos. 3, 5.]

**1.1. When Bonus Is Earned.**

Employee shall earn the Bonus if Employee continues to work full-time for Catalina until the **earlier** of:

(i)     the sale of Catalina; or

(ii)    seven and one-half (7-1/2) years from the date of execution of this Agreement.

"Sale of Catalina" includes sale of the Butlers' stock **or** sale of all of Catalina's assets.

She remained employed by Catalina for more than 7½ years.  [UMF Nos. 4, 9].

The bonus was not payable, however, upon being earned.  Under Section 1.5, labeled "Timing of Payments," Day was to be paid "within sixty (60) days of payment to the Butlers[1] of the consideration they are to be paid for their [Catalina] shares."  [UMF No. 10]. Section 1.5 further states that if the consideration received by the Butlers was in the form of securities, Day would receive 5% of those securities.  [UMF No. 10]. And Section 1.6 states that if payment was to be made over time, Day would be paid as the Catalina shareholders received their payments, provided that the full bonus was not to stretch beyond five years.  [UMF No. 11].

**1.5. Timing Of Payments.**

Catalina agrees to pay the Bonus to Employee within sixty (60) days of payment to the Butlers of the consideration they are to be paid for their shares.  If the consideration, or part of it, paid to the Butlers is in the form of the buyer's securities, Catalina or its acquirer shall convey to Employee five percent (5%) of the securities to be delivered to the Butlers.

**1.6. Pro Ration Of Payments.**

This paragraph applies if the monetary portion of the compensation to be paid for the Butlers' Catalina shares is not paid in a lump sum.  Catalina shall pay to Employee five percent (5%) of the periodic payment(s) that are to be paid to the Butlers, or their successors in interest, for their shares as they are paid.  Despite the length of time over which the Butlers receive periodic payments, all cash payments to be paid to Employee shall be fully paid no later than five (5) years after the beginning of periodic payments.

The BCA is thus clear that Day was to be paid her bonus when the Butlers sold their shares of Catalina stock, and at the time they received the consideration for that sale.

---

[1]    The "Butlers" are defined in Recital C of the BCA as nine separate trusts that collectively owned all the shares of Catalina stock when the BCA was signed, and no Catalina stock has ever been sold. [UMF Nos. 12, 13.]

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

B.    **The Asset Sales**

Day does not claim that the Butlers sold any of their shares of Catalina stock. She instead argues that, either alone or in combination, three transactions constituted the sale of all or substantially all of Catalina's assets.

The BCA does not contain any reference to anything happening on a sale of "substantially all" of Catalina's assets. It does state the term "Sale of Catalina" "includes sale of the Butler's stock or sale of <u>all</u> of Catalina assets."  (Emphasis added) [UMF No. 7]. But, the term "Sale of Catalina" is used only in Section 1.1 to determine when the bonus is earned.  Specifically, it says the bonus is earned if Day works for Catalina for 7½ years or there is a "sale of Catalina" before that. [UMF No. 3]. The term "Sale of Catalina" does not appear anywhere else in the BCA.

Day contends that the defined term "Sale of Catalina" should be exported to Section 1.5, which does not reference "Sale of Catalina" but rather refers to payment becoming due after a "payment to the Butlers of the consideration they are to be paid for their shares." [UMF No. 10]. But even were the Court to indulge that argument, it would go nowhere because it is undisputed that a "Sale of Catalina" has not occurred because Catalina has not sold "all of Catalina's assets."

That leads to what appears to be Day's current working argument, which is that, in combination, three transactions engaged in by Catalina constituted a sale of substantially all of Catalina's assets, which, she claims, is the functional equivalent of the sale of all of Catalina's assets, which, she claims, is the functional equivalent of the sale of the Butlers' shares of their Catalina stock.

Even were the Court inclined to consider that theory, the result would not change because the transactions did not constitute the sale of all or substantially all of Catalina's assets.

*1.    The "Church Property" Sale*

Day's entire allegation on what it calls the "Church Property" sale consists of a single paragraph alleging that Catalina sold a piece of property to a church on

1  November 19, 2020, and that none of the proceeds were segregated to pay Day.

2  [Dkt. 116, SACC, ¶ 29]. If this transaction triggered Day's right to payment, the

3  claim is time-barred. Cal. Code Civ. Proc. § 337. Day does not even allege that this

4  property was used or useful in Catalina's operations.

5       **2.**  ***Salt Creek Transaction***

6     In 2024, when Day was Catalina's President, Catalina transferred what she

7  refers to as the "Salt Creek Property" to Catalina Investments, Catalina's wholly

8  owned subsidiary. [UMF Nos. 16, 17, 20].  Derisively (and inaccurately) calling the

9  transaction a "Texas Two-Step,[2] " Day actually signed the deed transferring the

10  property from Catalina to Catalina Investments, and she now claims that by signing

11  that deed, <u>she</u> enabled a fraudulent transfer. [UMF No. 21].

12     The fact is, this was not a fraudulent transfer at all (nor was it, or could it have

13  been, a "Texas Two-Step"); it was done in order to allow Catalina Investments to

14  transfer the Salt Creek Property to a Section 1031 "accommodator" so that it could

15  be exchanged for "like-kind property." [UMF Nos. 15-32].  As discussed in the

16  Declaration of Marc Reese, Catalina replaced the Salt Creek Property with real

17  estate that would generate more income. [UMF Nos. 15, 19, 25-30].  That income

18  was then dividended up to Catalina to help pay its operating costs. [UMF No. 31].

19  The reason for the interim transfer from Catalina to Catalina Investments – as Day

20  must have known because she signed the transfer deed – was to insulate Catalina

21  from any unknown liabilities associated with the acquired properties. [UMF Nos.

22  21, 24].

23  _____

24  [2] As best as Catalina's counsel can tell, in addition to being a popular dance and the name of a Texas lottery game, a Texas Two-Step can refer to the

25  process of transferring mass tort liabilities to a separate company pursuant to a "divisional merger" authorized by Texas Business Organizations Code

26  §1.002(55)(A). *Bestwall LLC v. Off. Comm. of Asbestos Claimants of*

27  *Bestwall, LLC*, 148 F.4th 233, 236-37 (4th Cir. 2025). Catalina is not a Texas company; there are no mass tort liabilities; and Catalina retained the liability

28  under Day's BCA.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

As the Reese Declaration explains, Catalina transferred the Salt Creek Property to Catalina Investments and received 100% of the equity interest in Catalina Investments [UMF No. 18]; Catalina Investments then transferred the Salt Creek Property, through an accommodator, to Prometheus Maritime Properties, LLC ("Prometheus") for $12.5 million, generating net proceeds, after closing costs, prorations, etc., of $12,038,056.46; and the accommodator used the proceeds of that transaction to purchase for Catalina Investments an undivided 23.587786% interest in real property located in Gambling, Louisiana ($6.18 million purchase price), and an undivided 7.295015% interest in two properties located in Oxford, Mississippi ($6.337 million purchase price).  [UMF Nos. 25-28]. The exchanged properties are held for Catalina Investments in Delaware Statutory Trusts ("DSTs"), which offer additional tax and asset protection advantages. [UMF No. 29].

Catalina remains the 100% owner of the membership interests in Catalina Investments, which owns the property interests it acquired in the tax-free Rule 1031 exchange of real property. [UMF No. 14]. The properties obtained by Catalina in the 1031 exchange were as valuable as the Salt Creek Property. [UMF Nos. 25-28, 30]. No part of the transaction was done to defraud creditors. [UMF Nos. 41, 42].

### 3. *The Reardon Transaction*

In April 2025, Catalina agreed to sell certain of its assets to a buyer named Michael Reardon (the "Reardon Transaction"). [UMF No. 33]. The Reardon Transaction is memorialized in a document titled Asset Purchase Agreement dated April 23, 2025 ("APA") and related documents incorporated therein. [UMF No. 34]. The Reardon Transaction was entered into because Catalina had made the decision to discontinue building boats, which had become unprofitable. [UMF No. 35].

In the Reardon Transaction, Catalina sold its name and certain equipment to Reardon while retaining the building used to build boats, the fixtures, and certain surrounding real property. [UMF No. 36]. As part of the transaction, Reardon was to lease the building from Catalina; the building and underlying real property remained

owned by Catalina. Reardon's consideration consisted of the assumption of $1.45 million in Catalina debt and a $1 million promissory note payable over three years. [UMF No. 37]. The Reardon bid was selected in a competitive bidding process as the most definitive and financially advantageous offer received by Catalina. [UMF No. 38].

Reardon made one note payment of $4,166 under the $1 million promissory note associated with the transaction, and then defaulted. [UMF No. 39].  He also defaulted on the lease, and Catalina has regained possession of the leased property. [UMF No. 40]. Catalina sued Reardon in Florida to recover the other purchased assets. [UMF No. 40].

Day alleges that the Reardon Transaction was structured "to attempt to avoid triggering the obligation to pay Day the Vested Bonus by purporting to sell fewer than all of Catalina Yachts' assets and none of its stock." [Dkt. 116, SACC, ¶ 53]. But, the Reardon Transaction did not "purport" to sell fewer than all of Catalina's assets and none of its stock.  It actually *did* sell far fewer than all of its assets and none of its stock because, following the Reardon Transaction, Catalina still retained between $25 million and $30 million in assets consisting of real estate and its 100% ownership interest in Catalina Investments. [UMF No. 14]. Further, from the date of the BCA through today, none of the Butlers have sold any of their shares of Catalina stock.  [UMF No. 13]. Thus, the issue of whether a transaction that ultimately disposed of all, or substantially all, of Catalina's assets would have triggered Day's bonus rights, is irrelevant.  The Reardon Transaction (and any asset sales before that) were not that hypothetical situation.

*      *      *      *

All of Day's claims hinge on her having a present right to payment from Catalina due to the three transactions described above.  None of these transactions constitute the sale of any shares of Catalina stock, nor, to the extent relevant to the analysis, the sale of all or substantially all of Catalina's assets.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

### III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has made a showing that this standard is met, the burden shifts to the party opposing summary judgment to demonstrate that there is a genuine issue for trial. *Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.,* 295 F. Supp. 2d 1091, 1101 (N.D. Cal. 2003). Summary judgment on the meaning of the terms of a contract is appropriate where the contract terms are clear and unambiguous, even if the parties disagree as to their meaning. *Id*. Interpretation of contract is a matter of law, including whether the contract is ambiguous. *Id.*

### IV. <u>SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT TO CATALINA'S CAUSE OF ACTION FOR DECLARATORY JUDGMENT</u>

This dispute can only be resolved through court interpretation of the terms of the parties' respective rights and obligations under the BCA. Where, as here, a contract's terms are clear and unambiguous, a court may on summary judgment grant declaratory relief regarding interpretation of the contract. *Applied Med. Distribution Corp. v. Ah Sung Int'l, Inc.,* 2015 WL 12910766, at *4 (C.D. Cal. Apr. 29, 2015).

### A. <u>The Asset Sales Do Not Trigger Day's Payment Rights.</u>

Day's theory of this case seems to be that there are ambiguities in the BCA; and thus there are situations that hypothetically *may* arise in which Day's entitlement to a bonus payment could be unclear. But those hypotheticals are not before the Court, and the application of the BCA to the three asset sales is not ambiguous. *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1265 (1992)

14

ERVIN COHEN & JESSUP LLP

1  ("language in a contract must be construed in the context of that instrument as a

2  whole, *and in the circumstances of that case*, and cannot be found to be ambiguous

3  in the abstract.") (emphasis added; citations omitted.). None of those transactions,

4  either alone or in combination, constituted the sale of any shares of Catalina stock or

5  the sales of all or substantially all of Catalina's assets.

6       That there could be some future transaction that comes sufficiently close to a

7  sale of all of the Butlers' shares of Catalina stock to trigger a reasonable dispute

8  over Day's payment rights is irrelevant.  The issue here is whether the three asset

9  sales Day identifies do so, and they do not.

10      Apparently recognizing this reality, Day's backup argument seems to be that

11  the asset sales constituted a "sale of the assets used and/or useful in the operation of

12  [Catalina's] business . . . ." [Dkt. 116, SACC, ¶ 57]. But there is no provision in the

13  BCA that triggers Day's rights when Catalina stops building boats – something that

14  would be easy enough to say. Further, Catalina has not sold the assets used or useful

15  in its business. As the Reese Declaration states, Catalina sold the Salt Creek

16  Property to generate more income to satisfy Catalina's cash needs, and in the

17  Reardon Transaction, it retained the building and fixtures used or useful in its

18  business. [UMF Nos. 15, 36]. So even that argument – which has no basis in the

19  BCA – is wrong.

20      As a matter of law, there was no Triggering Event under the BCA. Catalina is

21  therefore entitled to judgment in its favor in this case.

22      **B.**    **The BCA Is Not Reasonably Susceptible to the Interpretation that**

23            **the Asset Sales Triggered Day's Bonus Payment.**

24      Day has filed her own Partial Motion for Summary Judgment in which she

25  seeks a ruling that the BCA is ambiguous and that parol evidence is therefore

26  admissible to construe its terms. The merits of that argument are addressed in

27  Catalina's Opposition [Dkt. 121]. But the fact that Day is making that argument

28  raises the possibility that she will oppose this motion with an offer of parol

ERVIN COHEN & JESSUP LLP

evidence.

Firstly, Catalina is not aware of any parol evidence. Day lacks the capacity to testify, and nobody else was involved in the discussions of the BCA other than Day and Frank Butler, who is deceased. Day also has not produced any documentary evidence that constitutes parol evidence.

But, even were parol evidence offered, it would not be able to overcome the basic facts at hand.  The asset sales were not a sale of the Butler's shares of Catalina; they were not sales of all of Catalina's assets; they were not sales of "substantially all" of Catalina's assets; and they were not even sales of all assets useful in the boat-building business. So, even were parol evidence offered to show that any of the foregoing events was intended to trigger payment to Day, none of them have occurred.

Furthermore, the BCA is not reasonably susceptible to the interpretation that Day's bonus is triggered on the sale of substantially all of Catalina's assets or all assets useful in the boat-building business.  There is simply no language in the BCA that Day can point to as "meaning" either of those things.

Under California law, "the test of admissibilty of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a *meaning to which the language of the contract is reasonably susceptible*." *Barris Indus., Inc. v. Worldvision Enters., Inc.,* 875 F.2d 1446, 1450 (9th Cir. 1989) (citing California case law; emphasis added). Thus, if the extrinsic evidence advances an interpretation to which the contract is *not* reasonably susceptible, the extrinsic evidence is not admissible. *Id. citing A. Kemp Fisheries, Inc. v. Castle and Cooke, Inc.*, 852 F.2d 483, 496 (9th Cir. 1988). The mere existence of extrinsic evidence supporting an alternative meaning does not foreclose summary judgment where the extrinsic evidence is insufficient to render the contract susceptible to the non-movant's proffered interpretation. *Id.*

16

There is simply no possibility that parol evidence would show that the asset sales triggered Day's right to payment because the BCA is not reasonably susceptible to that interpretation.  *See Callahan v. City of Sanger*, 2015 WL 2455419, at *12 (E.D. Cal. May 22, 2015) *citing Wagner v. Columbia Pictures Industries, Inc.,* 146 Cal.App.4th 586 (2007) (rejecting evidence that contradicted, rather than explained, a written agreement and noting "[t]he problem with [the plaintiff's] extrinsic evidence is that it does not explain the contract language, it contradicts it."); *Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California,* 618 F.3d 1066, 1073 (9th Cir. 2010) (the interpretation of a contract is a judicial function).

### C.    The Rescission of the Reardon Transaction Undermines any "Appeal to Equity" by Day.

Day seems to be making an appeal to equity, proffering the notion that Catalina intentionally structured the Reardon Transaction to avoid paying her bonus. On its face, the argument is nonsensical: Catalina could not have structured a sale of less than 10% of its assets by value as a sale of stock.  It was selling specific assets; it was not bringing in a partner.

And, any appeal to the equities vanishes entirely when the aftermath of the Reardon Transaction is considered.  Reardon made one $4,166 payment under the $1 million promissory note and then defaulted.  [UMF No. 39].  Since then, Catalina has regained possession of the property leased to Reardon and is in the process of legal proceedings in Florida to recover the other purchased assets. [UMF No. 40]. Catalina is not depriving Day of the proceeds of a completed transaction.

### V.    EACH OF DAY'S COUNTERCLAIMS FAIL AS A MATTER OF LAW

For the reasons described above, Catalina is also entitled to a defense judgment on each of Day's counterclaims, all of which hinge on the contention that either her retirement from Catalina or the sale of certain Catalina assets triggered her right to the bonus payment, which they did not.

ERVIN COHEN & JESSUP LLP

A.    **Day's Breach of Contract Claim Fails as a Matter of Law**

The elements of a breach of contract claim under California law are "the making of the contract and its terms, plaintiff's performance, defendants' breach, and damage to plaintiff therefrom." *Lee v. Select Portfolio Servicing Inc.,* 2015 WL 12659931, at *3 (C.D. Cal. Feb. 5, 2015). To survive summary judgment, a party must identify a provision of a contract that creates an obligation that has been violated. *See id.*; *see also Frith v. Fed. Express Corp.,* 2009 WL 10675202, at *3 (C.D. Cal. Dec. 11, 2009).

Day's Count One for Breach of Contract relies on an interpretation of the BCA that "[p]ursuant to the express provisions of the Bonus Compensation Agreement, Catalina Yachts became obligated to pay Day either upon her retirement or in July 2024 upon the sale of its assets, including the Salt Creek Sale, and then of the remaining assets used and/or useful in the operation of the business." [Dkt. 116, SACC, ¶ 66]. Day contends that "Catalina's equity owners decided not to sell their equity for various reasons…so Catalina's sale of assets, instead of stock, triggered its obligation to pay Sharon Day deferred compensation." [Dkt. 116, SACC, ¶ 65]. The BCA is not reasonably susceptible to this interpretation because (1) Day's retirement has nothing to do with the sale of the Butler's shares of stock, or the sale of any of Catalina's assets; and (2) there is no reference in the BCA to assets "used and/or useful in the operation of the business."

As noted above, Section 1.5 "Timing Of Payments", triggers payment only on a sale of the Butlers' shares of stock.  Section 1.1 "When Bonus Is Earned", concerns what it says, i.e., when the bonus is earned -- not when it is paid.[3] But, *even if* the Section 1.1 definition of "Sale of Catalina" were incorporated into Section 1.5, the result would be the same.  Section 1.1 states the bonus is "earned"

---

[3]    Again, Catalina does not dispute that Day *earned* a bonus pursuant to the BCA because she worked for Catalina for more than 7 ½ years following the execution of the BCA. [UMF No. 5].

ERVIN COHEN & JESSUP LLP

1  upon the sale of the Butler's stock or the sale of "***all*** of Catalina's assets." (emphasis

2  added). So, clearly Day's retirement alone did not trigger a bonus payment, and

3  there is no evidence that the Butlers sold their Catalina shares or that Catalina sold

4  all of its assets, because neither event occurred.  Whether or not Catalina sold off its

5  operating assets is an irrelevant consideration to the determination of whether a

6  bonus payment was triggered.

7      Catalina is thus entitled to summary judgment on Day's Count One.

8  **B.    Day's Breach of the Duty of Good Faith and Fair Dealing Claim**

9  **Fails as a Matter of Law**

10      There is an implied covenant of good faith and fair dealing in every contract

11  that neither party will do anything which will injure the right of the other to receive

12  the benefits of the agreement. *See Comunale v. Traders & General Ins. Co.,* 50 Cal.

13  2d 654, 658 (1958). The elements required to prove such a claim are that: (1)

14  plaintiff and defendant entered into a contract; (2) plaintiff did all, or substantially

15  all of the significant things that the contract required him to do; (3) the conditions

16  for defendant's performance occurred; (4) defendant prevented plaintiff from

17  receiving the benefits under the contract; (5) by doing so, defendant did not act

18  fairly and in good faith; (6) plaintiff was harmed by defendant's conduct. *See* CACI

19  No. 325; *Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 42 Cal. App.

20  5th 918, 940-41 (2019).

21      Importantly, "while the implied covenant requires mutual fairness in applying

22  a contract's actual terms, it cannot substantively alter those terms."  *Guz v. Bechtel*

23  *National, Inc.*, 24 Cal. 4th 317, 327 (2000). The scope of the covenant depends upon

24  the underlying contract. *See Ass'n for Los Angeles Deputy Sheriff*, 42 Cal. App. 5th

25  at 941.

26      Day cannot identify any evidence to support the contention that: the

27  conditions for Catalina's performance occurred (element 3); Catalina prevented Day

28  from receiving benefits due her under the BCA (element 4); or that Catalina acted in

ERVIN COHEN & JESSUP LLP

1    bad faith (element 5).

2        Day alleges, "upon information and belief," that "Catalina owners decided not

3    to sell their equity but decided instead to sell its assets, including the Church Sale,

4    then the Salt Creek Sale and then the remaining assets used and/or useful in the

5    operation of its business and then to prevent Day from recovering deferred

6    compensation under the Bonus Compensation Agreement…" [Dkt. 116, SACC, ¶

7    77]. In essence, Day appears to contend that Catalina structured certain asset sales to

8    prevent Day from receiving a bonus that would have become payable if Catalina had

9    sold stock to the acquirers of assets. But as noted above, that allegation makes no

10    sense.

11        The Church Sale occurred more than four years before Day filed this lawsuit;

12    the Salt Creek Transaction was a 1031 like-kind exchange that Day enabled by

13    signing the deed from Catalina to Catalina Investments; and the Reardon

14    Transaction, either alone or in combination with the other two transactions, neither

15    sold substantially all of Catalina's assets nor the assets useful in its business.

16        The implied covenant cannot create an obligation that the BCA does not

17    impose, and summary judgment should be granted as to Day's Count Two.

18    **C.    Day's Promissory Estoppel Claim Fails as a Matter of Law**

19        At the outset it bears noting that Day's promissory estoppel claim is an

20    equitable cause of action on which she is not entitled to a jury trial.  *A-C Co. v.*

21    *Security Pacific Nat. Bank,* 173 Cal.App.3d 462, 472 (1985).  The Court will decide

22    this claim either by this motion or at trial.

23        "The elements of a promissory estoppel claim are '(1) a promise clear and

24    unambiguous in its terms; (2) reliance by the party to whom the promise is made;

25    (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting

26    the estoppel must be injured by his reliance.'"  *US Ecology, Inc. v. State of*

27    *California,* 129 Cal. App. 4th 887, 901 (2005).

28        Day alleges that Frank and Jean Butler and other Catalina shareholders "made

ERVIN COHEN & JESSUP LLP

1  numerous representations that Day would receive her bonus under the [BCA] upon

2  either retirement or the sale of Catalina assets."  [Dkt. 116, SACC, ¶ 88].

3      First, that is not a clear and unambiguous promise because it would require

4  extrinsic evidence just to explain it.  *Broome v. Regents of Univ. of California*, 80

5  Cal. App. 5th 375 n. 16, 389 (2022) ("if extrinsic evidence is needed to interpret a

6  promise, then obviously the promise is not clear and unambiguous.") (Citation

7  omitted.)

8      Second, to the extent the alleged, vaguely-worded promises constituted a

9  promise to deviate from the BCA's statement that the bonus became due upon a sale

10  of the Butler's shares of Catalina stock, it is not a promise on which Day reasonably

11  could rely because it is not consistent with the terms of the integrated BCA. The

12  BCA states that it is a fully integrated document that can only be modified by a

13  document in writing signed by the parties. [UMF No. 43.] Its contents are

14  dispositive. Cal. Civ. Proc. Code § 1856 ("Terms set forth in a writing intended by

15  the parties as a final expression of their agreement with respect to the terms included

16  therein may not be contradicted by evidence of a prior agreement or of a

17  contemporaneous oral agreement.")  Further, the BCA's status as an integrated

18  instrument is a legal issue determined by this Court. *Slivinsky v. Watkins-Johnson*

19  *Co.*, 221 Cal. App. 3d 799, 805 (1990) ("Whether the agreement is an integration is

20  a question of law for the judge.")

21      Finally, Day cannot rely on mere allegations; she needs evidence and she has

22  none. Indeed, the allegations in paragraph 88 of the SACC contradict her original

23  allegations.  Originally, Day alleged that Day was promised that she would receive

24  her bonus "upon the sale of Catalina."  [Dkt. 46, Counterclaims, ¶ 45]. It was only

25  after she realized that this alleged promise would not achieve the result she seeks

26  that she tried to muddy the waters with allegations she cannot prove. Simply put,

27  there is no evidence that anyone in a position of authority at Catalina promised Day

28  that Catalina would do anything other than honor the terms of the BCA.

ERVIN COHEN & JESSUP LLP

17639.11:11872275.4

21

## D. Day's Fraudulent Transfer of Assets Claim Fails as a Matter of Law

Day contends that by structuring the sale of the Salt Creek Property to Prometheus as a Rule 1031 exchange of real property, and by using its wholly owned subsidiary Catalina Investments as an intermediary in the sale, Catalina participated in a fraudulent transfer. Day bases her claim on fallacies.

Day pleads fraudulent transfer in two ways – first she contends that Catalina made transfer(s) with "actual intent to hinder, delay or defraud Catalina creditors" within the meaning of Cal. Civ. Code § 3439.04(a)(1)[4] and Fla. Stat. § 726.105(1)(a)." [Dkt. 116, SACC, ¶ 105]. Second, and in the alternative, she alleges that the transfer(s) were constructively fraudulent under Cal. Civ. Code § 3439.04(a)(2) and/or § 3439.05 and Fla. Stat. § 726.105(1)(b) and/or § 726.106 because Catalina did not receive reasonably equivalent value in exchange for transferring the proceeds and (a) was engaged in a business for which its remaining assets were unreasonably small, or (b) intended to incur debts beyond its ability to pay as they became due, or (c) was insolvent or became insolvent as a result of the transfer(s). [Dkt. 116, SACC, ¶ 107]. Day cannot satisfy any elements of her claim pleaded either way.

### 1. Day Lacks Standing.

At the outset, Day must make an affirmative showing that she was injured by a transfer made by Catalina in order to have statutory standing to pursue a claim to set the transfer aside. *See In re Blanchard*, 547 B.R. 347, 353 (Bankr. C.D. Cal.

---

[4] Since the California statute and Florida statute that Day relies on in support of her fraudulent transfer claim are substantially similar, Catalina focuses its analysis only on California state law. *See Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.,* 14 Cal. App. 4th 637, 642 (1993) ("The fact that two states are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of law' problem. There is obviously no problem where the laws of the two states are identical.")

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1    2016). Day has not, and cannot, make this affirmative showing because Catalina's

2    business decision to initiate a 1031 transfer of property through its wholly owned

3    subsidiary did not cause Day injury – the assets held by Catalina Investments ($12.5

4    million acquired in the exchange) are not insulated from Catalina creditors. The

5    assets are being held in DSTs, which offer additional tax and asset protection

6    advantages. If the payment obligation in the BCA is triggered, Day will have the

7    ability to enforce any judgment against Catalina's assets, including its 100%

8    ownership interest in Catalina Investments, which owns real estate worth $12.5

9    million

10        Day has therefore suffered no injury as a result of any transfer made by

11   Catalina and she thus lacks standing as a creditor to pursue a fraudulent transfer

12   claim.

13        **2.    *Day Cannot Satisfy Any Elements of her Fraudulent Transfer***

14             ***Claim***

15        If this Court finds that Day does have standing to pursue a fraudulent transfer

16   claim, the claim still fails because she cannot satisfy any (much less all) elements of

17   her claim.

18        A "transfer of assets made by a debtor is fraudulent to a creditor, whether the

19   creditor's claim arose before or after the transfer, if the debtor made the transfer (1)

20   with an actual intent to hinder, delay, or defraud any creditor, or (2) without

21   receiving reasonably equivalent value in return, and either (a) was engaged in or

22   about to engage in a business or transaction for which the debtor's assets were

23   unreasonably small, or (b) intended to, or reasonably believed, or reasonably should

24   have believed, that he or she would incur debts beyond his or her ability to pay as

25   they became due." *Cortez v. Vogt*, 52 Cal. App. 4th 917, 928 (1997) (internal

26   citations omitted); *see also* Cal. Civ. Code § 3439.04; *Moses v. Innoprise Software*,

27   2013 WL 6019536, at * 8 (N.D. Cal. Nov. 13, 2013).

28        Under Cal. Civ. Code § 3439.05 and Fla. Stat. § 726.106, a transfer by debtor

ERVIN COHEN & JESSUP LLP

1  is voidable if the debtor made the transfer without receiving a reasonably equivalent

2  value in exchange for the transfer ***and*** the debtor was insolvent at the time or the

3  debtor became insolvent as a result of the transfer.

4      Day has the burden to "establish by a preponderance of the evidence the

5  existence of the requisite state of mind." *In re Blanchard*, 547 B.R. at 359.

6  "Whether a conveyance was made with fraudulent intent is a question of fact, and

7  proof often consists of inferences from circumstances surrounding the transfer…

8  Over the years, courts have considered a number of factors, the 'badges of

9  fraud'…in determining actual intent." *Filip v. Bucurenciu*, 129 Cal.App.4th 825,

10  834 (2005) *citing Annod Corp. v. Hamilton & Samuels*, 100 Cal.App.4th 1286, 1294

11  (2002).  However, "a showing of good faith and reasonably equivalent value is all

12  that is required to defeat a creditor's action based on section 3439.04, subdivision

13  (a)," subdivision (b), and section 3439.05. *Annod Corp.,* 100 Cal. App. 4th at 1294–

14  95 (2002); *see also* Cal. Civ. Code § 3439.08(a); *see also* Fla. Stat. § 726.109(1).

15  The Reese Declaration establishes both good faith and reasonably equivalent value

16  demonstrating Catalina's right to summary judgment in its favor. Further, Day

17  herself, signed the deed transferring the Salt Creek Property to Catalina Investments,

18  so she would have to prove that she, herself, did so with an intent to defraud herself.

19      Further, there is no evidence that Catalina engaged in any transaction,

20  including the Salt Creek Sale transaction, with an intent to hinder, delay or defraud

21  any creditor, or that there was no reasonable equivalent value in return to Catalina

22  for the transaction. Nor is there any evidence that, at the time of or following the

23  Salt Creek Sale Catalina was engaged in any transaction for which its assets were

24  unreasonably small, or that Catalina incurred debts that it was unable to pay, or that

25  it was at any time insolvent.

26      The actual evidence, as shown in the Reese Declaration, is that the Salt Creek

27  transaction was made for a legitimate business purpose (to obtain income-generating

28  property for Catalina's benefit); that the transaction, as a matter of the U.S. Tax

1 Code, was for equivalent value, and the placement <u>by Day</u> of the transferred and

2 received properties in a wholly-owned subsidiary was done to insulate Catalina from

3 liabilities arising out of the acquired property; it was neither intended to, nor could

4 it, affect a creditor's claim against Catalina.

### 3. *Day's Fraudulent Transfer Claim Fails Because it is Duplicative of Her Other Causes of Action*

7 Day's fraudulent transfer claim is merely duplicative of the other causes of

8 action because, as to the alleged transferor (Catalina), it would afford her no relief

9 that the other causes of action would not. *See Renda v. Nevarez*, 223 Cal. App. 4th

10 1231, 1237-38 (2014) ("[A] plaintiff is entitled to only a single recovery for a

11 distinct harm suffered, and double or duplicative recovery for the same harm is

12 prohibited.").  As the Renda court explained, granting a creditor "an additional

13 judgment against [the debtor] under the UFTA...*would in effect allow [the creditor]*

14 *to recover more than the underlying judgment, which the [UFTA] does not allow.*"

15 *Id.* (emphasis in original) (internal quotation marks omitted).

16 Thus, as an additional reason for granting summary judgment on Day's

17 fraudulent transfer claim, the Court can and should find that it is a redundant claim

18 on which Day cannot prevail. If she proves her other causes of action (and she

19 cannot), the claim is redundant; if she cannot prove her other claims, she lacks

20 standing to pursue this one.

21 Thus, given that Catalina is entitled to judgment on Day's Counts One

22 through Three; it is also entitled to judgment on Count Four.

## VI.    <u>CONCLUSION</u>

24 For the foregoing reasons, Catalina respectfully requests that the Court grant

25 its Motion for Summary Judgment in its entirety, or in the alternative, grant partial

26 summary judgment on any or all of the claims as to which this Court sees fit.

27

28

ERVIN COHEN & JESSUP LLP

1 | DATED:  February 13, 2026

ERVIN COHEN & JESSUP LLP
Michael C. Lieb
Zoe M. Vallier


By:  _____/s/ Michael C. Lieb_____
Michael C. Lieb
Attorneys for Plaintiff/Counter-Defendant
CATALINA YACHTS, INC.

1

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff/Counter-Defendant Catalina Yachts, Inc., certifies that this brief contains 6,266 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: February 13, 2026

/s/ Michael C. Lieb
Michael C. Lieb

ERVIN COHEN & JESSUP LLP